**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), et al.,** | X<br>:<br>: |
| **Plaintiffs,** | :   Case No. 1:14-cv-9367-RMB |
| -against- | :<br>: |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY; and DEUTSCHE BANK TRUST COMPANY AMERICAS,** | :<br>:<br>:<br>: |
| **Defendants,** | :<br>: |
| -and- | : |
| **The Trusts Identified in Exhibit 1,** | :<br>:<br>: |
| **Nominal Defendants.** | :<br>X |
| **BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al.,** | X<br>:<br>: |
| **Plaintiffs,** | :   Case No. 1:14-cv-9371-RMB |
| -against- | :<br>: |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | :<br>:<br>: |
| **Defendant,** | :<br>: |
| -and- | : |
| **The Trusts Identified in Exhibit 1,** | :<br>:<br>: |
| **Nominal Defendants.** | :<br>X |

**ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated,**

    **Plaintiffs,**

  -against-

**WELLS FARGO BANK, N.A., as Trustee,**

    **Defendant.**

Case No. 1:14-cv-09764-RMB-SN

---

**NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union, in its own right, and on behalf of NCUA GUARANTEED NOTES TRUST 2010-R1, NCUA GUARANTEED NOTES TRUST 2010-R2, NCUA GUARANTEED NOTES TRUST 2010-R3, NCUA GUARANTEED NOTES TRUST 2011-R1, NCUA GUARANTEED NOTES TRUST 2011-R2, NCUA GUARANTEED NOTES TRUST 2011-R3, NCUA GUARANTEED NOTES TRUST 2011-R4, NCUA GUARANTEED NOTES TRUST 2011-R5, NCUA GUARANTEED NOTES TRUST 2011-R6, NCUA GUARANTEED NOTES TRUST 2011-M1,**

    **Plaintiffs,**

  -against-

**WELLS FARGO BANK, NATIONAL ASSOCIATION,**

    **Defendant.**

Case No. 1:14-cv-10067-RMB

| | |
|---|---|
| **PHOENIX LIGHT SF LIMITED, in its own right and the right of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED; and each of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED, in their own right,**     Plaintiffs, -against- **WELLS FARGO BANK, N.A.,**     Defendant. | Case No. 1:14-cv-10102-RMB |

## JOINT REPLY IN
## SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS[1]

---

[1]This Joint Reply and the supporting Reply Declarations of Elizabeth A. Frohlich ("F. R.Decl.") and Howard F. Sidman ("S. R.Decl.") (together, the "R.Decls.") are submitted in the five separate above-captioned actions against Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, and Wells Fargo Bank, N.A.  Pursuant to the Court's February 11, 2015 Case Management Plan (Docket No. 44), Defendants jointly submit this reply memorandum in support of their Joint Motion to dismiss the above-captioned actions pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"), their brief in support ("Mot."), and in response to Plaintiffs' Joint Opposition thereto (the "Opp'n").  Except where otherwise indicated, the capitalized terms herein have the same definitions as provided in the Motion.

William P. Quinn, Jr., Esq.
 *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel:    (215) 963-5000
Fax:    (215) 963-5001
wquinn@morganlewis.com

Elizabeth A. Frohlich, Esq.
 *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    (415) 442.1000
Fax:    (415) 442.1001
efrohlich@morganlewis.com

Bernard J. Garbutt III, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001
bgarbutt@morganlewis.com

Attorneys for Defendants
Deutsche Bank National Trust Company and
Deutsche Bank Trust Company Americas

Jayant W. Tambe, Esq.
Howard F. Sidman, Esq.
Jason Jurgens, Esq.
JONES DAY
222 East 41st Street
New York, NY 10017
Tel:    (212) 326-3939
Fax:    (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
jjurgens@jonesday.com

Traci L. Lovitt, Esq.
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel:    (617) 449-6900
Fax:    (617) 449-6999
tlovitt@jonesday.com

Attorneys for Defendant
Wells Fargo Bank, N.A.

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................. 1

I.    THE COURT LACKS JURISDICTION OVER THE BLACKROCK PSA
TRUST-RELATED CLAIMS, WHICH ARE ALSO IMPROPERLY JOINED ............. 1

    A.    The Court Lacks Jurisdiction Over BlackRock's PSA Trust-Related
Claims .............................................................................................................. 1

    B.    This Court Should Not Exercise Supplemental Jurisdiction, Or Should
Sever And Dismiss The PSA Trusts For Improper Joinder ................................. 3

II.    THE DERIVATIVE CLAIMS SHOULD BE DISMISSED ............................................ 3

    A.    Plaintiffs' Claims Are Direct, Not Derivative ...................................................... 3

    B.    Plaintiffs Lack Standing To Pursue Derivative Claims. ....................................... 4

    C.    New York's Contemporaneous Ownership Requirement Applies ....................... 5

III.    PLAINTIFFS' TIA CLAIMS LACK MERIT .................................................................. 5

IV.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED ........ 7

    A.    Plaintiffs Lack Standing Under The "Negating Clauses" ..................................... 7

    B.    Plaintiffs Have Not Alleged Trust-Specific, Discovered R&W Breaches ............ 9

    C.    Plaintiffs' EOD-Related Claims Fail Due To The Lack Of Any Alleged
EOD ................................................................................................................ 11

    D.    Plaintiffs Fail To Plead Defendants' Actual Knowledge Of EODs .................... 13

    E.    Plaintiffs' Contract Claims Are Barred By No-Action Clauses ......................... 14

V.    PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED ............................ 14

VI.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED ........................................ 15

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

CASES

*ACE Sec. Corp. v DB Structured Prods., Inc.,*
  2015 NY Slip Op 04873, 2015 N.Y. LEXIS 1395 (N.Y. June 11, 2015)..............................10

*Alexander v. Sandoval,*
  532 U.S. 275 (2001).................................................................................................6

*Allan Applestein TTEE FBO D.C.A. Grantor Trust v. The Province of Buenos*
  *Aires,*
  415 F.3d 242 (2d Cir. 2005)..................................................................................8, 9

*Arrowgrass Master Fund Ltd. v. The Bank of N.Y. Mellon,*
  2012 N.Y Slip Op. 33200 (U), 2012 WL 8700416 (Sup. Ct. N.Y. Cnty. Feb.
  24, 2012) ...........................................................................................................11, 14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................................10

*Beck v. Mfrs. Hanover Trust Co.,*
  632 N.Y.S.2d 520 (1st Dep't 1995) .......................................................................15

*Benjamin v. Kim,*
  No. 95 CIV. 9597 (LMM), 1999 WL 249706 (S.D.N.Y. Apr. 28, 1999)................4

*Blackrock Allocation Target Shares: Series S Portfolio v.*
  *U.S. Bank Nat'l Ass'n,*
  No. 14-cv-9401 (KBF), 2015 WL 2359319 (S.D.N.Y. May 18, 2015)......................... passim

*Blackrock Balanced Capital Portfolio v.*
  *HSBC Bank USA, N.A.,*
  No. 14 Civ. 9366 (SAS), 2015 WL 1501283 (S.D.N.Y. Mar. 31, 2015) ..................2

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.,*
  778 F.Supp.2d 375 (S.D.N.Y. 2011)...............................................................8, 13, 14

*Campbell v. Hudson & Manhattan R.R. Co.,*
  102 N.Y.S.2d 878 (1st Dep't 1951) .........................................................................5

*Caprer v. Nussbaum,*
  825 N.Y.S.2d 55 (2d Dep't 2006)........................................................................5

*CFIP Master Fund, Ltd. v. Citibank, N.A.,*
  738 F. Supp. 2d 450 (S.D.N.Y. 2010)...............................................................15

*City of Brockton Ret. Sys. v. Shaw Group Inc.,*
  540 F. Supp. 2d 464 (S.D.N.Y. 2008)..................................................................9

*City of N.Y. v. Minetta,*
  262 F.3d 169 (2d Cir. 2001)..................................................................................7

*Cruden v. The Bank of N.Y.,*
  957 F.2d 961 (2d Cir. 1992)................................................................................14

*Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust,*
  No. 95 CIV. 9426 (SAS), 1996 WL 601705 (S.D.N.Y. Oct. 18, 1996) ...............3, 4

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.,*
  918 N.Y.S.2d 73 (1st Dep't 2011) .........................................................................8

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,*
  838 F.2d 66 (2d Cir. 1988)..................................................................................15

*Feldman v. Cutaia,*
  951 A.2d 727 (Del. 2008) .....................................................................................4

*FHFA v. Nomura Holding Am., Inc.,*
  60 F. Supp. 3d 479 (S.D.N.Y. 2014)....................................................................9

*Fontana v. Republic of Argentina,*
  415 F.3d 238 (2d Cir. 2005)..................................................................................8

*Galli v. Metz,*
  973 F.2d 145 (2d Cir. 1992)..................................................................................9

*Harper v. Larchmont Yacht Club,*
  38 N.Y.S.2d 505 (Sup. Ct. N.Y. Cnty. 1942) ......................................................15

*Howe v. Bank of N.Y. Mellon,*
  783 F. Supp. 2d 466 (S.D.N.Y. 2011)...................................................................5

*In re Bankers Trust Co.,*
  450 F.3d 121 (2d Cir. 2006)...........................................................................12, 13

*In re Colonial Trust Co.*,
    67 N.Y.S.2d 534 (Sup. Ct. N.Y. Cnty. 1946) ......................................................15

*In re Lehman Bros. Holdings Inc.*,
    479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75 (2d Cir. 2013)...................................8

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    510 F. Supp. 2d 299 (S.D.N.Y. 2007)....................................................................2

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2010)...............................................................................7

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*,
    935 F. Supp. 1333 (S.D.N.Y. 1996)......................................................................6

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
    No. 12 Civ. 7581 (HB), 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013)...........................11, 13

*Montefiore Med. Ctr. v. Teamsters Local 272*,
    642 F.3d 321 (2d Cir. 2011)..............................................................................2

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank, Nat'l Ass'n*,
    291 F.R.D. 47 (S.D.N.Y. 2013) .........................................................................10

*Overstock.com, Inc. v. N.Y. State Dep't of Taxation & Fin.*,
    20 N.Y.3d 586 (2013) ......................................................................................5

*Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA*,
    943 F. Supp. 2d 428 (S.D.N.Y. 2013).................................................................9

*Prudence Realization Corp. v. Atwell*,
    35 N.Y.S.2d 1001 (1st Dep't 2011) ....................................................................14

*Reiss v. Fin. Performance Corp.*,
    97 N.Y.2d 195 (2001) .....................................................................................10

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v.*
    *BNY Mellon*,
    775 F.3d 154 (2d Cir. 2014)........................................................................ passim

*Rivera Congress Assocs. v. Yassky*,
    18 N.Y.2d 540 (1966) ......................................................................................5

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
   No. 14-cv-8175 (SAS), 2015 WL 3466121 (S.D.N.Y. June 1, 2015) ............................ passim

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
   659 F.3d 234 (2d Cir. 2011) ................................................................................................2

*Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*,
   917 N.Y.S. 2d 560 (1st Dep't 2011) ...................................................................................8

*Sterling Fed. Bank, F.S.B. v. Bank of New York Mellon*,
   No. 09 C 6904, 2012 WL 3101699 (N.D. Ill. July 30, 2012) ..............................................14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) .............................................................................................................6

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
   845 A.2d 1031 (Del. 2004) ..................................................................................................4

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) .............................................................................................................7

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*,
   988 F.Supp. 367 (S.D.N.Y. 1997) ......................................................................................8

*United States v. Daniels*,
   279 F. 844 (2d Cir. 1922) ....................................................................................................5

*Velez v. Feinstein*,
   451 N.Y.S.2d 110 (1st Dep't 1982) ....................................................................................5

*Yudell v. Gilbert*,
   949 N.Y.S. 2d 380 (1st Dep't 2012) ...................................................................................4

*Zeffiro v. First Pa. Banking and Trust Co.*,
   623 F.2d 290 (3d Cir. 1980) ................................................................................................6

**STATUTES**

Fed. R. Civ. P. 8 ..............................................................................................................................9

N.Y. Bus. Corp. Law § 626 ............................................................................................................5

N.Y. Gen. Oblig. Law § 13-107......................................................................................................5

Streit Act §§ 124, 126 ........................................................................................14, 15

Trust Indenture Act § 315 ...............................................................................................7

**OTHER AUTHORITIES**

American Bar Foundation, *Commentaries on Model Debenture Indenture*
*Provisions*, § 5-1 (1971) ...........................................................................................12

Black's Law Dictionary 1585 (10th ed. 2014)...............................................................12

Throughout their brief, Plaintiffs mischaracterize the 846 GAs to create non-existent terms.  In reality, the GAs involve such different parties and terms that supplemental jurisdiction is impermissible; Plaintiffs lack the right to enforce the GAs or bring this action; and Defendants' actual obligations are limited.  Presumably because the GAs do not say what Plaintiffs wish, they complain that Defendants have "needlessly buried" the Court in contracts.  Opp'n 1 n.1.  But the 846 contracts demonstrate that Plaintiffs cannot state a claim.  Nothing in Plaintiffs' Opposition overcomes this fact.   Accordingly, the Complaints should be dismissed.

## ARGUMENT

I.   **THE COURT LACKS JURISDICTION OVER THE *BLACKROCK* PSA TRUST-RELATED CLAIMS, WHICH ARE ALSO IMPROPERLY JOINED.**

   A.   **The Court Lacks Jurisdiction Over *BlackRock*'s PSA Trust-Related Claims.**

This Court lacks original jurisdiction over the *BlackRock* Plaintiffs' PSA Trust-related claims, and material differences between the underlying PSAs and Indentures make an exercise of supplemental jurisdiction inappropriate here.  Plaintiffs urge the Court "not [to] waste resources" reviewing the GAs' terms (Opp'n 1 n.1) and, instead, to have faith that all GAs provide for the same parties to have the same duties.  Opp'n 2-5.  But as Judge Forrest recently held, the terms of the PSAs are "plainly significant in what is, at its core, a breach of contract case."  *Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*, 2015 WL 2359319, at *4 (S.D.N.Y. May 18, 2015) ("*U.S. Bank*").  Their terms prove that the Indentures and PSAs do not impose "identical duties."  Opp'n 2.[2]  They have materially different structures and are "subject to different governing documents and include[] different groups of

---

[2] Both Plaintiffs' supplemental jurisdiction argument and their breach of contract claims rest on the assumption that all GAs contain "substantially similar, if not identical" terms.  DB-BR ¶ 253; WF-BR ¶ 231.  But Plaintiffs effectively concede the GAs' materially different terms by attaching exhibits that highlight variations among GA provisions on issues central to this case.  DeLange Decl., Exs. 6-9.

loans." *U.S. Bank*, 2015 WL 2359319, at *4.  They have different outcome-determinative EOD
definitions and post-EOD duties, meaning the alleged breaches are not susceptible to
"systematic[]" proof across all Trusts.  Opp'n 3.[3]

Although Plaintiffs assert that Defendants "systematically fail[ed]" to fulfill their Trustee
obligations (Opp'n 3), an alleged "general failure to act cannot justify supplemental jurisdiction
because the question of whether that failure constitutes an actionable breach is a ***trust-specific***
inquiry." *U.S. Bank*, 2015 WL 2359319, at *4 n.7 (citing *Ret. Bd. of the Policemen's Annuity &
Benefit Fund of Chi. v. BNY Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("*PABF*")) (emphasis
added).  Plaintiffs' claims require a "loan-by-loan and trust-by-trust" examination of different
alleged breaches by hundreds of Warrantors and hundreds of distinct GAs imposing different
duties on different parties.  *PABF*, 775 F.3d at 162.[4]  That means analyzing, for each Trust, the
conduct of the hundreds of "parties that originated these loans, pooled them, securitized them
into trusts, and serviced them."  *U.S. Bank*, 2015 WL 2359319, at *4.

Plaintiffs assert that there are many "overlapping" Responsible Parties (Opp'n 3) (citation
omitted), but their purportedly supportive charts include at least 56 mischaracterizations of the
supposedly common Responsible Parties (R.Decls. Ex. TT); improperly conflate the roles of deal
parties; and disregard more than 300 PSA Trusts.  If anything, Plaintiffs' charts confirm the
massive disparity between the Indenture-related and the PSA-related parties.  Plaintiffs' reliance
on *Blackrock Balanced Capital Portfolio v. HSBC Bank USA, N.A.*, 2015 WL 1501283, at *4

---

[3] Contrary to Plaintiffs' contention (Opp'n 1 n.1), each of Defendants' exhibits was referenced
either in the brief or in the supporting attorney declaration.

[4] Plaintiffs fail to distinguish *PABF* by citing cases that do not involve multiple contracts.  *See*
Opp'n 3-5.  *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 325, 332-33 (2d Cir.
2011) (addressing single benefits plan); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d
234, 245 (2d Cir. 2011) (addressing violations of federal and state labor laws); *In re Methyl
Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 325 (S.D.N.Y. 2007) (addressing
claims based on federal and state environmental and products liability laws)).

(S.D.N.Y. Mar. 31, 2015) ("*HSBC I*"), for this point is misplaced; the degree of overlapping

parties there was far more extensive, in a case involving far fewer trusts.

> **B.     This Court Should Not Exercise Supplemental Jurisdiction, Or Should Sever And Dismiss The PSA Trusts For Improper Joinder.**

Even if it were available, the Court should not exercise supplemental jurisdiction.  The

state law claims do not substantially predominate over the federal claims.  Opp'n 6.  Plaintiffs

assert *no* federal claims for 90% of the DB Trusts and 96% of the Wells Fargo Trusts.  *See*

Decls. Ex. DD.  As Judge Forrest recently held in a similar case, "[t]he numbers here speak for

themselves."  *U.S. Bank*, 2015 WL 2359319, at *4.  To exercise supplemental jurisdiction over

the PSA Trust-related claims would allow "a federal tail to wag a state dog."  *Id*.  Plaintiffs do

not dispute that the PSA Trust-related claims implicate "important issues of state law," such as

novel contract claims, *see infra* at § IV, that are "better answered in the state courts."  *U.S. Bank*,

2015 WL 2359319, at *4.  And, because the PSA Trust-related claims arise from separate and

distinct contracts, not the "same transaction or occurrence" (Opp'n 6), they can be severed.[5]

## II.     THE DERIVATIVE CLAIMS SHOULD BE DISMISSED.

> **A.     Plaintiffs' Claims Are Direct, Not Derivative.**

Since this Motion's filing, two Southern District judges have held that investor claims

such as these are not derivative in nature "[b]ecause plaintiffs directly suffered the injury, and

because plaintiffs would receive the benefit of any recovery."  *Royal Park Invs. SA/NV v. HSBC

Bank USA, N.A.*, 2015 WL 3466121, at *16 (S.D.N.Y. June 1, 2015) ("*HSBC II*"); *U.S. Bank*,

2015 WL 2359319, at *6.  Plaintiffs attempt to avoid these decisions by citing *Dallas Cowboys

Football Club, Ltd. v. Nat'l Football League Trust*, 1996 WL 601705 (S.D.N.Y. Oct. 18, 1996)

---

[5] Contrary to Plaintiffs' contention (Opp'n 3 n.2), Defendants have not "repeatedly sought to adjudicate their compliance with PSAs and Indentures together in a single action."  The referenced actions involved summary approvals of settlements and not contested adjudications.

(Scheindlin, J.).  *See* Opp'n 7.  But Judge Scheindlin recently explained that her ruling in *Dallas Cowboys* has been superseded under New York law in light of the later decided *Yudell v. Gilbert*, 949 N.Y.S. 2d 380, 381 (1st Dep't 2012); that "it is likely that the New York Court of Appeals would follow [the *Yudell*] test," not *Dallas Cowboys*; and that claims like Plaintiffs' are direct, not derivative, under New York law.  *See HSBC II*, 2015 WL3466121, at *15-16.

Judge Scheindlin also rejected Plaintiffs' argument that *Yudell* and *Dallas Cowboys* are "nearly identical."  *HSBC II*, 2015 WL 3466121, at *15-16; *see also U.S. Bank*, 2015 WL 2359319, at *5 (rejecting similar argument).  Plaintiffs cannot claim that the Trusts' assets were injured under *Yudell* because they were reduced.  Opp'n 10-11.  The relevant question for *Yudell*'s injury analysis is "to whom the relevant duty is owed," *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1036 n.9 (Del. 2004), and Plaintiffs concede that the asserted *duties* were owed to investors, not Trusts.  *See, e.g.*, WF-BR Compl. ¶¶ 492-93.  The "duties running to the holders of the notes and certificates" which were allegedly breached "injured the plaintiffs directly."  *HSBC II*, 2015 WL 3466121, at *16.  Plaintiffs also cite *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008), to argue that their right to a pro rata share of any recovery renders their claims derivative.  Opp'n 11.  But unlike *Feldman*, a recovery here "would simply pass through the trusts and be distributed to the Noteholders and Certificateholders—the trusts themselves would not retain any payments."  *HSBC II*, 2015 WL 3466121, at *16; *see also U.S. Bank*, 2015 WL 2359319, at *6.  Finally, Plaintiffs cannot reconcile the derivative and TIA claims by citing cases from 1951 and 1980.  Opp'n 9.  Derivative claims are not available to "[a] holder of a credit instrument" under **current** law.  *Benjamin v. Kim*, 1999 WL 249706, at *13 n.15 (S.D.N.Y. Apr. 28, 1999) (citation omitted).

### B.  Plaintiffs Lack Standing To Pursue Derivative Claims.

Plaintiffs also lack derivative standing because the Trusts are common law trusts that are

not juridical entities capable of suing or being sued.  Mot. 13-14.  None of the cases Plaintiffs cited (Opp'n 8) addresses derivative suits by trust investors against a trustee.  *Velez v. Feinstein*, 451 N.Y.S.2d 110 (1st Dep't 1982), concerned investor claims "against third persons."  *Id.* at 114, 115.  *Rivera Congress Assocs. v. Yassky*, 18 N.Y.2d 540 (1966), involved a limited partnership, which under New York law "may sue or be sued."  *Id.* at 547 (citation omitted). *Caprer v. Nussbaum*, 825 N.Y.S.2d 55 (2d Dep't 2006), involved condominiums.  New York law is silent on whether condominiums are juridical entities, *see id.* at 65-66, but is clear that trusts are *not*.  *See* Mot. 13.  Also, as non-parties to the GAs, Plaintiffs cannot sue to enforce them.  Plaintiffs claim to step into the Trustees' shoes (Opp'n 8-9), but a trustee cannot sue itself. *See* Mot. 14.  The supposedly contrary cases (Opp'n 9) involve suits against *third parties*. Indeed, other courts have relied on *Campbell v. Hudson & Manhattan R.R. Co.*, 102 N.Y.S.2d 878 (1st Dep't 1951) (cited Opp'n 9) to distinguish trustee and third party claims.  *See Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 474-75 (S.D.N.Y. 2011).

### C.   New York's Contemporaneous Ownership Requirement Applies.

Plaintiffs' derivative claims fail New York's contemporaneous ownership rule, N.Y. Bus. Corp. Law § 626.  Plaintiffs claim that N.Y. Gen. Oblig. Law § 13-107 nullified § 626 *sub silentio*, but this Court must try to give each provision meaning.  *See United States v. Daniels*, 279 F. 844, 849 (2d Cir. 1922).  The two can be reconciled only if § 13-107 governs transfers of *claims*, and § 626 addresses transfers of *shares*.  By this interpretation, § 626 is valid and bars the derivative claims.  *See Overstock.com, Inc. v. N.Y. State Dep't of Taxation & Fin.*, 20 N.Y.3d 586, 593 (2013) (citation omitted).

## III.   PLAINTIFFS' TIA CLAIMS LACK MERIT.

The TIA lacks the textual evidence or rights-creating language necessary to imply a private right of action, *see* Mot. 16-18, and Plaintiffs identify none.  Instead, they ignore the

Supreme Court's recent precedents and, as Defendants predicted, *see id.* at 17-18, primarily cite cases from the 1970s and 1980s that are inconsistent with current Supreme Court precedent (Opp'n 27-28), namely *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164 (2008) ("Though the rule once may have been otherwise, . . . it is settled that there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one.") (citation omitted).  Contrary to Plaintiffs' claim, *Stoneridge* was not limited to "overrul[ing]" existing implied remedies.  Opp'n 28.  The Court declined to extend an implied action citing the absence of language demonstrating an expansionary intent.  *Stoneridge*, 552 U.S. at 164-66.  And the Court has repeatedly held that, in all cases, statutory text must support the implied remedy.  Mot. 16-18.

      The authorities cited by Plaintiffs are neither binding nor persuasive.  The Second Circuit has ***not*** held that the TIA creates a private remedy, and Plaintiffs do not contend otherwise.  *See* Mot. 18 n.9.  Plaintiffs' cited decisions are also dated and inconsistent with recent Supreme Court precedent, as none identifies TIA language demonstrating the requisite congressional intent.  Rather, *Zeffiro v. First Pa. Banking and Trust Co.* relied on the TIA's statement of purpose, *see* 623 F.2d 290, 297 (3d Cir. 1980), which the Supreme Court later found insufficient for an implied remedy.  *See Stoneridge*, 552 U.S. at 164.  And, the *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1338 (S.D.N.Y. 1996), court adopted *Zeffiro*'s erroneous reasoning *sua sponte*.  *See* Mot. 18.

      Lacking case law supporting their position, Plaintiffs cite a 1989 Senate Report discussing proposed TIA amendments.  Opp'n 28-29.  But the amendments did not add any text demonstrating Congress's intent to ratify some implied remedy, and the Report does not explain how Congress intended to do so, rendering it and the Amendment inapposite.  *See Alexander v. Sandoval*, 532 U.S. 275, 293 (2001) (where "[n]either [the] originally enacted nor [] later

-6-

amended" statute "display an intent to create a freestanding private right of action to enforce," "no such right of action exists").  At the cited page, the Senate Report discusses the Act's jurisdictional provision, which the Supreme Court had by then held insufficient to establish an implied remedy.  *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979).

Finally, Plaintiffs' claims fail under the TIA's terms.  Mot. 18-19.  Plaintiffs do not address, and therefore waive, their § 315(a) and § 316(b) arguments.  *See id.*; *City of N.Y. v. Minetta*, 262 F.3d 169, 180-81 (2d Cir. 2001).  With respect to § 315(b), Plaintiffs concede that it is triggered by the Trustee's "actual knowledge" of defaults (Opp'n 29 n.39) which the Complaints fail to allege.  For § 315(c), Plaintiffs fail to plead a "default" under the Indentures.  *See* Mot. 19, 26.  Servicer misconduct (Opp'n 30) is insufficient, because Servicers are not parties to the Indenture.

## IV.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

### A.   Plaintiffs Lack Standing Under The "Negating Clauses."

Plaintiffs argue that the negating clauses in the GAs, which on their face deny Plaintiffs standing to assert their claims, cannot mean what they say.  Opp'n 13-14.  Plaintiffs assert that the GAs refer to rights that would inure to the benefit of only the beneficial owners; thus, the terms "Certificateowner" and "Certificateholder" must mean the same thing.  This argument ignores that "Certificateowner" and "Certificateholder" are defined terms given different meanings in the GAs.  *See* Decls. Ex. EE.  Plaintiffs' argument (Opp'n 13) that the Court should read "Holder" to refer to beneficial owners (*i.e.*, Certificateowners) is nonsensical in light of these definitions.[6]  Negating clauses in 278 GAs bar Plaintiffs' claims as to those Trusts.

---

[6] Plaintiffs' reliance on extrinsic evidence that the Indenture Trustee has referred to RMBS investors as "Holders" in other contexts (Opp'n 14) is unavailing.  The GAs are unambiguous.  *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466-67 (2d Cir. 2010).  In any event, the statements excerpted by Plaintiffs, without context, prove nothing.

Plaintiffs cannot pretend to be third parties on the ground that "no one has standing to bring the contract claims" if the negating clauses are enforced.  Opp'n 15.  This argument fails for two reasons.  First, the Depository Trust Company ("DTC") could bring the action.  Plaintiffs' claim that DTC could not be expected to do so because it has only nominal, administrative duties and no economic interest (Opp'n 14) in the Trusts is fundamentally inconsistent with their theory of liability against the Trustees, who have similarly limited duties.  Second, under the GAs, Certificateowners may ***become*** Certificateholders, and the GAs' signatories and various other parties (such as the Swap Provider, the Cap Provider, or various Insurers), all have enforcement rights.  R.Decls. Ex. UU; *see also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 988 F.Supp. 367, 373 (S.D.N.Y. 1997) ("[O]nly the third party [beneficiary] may recover if the promisor breaches the contract . . . .").[7]

A litigation authorization cannot cure the defect.  Plaintiffs' cited cases are distinguishable because none involved a contract with a negating clause; rather all the contracts ***permitted*** "Certificateholders" to provide litigation authorization.[8]  In *HSBC II*, the court recently reaffirmed that negating clauses must be enforced, but erroneously opined that litigation

---

[7] Plaintiff's reliance on *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*, 918 N.Y.S.2d 73, 75 (1st Dep't 2011) (Opp'n 15-16), to argue against the enforceability of negating clauses is misplaced.  As other courts have recognized, *Diamond Castle* "runs contrary to the principle in New York law that contracting parties may simultaneously elect to confer a benefit or right upon a third party and to limit that right, including by limiting the third party's enforcement powers."  *In re Lehman Bros. Holdings Inc.*, 479 B.R. 268, 276, n.2 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75 (2d Cir. 2013) (quoting *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F.Supp.2d 375, 410 (S.D.N.Y. 2011)).

[8] *See, e.g.*, *Allan Applestein TTEE FBO D.C.A. Grantor Trust v. The Province of Buenos Aires*, 415 F.3d 242, 243-44 (2d Cir. 2005) (contracts provided that "DTC . . . may grant proxies or otherwise authorize" beneficial owners "to exercise any rights of a holder"); *Fontana v. Republic of Argentina*, 415 F.3d 238, 240 (2d Cir. 2005) (holder could authorize beneficial owners to take any actions the holder could); *Springwell Navigation Corp. v. Sanluis Corporacion, S.A.*, 917 N.Y.S. 2d 560, 561 (1st Dep't 2011) ("***indenture expressly permits the registered holder to assign its right*** to institute any legal action to an appointed proxy") (emphasis added).

authority could potentially cure a standing defect, citing *Applestein* and its progeny.  *See HSBC II*, 2015 WL 3466121, at *10-11.  Unlike here, those cases involved GAs that permitted litigation authorizations and contained no negating clause.  In addition, here, the GAs provide a mechanism by which Certificateowners can become a Certificateholder.  *See* R.Decls. Ex. UU.  This provision and the negating clauses would be meaningless if Certificateowners could assert some implied enforcement right. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).

### B.    Plaintiffs Have Not Alleged Trust-Specific, Discovered R&W Breaches.

Plaintiffs' R&W-related claims should be dismissed given the absence of allegations concerning the relevant Trusts or Defendants' discovery of R&W breaches.  Mot. 22-25.  Plaintiffs argue that, under Rule 8, they need not allege specific breaches of specific loans (Opp'n 19), but that attacks a strawman.  Plaintiffs must allege facts relating to the Trusts ***at issue*** and plausibly plead Defendants' actual discovery of breaches in those Trusts on a loan-by-loan basis.  Allegations about *different* trusts fail given the "significant differences in the proof." *PABF*, 775 F.3d at 162-63.  All other breaches are insufficiently pled.  *See* Mot. 19-20, 22-25.

Plaintiffs separately claim (Opp'n 19-20) that Defendants failed to respond to reports of breaches in the industry, but ignore that R&W breaches cannot be inferred from high borrower default rates, collateral losses, or allegations of generalized originator misconduct. Mot. 24-25.[9] In addition, "proof that [a trustee] always failed to act when it was required to do so would not prove [plaintiffs'] case."  *PABF*, 775 F.3d at 162.  Even taken together, Plaintiffs' allegations are insufficient:  "zero plus zero plus zero plus zero plus zero" is still zero.  *City of Brockton Ret. Sys. v. Shaw Group Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008).  Neither *Policemen's Annuity &*

---

[9] Defendants respectfully submit that Judge Scheindlin wrongly relied upon "pervasive breaches of representations and warranties in the industry" in *HSBC II*, 2015 WL 3466121, at *6.  *See FHFA v. Nomura Holding Am., Inc.*, 60 F. Supp. 3d 479, 505-06 (S.D.N.Y. 2014).

*Ben. Fund of City of Chicago v. Bank of Am., NA*, 943 F. Supp. 2d 428, 441 (S.D.N.Y. 2013) nor

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank, Nat'l Ass'n*, 291 F.R.D. 47, 69 (S.D.N.Y.

2013) supports a different result.  Both pre-date *PABF* and involved loans of a single seller or

sponsor employing allegedly uniform practices.  The 846 Trusts here involve hundreds of

sponsors, sellers, and originators, with no allegation that all employed uniform practices.

      With respect to Defendants' supposed duty to monitor and investigate potential breaches,

Plaintiffs (Opp'n 17) distance themselves from the argument, presumably because those duties

do not exist (*see* Mot. 23; Decls. Ex. JJ), as certain Plaintiffs have admitted.  *See* Mot. 25 n.14.

But Plaintiffs seem to allege that "storm clouds" over loans and trusts *not* at issue here should

have prompted Defendants to investigate these loans and Trusts.[10]  Absent monitoring and

investigatory duties, there is no link between the purported "storm" and any actionable breach.

Rather, Plaintiffs must allege that Defendants discovered and ignored R&W breaches concerning

the relevant Trusts.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

      Plaintiffs acknowledge that some GAs do not expressly require the Trustees' enforcement

of R&W breaches but seek to infer this duty from the GAs' "reimbursement" and "sole remedy"

provisions.  Opp'n 19 n.27.  There is no basis for this inference.  *See, e.g.*, *Reiss v. Fin.

Performance  Corp.*, 97 N.Y.2d 195, 199 (2001).  The cited provisions – and Plaintiffs'

authorities (Opp'n 17 n.25) – are entirely consistent with the Trustee's permissive *right* to

enforce (*e.g.*, when directed by investors who offer indemnity).  They do not create a *duty* to

enforce in the absence of specific language imposing such a duty.  *See, e.g.,* S. Decl. Ex. 1 §

2.3(e).  Plaintiffs' misleading descriptions do not change the fact that the Trusts identified in the

---

[10] Plaintiffs now argue that Defendants failed "to ensure that complete mortgage files were
delivered to the trusts."  Opp'n 17.  But, any such duty arose with the Trusts' creation, more than
six years before Plaintiffs commenced suit, making the claim time-barred.  *See ACE Sec. Corp. v
DB Structured Prods., Inc.*, 2015 N.Y. LEXIS 1395 at *2 (N.Y. June 11, 2015).

amended F. Decl. Exs. N and FF either do not include language obligating Defendants to enforce repurchase obligations at all, or only obligate them to enforce under specific circumstances not pled here.  *See* F. R.Decl. Ex. VV.

Plaintiffs wrongly assume that a duty to investigate arose from servicing-related EODs. Opp'n 18.  Plaintiffs do not adequately allege such EODs in the first instance.  *See* Mot. 26-30; *infra* at § IV.C.  And, nothing in the GAs or otherwise suggests that servicing failures should prompt investigations of potential R&W breaches; while an EOD may cause a "prudent person" to investigate the subject matter of the default, it would not cause a "prudent person" to investigate matters unrelated to each other in substance, timing, and party.

### C.    Plaintiffs' EOD-Related Claims Fail Due To The Lack Of Any Alleged EOD.

Plaintiffs have failed to plead any predicate EODs triggering the alleged post-EOD duties. With respect to the seven PSAs that impose no post-EOD prudent person duties (*see* Mot. 26; F. Decl. Ex. RR), Plaintiffs cannot rely on the clause that "[n]o provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct."  Opp'n 21.  That sentence imposes no duties at all— much less prudent person duties—and none can be implied.  *See, e.g.*, F. Decl. Ex. 169 § 8.01(a); *see also Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, 2013 WL 1655990, at *2 (S.D.N.Y. Apr. 17, 2013) (dismissing breach of contract claim); *Arrowgrass Master Fund Ltd. v. The Bank of N.Y. Mellon*, 2012 WL 8700416, at *12 (Sup. Ct. N.Y. Cnty. Feb. 24, 2012) (similar).

Plaintiffs have not pled EODs for the Indenture Trusts.  Plaintiffs admit that only the conduct of the Issuer can constitute an EOD, but do not allege any Issuer breach of duty.  Opp'n 24; Decls. Ex. R.  The purported Issuer EOD with respect to a single Trust in *Phoenix Light* is insufficiently pled.  *See* Mot. 26 n.15.  As discussed, *see supra* at § III, Servicer breaches cannot substitute for Issuer breaches, and they are inadequately pled.

Plaintiffs fail to plead Master Servicer breaches.  For 198 Trusts, Plaintiffs do not dispute that only a *Master* Servicer breach can lead to an EOD.  Plaintiffs cannot now claim EODs based on Master Servicers' purported failure "to terminate offending servicers" (Opp'n 22), because Master Servicers have no express or uniform duty to terminate servicers.  Even if such a duty existed, Plaintiffs have not alleged Master Servicer conduct at all, let alone a failure to terminate a particular Servicer for a particular Trust.  Whether Master Servicers sometimes act as Servicers (*id.*) is irrelevant, as those obligations concern Servicer, not Master Servicer, duties.

Plaintiffs fail to plead *Servicer* breaches.  Plaintiffs fail to allege any Servicer breaches for the Trusts identified in Decls. Exhibit T, instead alleging "widespread abuses" by "common" servicers in the industry.  Opp'n 1.  There is no basis for treating different Servicers as a jointly-liable whole.  The actions of *other* actors do not lead to a plausible inference that *these* Servicers failed to comply with their obligations under *these* Trusts.  *Cf. PABF*, 775 F.3d. at 161-62.

Plaintiffs fail to allege an EOD based on Servicer material defaults continuing after notice and opportunity to cure.  For 539 Trusts, Plaintiffs concede that they have not pled that Servicer material defaults continued after notice and an opportunity to cure, instead blaming Defendants for not providing notice.  Opp'n 23-24.  But absent an explicit obligation, Defendants only had the right, but not the duty, to provide such notice.  American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions*, § 5-1, at 207–08 (1971) (for EODs, "the Trustee is not compelled to give the notice of default to the Company that commences the grace period . . . .").  In this context, the phrase "shall have been given" in the GAs can only mean if and when notice "has been given" in the future, not "which must be given." *See* Black's Law Dictionary 1585 (10th ed. 2014) (defining "Shall" to convey, depending upon context, a future tense verb, rather than a duty).  Plaintiffs' reliance on *In re Banker's Trust Co.* and its progeny (Opp'n 23-24) is thus misplaced; they address a trustee's "failure to fulfill its

affirmative dut[ies]." *In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006).[11]  Absent this

duty, Plaintiffs' reference to the prevention doctrine is unavailing.  Opp'n 26 n.36; Mot. 28-29.

*Millennium Partners*, 2013 WL 1655990, at *4 cannot be distinguished on the ground that the

plaintiffs "failed to sufficiently plead the occurrence of a servicer default and the [] trustee's

knowledge thereof" (Opp'n 24 n.33) because Plaintiffs' Complaints suffer that exact defect.

### D.    Plaintiffs Fail To Plead Defendants' Actual Knowledge Of EODs.

Even if the predicate EODs had been pled, Plaintiffs have not adequately pled Defendants'

knowledge of them.  The GAs define the requisite "knowledge" as receipt of a specific written

notice of, or actual knowledge of, EODs by a designated "Responsible Officer."  Mot. 29.

Plaintiffs argue that failure to plead written notice does not preclude actual knowledge (Opp'n

25-26), but they pled neither.  Contrary to Plaintiffs' assertions (Opp'n 26 n.35), the Complaints

merely describe the GAs' terms, and do not allege that Trustees in fact received written notice,

BR-WF ¶¶ 249, 251-52; BP-DB ¶¶ 271, 273-74; NCUA ¶¶ 383-84; PL ¶ 317, or reference

alleged notifications with respect to Trusts at issue in this case.  NCUA ¶¶ 291-93, PL ¶¶ 329-32.

Even under Plaintiffs' authority, absent written notice, Defendants' post-EOD duties are

triggered only by "actual knowledge."  *BNP Paribas*, 778 F. Supp. 2d at 395-98 (cited Opp'n 25-

26).  Where, as here, Defendants have no duty to investigate unless so directed by a specified

percentage of investors (Decls. Ex. JJ) and may rely conclusively upon servicer certifications of

compliance, "actual knowledge" ***must mean*** Defendants' specific knowledge of contractually-

defined EODs in the relevant Trusts.  Plaintiffs nowhere allege such "actual knowledge," relying

instead on information about other trusts and media reports about the industry that are

insufficient.  *See supra* at § IV.B.  Plaintiffs' argument must fail, or it would effectively "read[]

---

[11] Judge Scheindlin incorrectly concluded that the *HSBC II* plaintiffs had pled an EOD where "it [was] unclear whether HSBC had a duty to give notice."  *HSBC II*, 2015 WL 3466121, at *9.

out" actual knowledge from the GAs.  Opp'n 26 (quoting *BNP Paribas*, 778 F. Supp. 2d at 397);

*see also Arrowgrass*, 2012 WL 8700416, at *9-10 (rejecting "blatant[] attempt[] to excise"

"'actual knowledge' requirement and replace it with 'notice'").

> **E.     Plaintiffs' Contract Claims Are Barred By No-Action Clauses.**

Plaintiffs do not claim to satisfy the No-Action Clauses' prerequisites to suit.  Mot. 30-32;

Decls. Ex. QQ.  They argue that a prerequisite is unenforceable, *see Cruden v. The Bank of N.Y.*,

957 F.2d 961, 968-69 (2d Cir. 1992), and non-severable, rendering the Clauses void.  Opp'n 26-

27.  But the GAs require severance of unenforceable provisions, and severance cannot "affect the

validity or enforceability of the other provisions."  Mot. 32.  Plaintiffs' non-New York cases

(Opp'n 27) cannot trump the GAs' terms, and do not address *Cruden*'s policy concerns.  Mot. 31.

In fact, the court ultimately dismissed both cases cited by Plaintiffs because of the no-action

clause.  *See, e.g., Sterling Fed. Bank, F.S.B. v. Bank of New York Mellon*, 2012 WL 3101699, at

*3 (N.D. Ill. July 30, 2012).

## V.     PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs fail to defend their § 124 claims, rendering them waived.  Plaintiffs also cannot

salvage their § 126 claims by wrongly asserting that RMBS are "mortgage investments" under

the Streit Act.  Opp'n 31.  RMBS are certificates that entitle holders to a share of mortgage

payments.  They are not secured by mortgages or property, and thus have no *direct* connection

with real estate.  *See PABF*, 775 F.3d at 165.  Accordingly, Plaintiffs cannot distinguish

*Prudence Realization Corp. v. Atwell* (Opp'n 31 n.43), which held the Streit Act applicable only

to trusts "dealing directly with real estate."  35 N.Y.S.2d 1001, 1005 (1st Dep't 2011).  Judge

Scheindlin erroneously reached a contrary conclusion by overlooking that the *Prudence* trust,

like those here, held bonds "secured by a mortgage on real estate."  *Id.* at 1003.

Plaintiffs ignore that § 126 merely requires the inclusion of certain provisions, which are

present here.  Mot. 32-33.  Plaintiffs' authorities are either *dicta*, *see Beck v. Mfrs. Hanover Trust Co.*, 632 N.Y.S.2d 520, 528 (1st Dep't 1995), wholly inapposite, *see In re Colonial Trust Co.*, 67 N.Y.S.2d 534, 539 (Sup. Ct. N.Y. Cnty. 1946), or supportive of Defendants' argument, *see Harper v. Larchmont Yacht Club*, 38 N.Y.S.2d 505, 508 (Sup. Ct. N.Y. Cnty. 1942).  Plaintiffs cite no case implying a private remedy for damages under the Streit Act.  *Harper* discusses suits against the *issuer* of the bonds, not the trustee, for unpaid interest.  *See id.* at 510.

## VI.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED.

Plaintiffs argue that their tort claims are based on an extra-contractual duty to avoid conflicts of interest, yet inconsistently concede that those claims are "connected with and dependent upon the indenture."  Opp'n 33; WF-BR ¶ 548.  Plaintiffs must show, but cannot show, how Defendants improperly benefitted as Trustees from the commonplace fee arrangements and industry relationships that they assert give rise to a conflict.  *See CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 475 (S.D.N.Y. 2010).  While Plaintiffs assert that Defendants failed to act because it would have purportedly exposed their "misconduct" as Sellers and Servicers for other RMBS trusts (Opp'n 34), they allege no specific misconduct or how the asserted misconduct conferred a financial benefit on Defendants as Trustees at the expense of Trust beneficiaries.  Mere assumption of misconduct and benefit cannot survive a motion to dismiss.  *See Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 70 (2d Cir. 1988).  Finally, the Defendants have no special duty to Plaintiffs to support a negligent misrepresentation claim.  *HSBC II*, 2015 WL 3466121, at *12.

## CONCLUSION

Plaintiffs' claims should be dismissed.  As Plaintiffs waived their opportunity to amend in connection with the Court's pre-motion letter process, no leave to amend should be granted.

-15-

Dated: June 29, 2015

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Elizabeth A. Frohlich*

William P. Quinn, Jr., Esq.
  *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel:    (215) 963-5000
Fax:   (215) 963-5001
wquinn@morganlewis.com

Elizabeth A. Frohlich, Esq.
  *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    (415) 442.1000
Fax:   (415) 442.1001
efrohlich@morganlewis.com

Bernard J. Garbutt III, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:   (212) 309-6001
bgarbutt@morganlewis.com

Attorneys for Defendants
Deutsche Bank National Trust Company and
Deutsche Bank Trust Company Americas

JONES DAY

By: */s/ Jayant W. Tambe*

Jayant W. Tambe, Esq.
Howard F. Sidman, Esq.
Jason Jurgens, Esq.
JONES DAY
222 East 41st Street
New York, NY 10017
Tel:    (212) 326-3939
Fax:   (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
jjurgens@jonesday.com

Traci L. Lovitt, Esq.
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel:    (617) 449-6900
Fax:   (617) 449-6999
tlovitt@jonesday.com

Attorneys for Defendant
Wells Fargo Bank, N.A.