# EXHIBIT 201

HSI ASSET SECURITIZATION CORPORATION,
Depositor


NC CAPITAL CORPORATION,
Mortgage Loan Seller,


WELLS FARGO BANK, N.A.,
Master Servicer and Securities Administrator


JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
Servicer


and


DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee and Custodian


POOLING AND SERVICING AGREEMENT

Dated as of February 1, 2006


HSI ASSET SECURITIZATION CORPORATION TRUST 2006-NC1


MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2006-NC1

# TABLE OF CONTENTS

<u>Page</u>

## ARTICLE I

### DEFINITIONS

## ARTICLE II

### CONVEYANCE OF MORTGAGE LOANS; REPRESENTATIONS AND WARRANTIES

| | | |
|---|---|---|
| Section 2.01 | Conveyance of Mortgage Loans | 46 |
| Section 2.02 | Acceptance by the Custodian of the Mortgage Loans | 50 |
| Section 2.03 | Representations, Warranties and Covenants of the Mortgage Loan Seller and the Servicer; Remedies for Breaches of Representations and Warranties with Respect to the Mortgage Loans | 51 |
| Section 2.04 | Execution and Delivery of Certificates | 55 |
| Section 2.05 | REMIC Matters | 55 |
| Section 2.06 | Representations and Warranties of the Depositor | 55 |

## ARTICLE III

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

| | | |
|---|---|---|
| Section 3.01 | Servicer to Service Mortgage Loans | 56 |
| Section 3.02 | Subservicing Agreements between Servicer and Subservicers; Use of Subcontractors | 58 |
| Section 3.03 | Successor Subservicers | 60 |
| Section 3.04 | Liability of the Servicer | 60 |
| Section 3.05 | No Contractual Relationship between Subservicers and the Master Servicer | 61 |
| Section 3.06 | Assumption or Termination of Subservicing Agreements by Master Servicer | 61 |
| Section 3.07 | Collection of Certain Mortgage Loan Payments | 61 |
| Section 3.08 | Subservicing Accounts | 64 |
| Section 3.09 | Collection of Taxes, Assessments and Similar Items; Escrow Accounts | 65 |
| Section 3.10 | Collection Account | 66 |
| Section 3.11 | Withdrawals from the Collection Account | 67 |
| Section 3.12 | Investment of Funds in the Collection Account, Escrow Accounts and the Distribution Account | 68 |

Section 3.13    Maintenance of Hazard Insurance and Errors and Omissions and Fidelity
                Coverage ...................................................................................................70
Section 3.14    Enforcement of Due-On-Sale Clauses; Assumption Agreements ...................71
Section 3.15    Realization upon Defaulted Mortgage Loans .................................................72
Section 3.16    Release of Mortgage Files .............................................................................73
Section 3.17    Title, Conservation and Disposition of REO Property ..................................75
Section 3.18    Notification of Adjustments...........................................................................76
Section 3.19    Access to Certain Documentation and Information Regarding the
                Mortgage Loans .............................................................................................76
Section 3.20    Documents, Records and Funds in Possession of the Servicer to Be Held
                for the Trustee ...............................................................................................77
Section 3.21    Servicing Compensation ................................................................................77
Section 3.22    Report on Assessment of Compliance with Relevant Servicing Criteria. .........78
Section 3.23    Report on Attestation of Compliance with Relevant Servicing Criteria.............79
Section 3.24    Annual Officer's Certificates..........................................................................79
Section 3.25    Master Servicer to Act as Servicer..................................................................80
Section 3.26    Compensating Interest ...................................................................................81
Section 3.27    Credit Reporting; Gramm-Leach-Bliley Act .................................................81
Section 3.28    [Reserved]......................................................................................................81
Section 3.29    Obligations of the Custodian; Indemnification...............................................81
Section 3.30    Notifications to Parties....................................................................................82

ARTICLE IV

DISTRIBUTIONS AND
ADVANCES BY THE SERVICER

Section 4.01    Advances.........................................................................................................83
Section 4.02    Priorities of Distribution .................................................................................84
Section 4.03    Monthly Statements to Certificateholders ......................................................89
Section 4.04    Certain Matters Relating to the Determination of LIBOR...............................92
Section 4.05    Allocation of Applied Realized Loss Amounts ...............................................93
Section 4.06    Supplemental Interest Trust. ...........................................................................93
Section 4.07    Rights of the Swap Counterparty.....................................................................94
Section 4.08    Termination Receipts. .....................................................................................95

ARTICLE V

THE CERTIFICATES

Section 5.01    The Certificates...............................................................................................96
Section 5.02    Certificate Register; Registration of Transfer and Exchange of
                Certificates ....................................................................................................97
Section 5.03    Mutilated, Destroyed, Lost or Stolen Certificates ........................................103
Section 5.04    Persons Deemed Owners ...............................................................................103
Section 5.05    Access to List of Certificateholders' Names and Addresses ..........................103

Section 5.06    Maintenance of Office or Agency......................................................104

## ARTICLE VI

### THE DEPOSITOR AND THE SERVICER

Section 6.01    Respective Liabilities of the Depositor and the Servicer....................104
Section 6.02    Merger or Consolidation of the Depositor or the Servicer ................104
Section 6.03    Limitation on Liability of the Depositor, the Servicer and Others. .................104
Section 6.04    Limitation on Resignation of the Servicer. .......................................105
Section 6.05    Additional Indemnification by the Servicer; Third Party Claims. ...................105
Section 6.06    Compliance with Regulation AB; Cooperation of Parties................................106

## ARTICLE VII

### DEFAULT

Section 7.01    Events of Default .............................................................................107
Section 7.02    Master Servicer to Act; Appointment of Successor.........................109
Section 7.03    Notification to Certificateholders ...................................................111

## ARTICLE VIII

### CONCERNING THE TRUSTEE

Section 8.01    Duties of the Trustee.......................................................................111
Section 8.02    Certain Matters Affecting the Trustee ...........................................112
Section 8.03    Trustee Not Liable for Certificates or Mortgage Loans...................113
Section 8.04    Trustee May Own Certificates ......................................................113
Section 8.05    Trustee's Fees Indemnification and Expenses................................113
Section 8.06    Eligibility Requirements for the Trustee.........................................114
Section 8.07    Resignation and Removal of the Trustee .......................................115
Section 8.08    Successor Trustee...........................................................................116
Section 8.09    Merger or Consolidation of the Trustee.........................................116
Section 8.10    Appointment of Co-Trustee or Separate Trustee ...........................116
Section 8.11    Tax Matters ....................................................................................117
Section 8.12    Commission Reporting ...................................................................121
Section 8.13    Tax Classification of the Excess Reserve Fund Account and the
                       Supplemental Interest Trust ...........................................................127

## ARTICLE IX

### ADMINISTRATION OF THE MORTGAGE LOANS
### BY THE MASTER SERVICER

Section 9.01    Duties of the Master Servicer; Enforcement of Servicer Obligations. .............127

Section 9.02    Assessment, Attestation Annual Statement as to Compliance of the
                Master Servicer .................................................................................128
Section 9.03    [Reserved].........................................................................................128
Section 9.04    Maintenance of Fidelity Bond and Errors and Omissions Insurance. .............128
Section 9.05    Representations and Warranties of the Master Servicer ...................................129
Section 9.06    Master Servicer Events of Default..................................................................130
Section 9.07    Waiver of Default. ..........................................................................................132
Section 9.08    Successor to the Master Servicer. ..................................................................132
Section 9.09    Compensation of the Master Servicer..............................................................133
Section 9.10    Merger or Consolidation...................................................................................133
Section 9.11    Resignation of the Master Servicer..................................................................133
Section 9.12    Assignment or Delegation of Duties by the Master Servicer. ..........................134
Section 9.13    Limitation on Liability of the Master Servicer. .............................................134
Section 9.14    Indemnification; Third Party Claims. .............................................................135

## ARTICLE X

## CONCERNING THE SECURITIES ADMINISTRATOR

Section 10.01   Duties of Securities Administrator....................................................................136
Section 10.02   Certain Matters Affecting the Securities Administrator. ..................................137
Section 10.03   Securities Administrator Not Liable for Certificates or Mortgage Loans. .......138
Section 10.04   Securities Administrator May Own Certificates...............................................139
Section 10.05   Securities Administrator's Fees and Expenses.................................................139
Section 10.06   Eligibility Requirements for Securities Administrator. ....................................140
Section 10.07   Resignation and Removal of Securities Administrator......................................140
Section 10.08   Successor Securities Administrator. ................................................................141
Section 10.09   Merger or Consolidation of Securities Administrator. .....................................142
Section 10.10   Assignment or Delegation of Duties by the Securities Administrator..............142
Section 10.11   Attestation, Annual Statement of Compliance of the Securities
                Administrator ..................................................................................................142

## ARTICLE XI

## TERMINATION

Section 11.01   Termination upon Liquidation or Purchase of the Mortgage Loans.................143
Section 11.02   Final Distribution on the Certificates...............................................................143
Section 11.03   Additional Termination Requirements .............................................................145

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.01   Amendment.......................................................................................................145
Section 12.02   Recordation of Agreement; Counterparts .........................................................147

Section 12.03    Governing Law .................................................................................148
Section 12.04    Intention of Parties..........................................................................148
Section 12.05    Notices ..............................................................................................149
Section 12.06    Severability of Provisions ...............................................................150
Section 12.07    Assignment .......................................................................................150
Section 12.08    Limitation on Rights of Certificateholders ....................................150
Section 12.09    Inspection and Audit Rights............................................................151
Section 12.10    Certificates Nonassessable and Fully Paid ....................................151
Section 12.11    Rule of Construction ........................................................................152
Section 12.12    Waiver of Jury Trial.........................................................................152

SCHEDULES

Schedule I        Mortgage Loan Schedule

Schedule II       Representations and Warranties of JPMorgan Chase Bank, National
                  Association, as Servicer

Schedule III      Representations and Warranties of NC Capital Corporation, as Mortgage Loan
                  Seller

Schedule IV       Representations and Warranties of NC Capital Corporation as to the Individual
                  Mortgage Loans

EXHIBITS

Exhibit A         Form of Class A and Class M Certificates

Exhibit B         Form of Class P Certificate

Exhibit C         Form of Class R Certificate

Exhibit D         Form of Class X Certificate

Exhibit E         Form of Initial Certification of Custodian

Exhibit F         Form of Document Certification and Exception Report of Custodian

Exhibit G         Form of Residual Transfer Affidavit

Exhibit H         Form of Transferor Certificate

Exhibit I         Form of Rule 144A Letter

Exhibit J         Form of Request for Release

Exhibit K         Contents for Each Mortgage File

Exhibit L         Form of Sarbanes-Oxley Certification to be Provided by Master Servicer (or
                  other Certification Party) with Form 10-K

Exhibit M         Form of Servicer (or Servicing Function Participant) Back-Up Certification

Exhibit N-1       Form of Monthly Remittance Advice

Exhibit N-2       Standard Layout for Monthly Defaulted Loan Report

Exhibit N-3       Form 332 Realized Loss Report

Exhibit O  Form of Swap Agreement

Exhibit P  Form of Cap Agreement

Exhibit Q  Form of Amended and Restated Master Mortgage Loan Purchase and Interim Servicing Agreement

Exhibit R  [Reserved]

Exhibit S  Servicing Criteria to be Addressed in Report on Assessment of Compliance

Exhibit T  Transaction Parties

Exhibit U  Form of Annual Compliance Certificate

Exhibit V  Additional Form 10-D Disclosure

Exhibit W  Additional Form 10-K Disclosure

Exhibit X  Form 8-K Disclosure Information

THIS POOLING AND SERVICING AGREEMENT, dated as of February 1, 2006, among HSI ASSET SECURITIZATION CORPORATION, as depositor (the "Depositor"), NC CAPITAL CORPORATION, a California Corporation, as mortgage loan seller (the "Mortgage Loan Seller"), JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as servicer (the "Servicer"), WELLS FARGO BANK, N.A., a national banking association, as master servicer (in such capacity, the "Master Servicer") and securities administrator (in such capacity, the "Securities Administrator"), and DEUTSCHE BANK NATIONAL TRUST COMPANY, a national banking association, as trustee (in such capacity, the "Trustee") and custodian (in such capacity, the "Custodian").

## W I T N E S S E T H:

In consideration of the mutual agreements herein contained, the parties hereto agree as follows:

### PRELIMINARY STATEMENT

The Securities Administrator on behalf of the Trust Fund (exclusive of (i) the Swap Agreement, (u) the Cap Agreement (iii) the right to receive and the obligation to pay Basis Risk Carryover Amounts, (iv) the Excess Reserve Fund Account, (v) the Supplemental Interest Trust and the Supplemental Interest Trust Account and (vi) the obligations to pay Class I Shortfalls (collectively, the "Excluded Trust Assets") shall elect that two segregated asset pools within the Trust Fund be treated for federal income tax purposes as comprising three real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative, "REMIC 1," REMIC 2" and "REMIC 3,"; REMIC 3 also being referred to herein as the "Upper Tier REMIC.") Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC election.

Each Certificate, other than the Class R Certificates, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. In addition, each Certificate, other than the Class R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Carryover Amounts and (ii) the obligation to pay Class I Shortfalls. The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 1, REMIC 2 and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the Class LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2 for purposes of the REMIC Provisions. REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 1. REMIC 1 shall hold as its assets the property of the Trust Fund other than the Lower Tier Interests in REMIC 1 and REMIC 2 and the Excluded Trust Assets.

Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in such certification as an exception and not covered by such certification): (i) all documents identified in the Document Certification and Exception Report and required to be reviewed by it are in its possession; (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan; (iii) based on its examination and only as to the foregoing documents, the information set forth in items (1), (2), (3), (15), (18) and (22) of the Data Tape Information respecting such Mortgage Loan is correct; and (iv) each Mortgage Note has been endorsed as provided in Section 2.01 of this Agreement. Neither the Trustee nor the Custodian shall be responsible to verify the validity, sufficiency or genuineness of any document in any Custodial File.

The Custodian shall retain possession and custody of each Custodial File in accordance with and subject to the terms and conditions set forth herein. The Servicer shall promptly deliver to the Custodian, upon the execution or receipt thereof, the originals of such other documents or instruments constituting the Custodial File as come into the possession of the Servicer from time to time.

The Mortgage Loan Seller shall deliver to the Servicer copies of all trailing documents required to be included in the Custodial File at the same time the original or certified copies thereof are delivered to the Custodian, including but not limited to such documents as the title insurance policy and any other Mortgage Loan documents upon return from the public recording office. The documents shall be delivered by the Mortgage Loan Seller at the Mortgage Loan Seller's expense to the Servicer.

Section 2.03   Representations, Warranties and Covenants of the Mortgage Loan Seller and the Servicer; Remedies for Breaches of Representations and Warranties with Respect to the Mortgage Loans. (a) JPMorgan, in its capacity as Servicer makes the representations and warranties set forth in Schedule II hereto, to the Depositor, the Master Servicer, the Securities Administrator and the Trustee as of the Closing Date.

(b)   NC Capital Corporation, in its capacity as Mortgage Loan Seller, makes the representations and warranties set forth in Schedule III and Schedule IV hereto, to the Depositor, the Master Servicer, the Securities Administrator and the Trustee as of the date specified therein.

(c)   It is understood and agreed by the Servicer and the Mortgage Loan Seller that the representations and warranties set forth in this Section 2.03 shall survive the transfer of the Mortgage Loans by the Depositor to the Trustee on the Closing Date, and shall inure to the benefit of the Depositor, the Trustee and the Trust Fund notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or failure to examine any Mortgage File. Upon discovery by the Mortgage Loan Seller, the Depositor, the Securities Administrator, the Trustee, the Master Servicer or the Servicer of a breach of any of the foregoing representations and warranties, the party discovering such breach shall give prompt written notice to the others.

(d)     Within 30 days of the earlier of either discovery by or notice to the Mortgage Loan Seller that any Mortgage Loan does not conform to the requirements as determined in the Custodian's review of the related Custodial File or within 60 days of the earlier of either discovery by or notice to the Mortgage Loan Seller of any breach of a representation or warranty referred to in Section 2.03(b) that materially and adversely affects the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein, the Mortgage Loan Seller shall use its best efforts to cause to be remedied a material defect in a document constituting part of a Mortgage File or promptly to cure such breach in all material respects and, if such defect or breach cannot be remedied, the Mortgage Loan Seller shall, at the Depositor's option as specified in writing and provided to the Mortgage Loan Seller and the Trustee, (i) if such 30- or 60-day period, as applicable, expires prior to the second anniversary of the Closing Date, remove such Mortgage Loan (a "Deleted Mortgage Loan") from the Trust Fund and substitute in its place a Substitute Mortgage Loan, in the manner and subject to the conditions set forth in this Section 2.03; or (ii) repurchase such Mortgage Loan at the Repurchase Price; provided, however, that any such substitution pursuant to clause (i) above shall not be effected prior to the delivery to the Custodian of a Request for Release substantially in the form of Exhibit J, and the delivery of the Mortgage File to the Custodian for any such Substitute Mortgage Loan. Notwithstanding the foregoing, a breach (i) which causes a Mortgage Loan not to constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code or (ii) of any of the representations and warranties set forth in items number (44), (45), (47), (54), (55), (56), (57), (58), (59), (60), (63) and (82) of Schedule IV with respect to any Group I Mortgage Loan, will be deemed automatically to materially and adversely affect the value of such Mortgage Loan and the interests of the Trustee and Certificateholders in such Mortgage Loan, requiring the repurchase or substitution of such Mortgage Loan by the Mortgage Loan Seller irrespective of the Mortgage Loan Seller's actual knowledge of the breach of such representation and warranty. In the event that the Trustee receives notice of a breach by the Mortgage Loan Seller of any of the representations and warranties described in the immediately preceding sentence, the Trustee shall give notice of such breach to the Mortgage Loan Seller and request the Mortgage Loan Seller to substitute such Mortgage Loan or to repurchase such Mortgage Loan at the Repurchase Price within sixty (60) days of the receipt of such notice. The Mortgage Loan Seller shall repurchase each such Mortgage Loan within 60 days of the earlier of discovery or receipt of notice with respect to each such Mortgage Loan.

(e)     With respect to any Substitute Mortgage Loan or Loans, the Mortgage Loan Seller shall deliver to the Custodian for the benefit of the Certificateholders the Mortgage Note, the Mortgage, the related assignment of the Mortgage, and such other documents and agreements as are required by Section 2.01, with the Mortgage Note endorsed and the Mortgage assigned as required by Section 2.01. No substitution is permitted to be made with respect to any Distribution Date after the end of the related Prepayment Period. Scheduled Payments due with respect to Substitute Mortgage Loans in the Due Period of substitution shall not be part of the Trust Fund and will be retained by the Mortgage Loan Seller on the next succeeding Distribution Date. For the Due Period of substitution, distributions to Certificateholders will include the Scheduled Payment due on any Deleted Mortgage Loan for such Due Period and thereafter the Mortgage Loan Seller shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan.

(f)     The Servicer shall amend the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the substitution of the Substitute Mortgage Loan or Loans and the Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee and the Custodian.  Upon such substitution, the Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects, and the Mortgage Loan Seller shall be deemed to have made with respect to such Substitute Mortgage Loan or Loans, as of the date of substitution, the representations and warranties made pursuant to Section 2.03(b) with respect to such Mortgage Loan.  Upon any such substitution and the deposit to the Collection Account of the amount required to be deposited therein in connection with such substitution as described in the following paragraph, the Custodian shall release the Mortgage File held for the benefit of the Certificateholders relating to such Deleted Mortgage Loan to the Mortgage Loan Seller and the Trustee, upon receipt of a Request for Release certifying that all amounts required to be deposited in accordance with this Section 2.03(f) have been deposited in the Collection Account, shall execute and deliver at the Mortgage Loan Seller's direction such instruments of transfer or assignment prepared by the Mortgage Loan Seller in each case without recourse, as shall be necessary to vest title in the Mortgage Loan Seller of the Trustee's interest in any Deleted Mortgage Loan substituted for pursuant to this Section 2.03.

(g)     For any month in which the Mortgage Loan Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Servicer will determine the amount (if any) by which the aggregate unpaid principal balance of all such Substitute Mortgage Loans as of the date of substitution is less than the aggregate unpaid principal balance of all such Deleted Mortgage Loans.  The amount of such shortage plus an amount equal to the aggregate of any unreimbursed Advances with respect to such Deleted Mortgage Loans (collectively, the "Substitution Adjustment Amount") shall be remitted by the Mortgage Loan Seller to the Servicer for deposit into the Collection Account on or before the Distribution Account Deposit Date for the Distribution Date in the month succeeding the calendar month during which the related Mortgage Loan became required to be purchased or replaced hereunder.

(h)     In addition to the repurchase or substitution obligations referred to in Section 2.03(d) above and Section 2.03 (k) below, the Mortgage Loan Seller or the Sponsor, as applicable, shall indemnify the Depositor, any of its Affiliates, the Master Servicer, the Servicer, the Securities Administrator, the Trustee and the Trust and hold such parties harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses (including, without limitation, any taxes payable by the Trust) resulting from any third party claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach by the Mortgage Loan Seller or the Sponsor, as applicable, of any of its representations and warranties or obligations contained in this Agreement.

(i)     The Servicer shall amend the Mortgage Loan Schedule for the benefit of the Certificateholders to reflect the removal of such Deleted Mortgage Loan and the Servicer shall deliver the amended Mortgage Loan Schedule to the Trustee, the Custodian, the Master Servicer and the Securities Administrator.

(j)     In the event that a Mortgage Loan shall have been repurchased pursuant to this Agreement or the Purchase Agreement, the proceeds from such repurchase shall be

deposited by the Servicer in the Collection Account pursuant to Section 3.10 on or before the Remittance Date for the Distribution Date in the month following the month during which the Mortgage Loan Seller or Sponsor became obligated to repurchase or replace such Mortgage Loan and upon such deposit of the Repurchase Price, and receipt of a Request for Release in the form of Exhibit J hereto, the Custodian shall release the related Custodial File held for the benefit of the Certificateholders to the Mortgage Loan Seller or the Sponsor, as applicable, as directed by the Servicer, and the Trustee shall execute and deliver at such Person's direction such instruments of transfer or assignment prepared by such Person, in each case without recourse, as shall be necessary to transfer title from the Trustee.  In accordance with Section 12.05(a), the Securities Administrator shall promptly notify each Rating Agency of a purchase of a Mortgage Loan pursuant to this Section 2.03.

It is understood and agreed that the obligation of the Mortgage Loan Seller under this Agreement to cure, repurchase or substitute any Mortgage Loan as to which a breach of a representation and warranty has occurred and is continuing, together with any related indemnification obligations of the Mortgage Loan Seller set forth in Section 2.03(h), shall constitute the sole remedies against such Person respecting such breach available to Certificateholders, the Depositor and any of its Affiliates, or the Trustee on their behalf.

(k)     The Trustee acknowledges that, except as provided in Section 5 of the Purchase Agreement, the Sponsor shall not have any obligation or liability with respect to any breach of a representation or warranty made by it with respect to a Mortgage Loan sold by it, provided that such representation or warranty was also made by the Mortgage Loan Seller with respect to the related Mortgage Loan.  It is understood and agreed that the representations and warranties of the Sponsor set forth in Section 4 of the Purchase Agreement and assigned to the Trustee by the Depositor hereunder shall survive the transfer of the Mortgage Loans by the Depositor to the Trustee on the Closing Date, and shall inure to the benefit of the Trustee and the Certificateholders notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage and shall continue throughout the term of this Agreement. Upon the discovery by any of the Sponsor, the Depositor, the Securities Administrator, the Trustee, the Master Servicer or the Servicer of a breach of any of the Sponsor's representations and warranties set forth in Section 4 of the Purchase Agreement, the party discovering the breach shall give prompt written notice to the others.  Within 30 days of the earlier of either discovery by or notice to the Sponsor of any breach of any of the foregoing representations or warranties that materially and adversely affects the value of any Mortgage Loan or the interest of the Trustee or the Certificateholders therein, the Sponsor shall use its best efforts to cure such breach in all material respects and, if such defect or breach cannot be remedied, the Sponsor shall, at the Depositor's instructions as specified in writing and provided to the Sponsor and the Trustee, (i) if such 30-day period expires prior to the second anniversary of the Closing Date, remove such Mortgage Loan from the Trust Fund and substitute in its place a Substitute Mortgage Loan, in the same manner and subject to the same conditions set forth in this Section 2.03 that apply to repurchases or substitutions of Mortgage Loans by the Mortgage Loan Seller or (ii) repurchase such Mortgage Loan at the Repurchase Price; provided, however, that any such substitution pursuant to clause (i) above shall not be effected prior to the delivery to the Custodian of a Request for Release substantially in the form of Exhibit J, and the delivery of the Mortgage File to the Custodian for any such Substitute Mortgage Loan.  In the event of any such repurchase or substitution of a Mortgage Loan by the Sponsor, the procedures set forth in Sections 2.03(e), (f),

(g), (h), (i) and (j) shall apply to the Sponsor in the same manner and to the same extent that they are applicable to the Mortgage Loan Seller. It is understood and agreed that the obligations of the Sponsor under this Agreement to cure, repurchase or substitute any Mortgage Loan as to which a breach of a representation and warranty has occurred and is continuing, together with any related indemnification obligations of the Sponsor set forth in Section 2.03(h), shall constitute the sole remedies against the Sponsor available to the Certificateholders, the Depositor and any of its affiliates, or the Trustee on their behalf.

The provisions of this Section 2.03 shall survive delivery of the respective Custodial Files to the Custodian for the benefit of the Certificateholders.

Section 2.04   <u>Execution and Delivery of Certificates</u>. The Trustee acknowledges the transfer and assignment to it of the Trust Fund and, concurrently with such transfer and assignment, the Securities Administrator has executed and delivered to, or upon the order of the Depositor, the Certificates in authorized denominations evidencing directly or indirectly the entire ownership of the Trust Fund. The Trustee agrees to hold the Trust Fund and exercise the rights referred to above for the benefit of all present and future Holders of the Certificates.

Section 2.05   <u>REMIC Matters</u>.   The Preliminary Statement sets forth the designations for federal income tax purposes of all interests created hereby. The "<u>Startup Day</u>" for purposes of the REMIC Provisions shall be the Closing Date. The "<u>latest possible maturity date</u>" is the Distribution Date occurring in November 2039, which is the Distribution Date in the month following the month in which the latest Mortgage Loan maturity date occurs.

Section 2.06   <u>Representations and Warranties of the Depositor</u>. The Depositor hereby represents, warrants and covenants to the other parties to this agreement that as of the date of this Agreement or as of such date specifically provided herein:

(a)      The Depositor is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware;

(b)      The Depositor has the power and authority to convey the Mortgage Loans and to execute, deliver and perform, and to enter into and consummate transactions contemplated by, this Agreement;

(c)      This Agreement has been duly and validly authorized, executed and delivered by the Depositor, all requisite company action having been taken, and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes or will constitute the legal, valid and binding agreement of the Depositor, enforceable against the Depositor in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(d)      No consent, approval, authorization or order of, or registration or filing with, or notice to, any governmental authority or court is required for the execution, delivery and performance of or compliance by the Depositor with this Agreement or the consummation by the

Section 7.03   Notification to Certificateholders. (a) Upon any termination of or appointment of a successor to the Servicer, the Securities Administrator shall give prompt written notice thereof to Certificateholders, each Rating Agency and the Derivative Counterparty.

(b)      Within 60 days after the occurrence of any Event of Default, the Securities Administrator shall transmit by mail to all Certificateholders, each Rating Agency and the Derivative Counterparty notice of each such Event of Default hereunder known to the Securities Administrator, unless such event shall have been cured or waived.

## ARTICLE VIII

## CONCERNING THE TRUSTEE

Section 8.01   Duties of the Trustee. The Trustee, before the occurrence of a Master Servicer Event of Default and after the curing of all Master Servicer Events of Default that may have occurred, shall undertake to perform such duties and only such duties as are specifically set forth in this Agreement. In case a Master Servicer Event of Default has occurred and remains uncured, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

The Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement, shall examine them to determine whether they are in the form required by this Agreement. The Trustee shall not be responsible for the accuracy or content of any resolution, certificate, statement, opinion, report, document, order, or other instrument.

No provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct.

Unless an Event of Default known to the Trustee has occurred and is continuing:

(a)      the duties and obligations of the Trustee shall be determined solely by the express provisions of this Agreement, the Trustee shall not be liable except for the performance of the duties and obligations specifically set forth in this Agreement, no implied covenants or obligations shall be read into this Agreement against the Trustee, and the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement which it believes in good faith to be genuine and to have been duly executed by the proper authorities respecting any matters arising hereunder;

(b)      the Trustee shall not be liable for an error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it is finally proven that the Trustee was negligent in ascertaining the pertinent facts; and

(c)     the Trustee shall not be liable with respect to any action taken, suffered, or omitted to be taken by it in good faith in accordance with the direction of the Holders of Certificates evidencing not less than 25.00% of the Voting Rights of Certificates relating to the time, method, and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee under this Agreement.

Section 8.02    <u>Certain Matters Affecting the Trustee</u>.    Except as otherwise provided in Section 8.01:

(a)     the Trustee may rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties and the Trustee shall have no responsibility to ascertain or confirm the genuineness of any signature of any such party or parties;

(b)     the Trustee may consult with counsel, financial advisers or accountants and the advice of any such counsel, financial advisers or accountants and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by it hereunder in good faith and in accordance with such advice or Opinion of Counsel;

(c)     the Trustee shall not be liable for any action taken, suffered or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Agreement;

(d)     the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Holders of Certificates evidencing not less than 25.00% of the Voting Rights allocated to each Class of Certificates;

(e)     the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, accountants, custodians, nominees or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agents, accountants or attorneys appointed with due care by it hereunder;

(f)     the Trustee shall not be required to risk or expend its own funds or otherwise incur any financial liability in the performance of any of its duties or in the exercise of any of its rights or powers hereunder if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured to it;

(g)     the Trustee shall not be liable for any loss on any investment of funds pursuant to this Agreement;

(h)     unless a Responsible Officer of the Trustee has actual knowledge of the occurrence of a Master Servicer Event of Default or an Event of Default, the Trustee shall not be

deemed to have knowledge of a Master Servicer Event of Default or an Event of Default until a Responsible Officer of the Trustee shall have received written notice thereof;

(i)     the Trustee shall be under no obligation to exercise any of the trusts, rights or powers vested in it by this Agreement or to institute, conduct or defend any litigation hereunder or in relation hereto at the request, order or direction of any of the Certificateholders, pursuant to this Agreement, unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which may be incurred therein or thereby;

(j)     if the Trustee, in its role as successor master servicer under this Agreement, assumes the servicing or master servicing with respect to any of the Mortgage Loans, it shall not assume liability for the representations and warranties of the Servicer or Master Servicer, as applicable, or for any errors or omissions of the Servicer or Master Servicer, as applicable;

(k)     the Trustee in its capacity as Custodian shall be entitled to the same rights, protections, immunities and indemnities extended to the Trustee hereunder.

Section 8.03    Trustee Not Liable for Certificates or Mortgage Loans.    The recitals contained herein and in the Certificates shall be taken as the statements of the Depositor and the Trustee assumes no responsibility for their correctness.    The Trustee makes no representations as to the validity or sufficiency of this Agreement, the Cap Agreement, the Swap Agreement, or of the Certificates or of any Mortgage Loan or related document.    The Trustee shall not be accountable for the use or application by the Depositor, the Master Servicer, the Servicer, the Securities Administrator or the Derivative Counterparty of any funds paid to the Depositor, the Master Servicer, the Servicer, the Securities Administrator or the Derivative Counterparty in respect of the Mortgage Loans or deposited in or withdrawn from the Collection Account, the Distribution Account or any other fund or account with respect to the Certificates by the Depositor, the Master Servicer, the Servicer, the Securities Administrator or the Derivative Counterparty.

The Trustee shall have no responsibility for filing or recording any financing or continuation statement in any public office at any time or to otherwise perfect or maintain the perfection of any security interest or lien granted to it hereunder.

Section 8.04    Trustee May Own Certificates. The Trustee in its individual or any other capacity may become the owner or pledgee of Certificates with the same rights as it would have if it were not the Trustee.

Section 8.05    Trustee's Fees Indemnification and Expenses. (a) As compensation for its activities under this Agreement, the Trustee shall be paid its fee by the Master Servicer from the Master Servicer's own funds pursuant to a separate agreement.  The Trustee shall have no lien on the Trust Fund for the payment of such fees.

(b)     The Trustee shall be entitled to be reimbursed, from funds on deposit in the Distribution Account, amounts sufficient to indemnify and hold harmless the Trustee and any director, officer, employee, or agent of the Trustee against any loss, liability, or expense

(vi)    no litigation is pending or, to the best of the Master Servicer's knowledge, threatened against the Master Servicer which would prohibit its entering into this Agreement or performing its obligations under this Agreement;

(vii)    no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Master Servicer of or compliance by the Master Servicer with this Agreement or the consummation of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations and orders (if any) as have been obtained; and

(viii)    the consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Master Servicer.

(b)    It is understood and agreed that the representations and warranties set forth in this Section shall survive the execution and delivery of this Agreement.  The Master Servicer shall indemnify the Depositor, the Servicer, Securities Administrator, the Trustee and the Trust and hold them harmless against any loss, damages, penalties, fines, forfeitures, reasonable legal fees and related costs, judgments, and other reasonable costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a material breach of the Master Servicer's representations and warranties contained in Section 9.05(a) above.  It is understood and agreed that the enforcement of the obligation of the Master Servicer set forth in this Section 9.05 to indemnify the Depositor, the Servicer, Securities Administrator, the Trustee and the Trust constitutes the sole remedy of the Depositor and the Trustee, respecting a breach of the foregoing representations and warranties.  Such indemnification shall survive any termination of the Master Servicer as Master Servicer hereunder, any termination of this Agreement and resignation or removal of the Trustee.

Any cause of action against the Master Servicer relating to or arising out of the breach of any representations and warranties made in this Section shall accrue upon discovery of such breach by either the Depositor, the Master Servicer, Securities Administrator or the Trustee or notice thereof by any one of such parties to the other parties.

Section 9.06    Master Servicer Events of Default.  Each of the following shall constitute a "Master Servicer Event of Default":

(a)    any failure by the Master Servicer to deposit in the Distribution Account any payment received by it from the Servicer to make any P&I Advance or required to be made by the Master Servicer under the terms of this Agreement which continues unremedied for a period of two (2) Business Days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Master Servicer by any other party hereto;

(b)    failure by the Master Servicer to duly observe or perform, in any material respect, any other covenants, obligations or agreements of the Master Servicer as set forth in this Agreement which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to

the Master Servicer by the Trustee or to the Master Servicer and Trustee by the holders of Certificates evidencing at least 25.00% of the Voting Rights;

(c)      a decree or order of a court or agency or supervisory authority having jurisdiction for the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Master Servicer and such decree or order shall have remained in force, undischarged or unstayed for a period of sixty (60) days;

(d)      the Master Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, bankruptcy, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Master Servicer or relating to all or substantially all of its property;

(e)      the Master Servicer shall admit in writing its inability to pay its debts as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations for three (3) Business Days;

(f)      Except as otherwise set forth herein, the Master Servicer attempts to assign this Agreement or its responsibilities hereunder or to delegate its duties hereunder (or any portion thereof) without the consent of the Securities Administrator and the Depositor;

(g)      the indictment of the Master Servicer for the taking of any action by the Master Servicer, any Affiliate or any director or employee thereof that constitutes fraud or criminal activity in the performance of its obligations under this Agreement, in each case, where such indictment materially and adversely affects the ability of the Master Servicer to perform its obligations under this Agreement (subject to the condition that such indictment is not dismissed within ninety (90) days); or

(h)      failure of the Master Servicer to timely provide the Depositor with the Assessment, Attestation and Annual Statement of Compliance required by Item 1122 of Regulation AB in accordance with Section 9. 02.

In each and every such case, so long as a Master Servicer Event of Default shall not have been remedied, in addition to whatever rights the Trustee may have at law or equity to damages, including injunctive relief and specific performance, the Trustee, by notice in writing to the Master Servicer, may, and upon the request of the Holders of Certificates representing at least 51.00% of the Voting Rights shall, terminate with cause all the rights and obligations of the Master Servicer under this Agreement.

Upon receipt by the Master Servicer of such written notice, all authority and power of the Master Servicer under this Agreement, shall pass to and be vested in any successor master servicer appointed hereunder which accepts such appointments.  Upon written request from the Trustee or the Depositor, the Master Servicer shall prepare, execute and deliver to the successor entity designated by the Trustee any and all documents and other instruments related to the performance of its duties hereunder as the Master Servicer and, place in such successor's

possession all such documents with respect to the master servicing of the Mortgage Loans and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, at the Master Servicer's sole expense. The Master Servicer shall cooperate with the Trustee and such successor master servicer in effecting the termination of the Master Servicer's responsibilities and rights hereunder, including without limitation, the transfer to such successor master servicer for administration by it of all cash amounts which shall at the time be credited to the Distribution Account or are thereafter received with respect to the Mortgage Loans.

Section 9.07  Waiver of Default.  By a written notice, the Trustee may at the direction of Holders of Certificates evidencing at least 51.00% of the Voting Rights waive any default by the Master Servicer in the performance of its obligations hereunder and its consequences.  Upon any waiver of a past default, such default shall cease to exist, and any Master Servicer Event of Default arising therefrom shall be deemed to have been remedied for every purpose of this Agreement.  No such waiver shall extend to any subsequent or other default or impair any right consequent thereon except to the extent expressly so waived.

Section 9.08  Successor to the Master Servicer.  Upon termination of the Master Servicer's responsibilities and duties under this Agreement, the Trustee shall appoint a successor, which shall succeed to all rights and assume all of the responsibilities, duties and liabilities of the Master Servicer under this Agreement prior to the termination of the Master Servicer.  Any successor shall be a Fannie Mae and Freddie Mac approved servicer in good standing and acceptable to the Depositor and the Rating Agencies.  In connection with such appointment and assumption, the Trustee may make such arrangements for the compensation of such successor out of payments on Mortgage Loans as it and such successor shall agree; provided, however, that in no event shall the master servicing fee paid to such successor master servicer exceed that paid to the Master Servicer hereunder.  In the event that the Master Servicer's duties, responsibilities and liabilities under this Agreement are terminated, the Master Servicer shall continue to discharge its duties and responsibilities hereunder until the effective date of such termination with the same degree of diligence and prudence which it is obligated to exercise under this Agreement and shall take no action whatsoever that might impair or prejudice the rights of its successor.  The termination of the Master Servicer shall not become effective until a successor shall be appointed pursuant hereto and shall in no event (i) relieve the Master Servicer of responsibility for the representations and warranties made pursuant to Section 9.05(a) hereof and the remedies available to the Trustee under Section 9.05(b) hereof, it being understood and agreed that the provisions of Section 9.05 hereof shall be applicable to the Master Servicer notwithstanding any such sale, assignment, resignation or termination of the Master Servicer or the termination of this Agreement; or (ii) affect the right of the Master Servicer to receive payment and/or reimbursement of any amounts accruing to it hereunder prior to the date of termination (or during any transition period in which the Master Servicer continues to perform its duties hereunder prior to the date the successor master servicer fully assumes its duties).

If no successor Master Servicer has accepted its appointment within 90 days of the time the Trustee receives the resignation of the Master Servicer, the Trustee shall be the successor Master Servicer in all respects under this Agreement and shall have all the rights and powers and be subject to all the responsibilities, duties and liabilities relating thereto, including the obligation to make Advances; provided, however, that any failure to perform any duties or

(ii)    in the case of the Servicer, to JPMorgan Chase Bank, National Association, 10790 Rancho Bernardo Road, San Diego, California 92127 Attention: Cindy Dunks (with a copy to 194 Wood Avenue South, Iselin, New Jersey 08830, Attention: General Counsel), or such other address as may be hereafter furnished to the other parties by JPMorgan Chase Bank, National Association in writing;

(iii)   in the case of Wells Fargo, to Wells Fargo Bank, N.A., P.O. Box 98, Columbia, Maryland 21046, with a copy to 9062 Old Annapolis Road, Columbia, Maryland 21045, (HASCO) Attention: Client Service Manager HASCO 2006-NC1, or such other address as may be hereafter furnished to the to the other parties by Wells Fargo in writing;

(iv)    in the case of the Trustee, to the Corporate Trust Office (Attention: HB0601), or such other address as may be hereafter furnished to the to the other parties by the Trustee in writing;

(v)     in the case of the Derivative Counterparty, to Bear Stearns Financial Products Inc., 383 Madison Avenue, New York, New York 10179, Attention: DPC Manager, HASCO 2006-NC1, with a copy to Bear Stearns Financial Products Inc., One Metrotech Center North, Brooklyn, New York 11201, Attention: Derivative Operations 7th Floor, HASCO 2006-NC1, or such other address as may be hereafter furnished to the to the other parties by the Derivative Counterparty in writing,

(vi)    in the case of the Mortgage Loan Seller, to NC Capital Corporation, 18400 Van Karman Suite 1000, Irvine, California 92612 Attention General Counsel, or such other address as may be herein furnished to the other party by NC Capital Corporation in writing.

(vii)   in the case of each of the Rating Agencies, the address specified therefor in the definition corresponding to the name of such Rating Agency. Notices to Certificateholders shall be deemed given when mailed, first class postage prepaid, to their respective addresses appearing in the Certificate Register.

Section 12.06 Severability of Provisions. If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement or of the Certificates or the rights of the Holders thereof.

Section 12.07 Assignment. Notwithstanding anything to the contrary contained herein, except as provided in Section 6.02, this Agreement may not be assigned by the Servicer without the prior written consent of the Trustee and Depositor; provided, however, that the Servicer may pledge its interest in any reimbursements for P&I Advances or Servicing Advances hereunder.

Section 12.08 Limitation on Rights of Certificateholders. The death or incapacity of any Certificateholder shall not operate to terminate this Agreement or the trust created hereby,

nor entitle such Certificateholder's legal representative or heirs to claim an accounting or to take any action or commence any proceeding in any court for a petition or winding up of the trust created hereby, or otherwise affect the rights, obligations and liabilities of the parties hereto or any of them.

No Certificateholder shall have any right to vote (except as provided herein) or in any manner otherwise control the operation and management of the Trust Fund, or the obligations of the parties hereto, nor shall anything herein set forth or contained in the terms of the Certificates be construed so as to constitute the Certificateholders from time to time as partners or members of an association; nor shall any Certificateholder be under any liability to any third party by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.

No Certificateholder shall have any right by virtue or by availing itself of any provisions of this Agreement to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement, unless such Holder previously shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof, as herein provided, and unless the Holders of Certificates evidencing not less than 25.00% of the Voting Rights evidenced by the Certificates shall also have made written request to the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered to the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its receipt of such notice, request and offer of indemnity shall have neglected or refused to institute any such action, suit or proceeding; it being understood and intended, and being expressly covenanted by each Certificateholder with every other Certificateholder and the Trustee, that no one or more Holders of Certificates shall have any right in any manner whatever by virtue or by availing itself or themselves of any provisions of this Agreement to affect, disturb or prejudice the rights of the Holders of any other of the Certificates, or to obtain or seek to obtain priority over or preference to any other such Holder or to enforce any right under this Agreement, except in the manner herein provided and for the common benefit of all Certificateholders.  For the protection and enforcement of the provisions of this Section 12.08, each and every Certificateholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

Section 12.09 <u>Inspection and Audit Rights</u>.  The Servicer agrees that, on reasonable prior notice, it will permit any representative of the Depositor or the Trustee during the Servicer's normal business hours, to examine all the books of account, records, reports and other papers of the Servicer relating to the Mortgage Loans, to make copies and extracts therefrom, to cause such books to be audited by independent certified public accountants selected by the Depositor or the Trustee and to discuss its affairs, finances and accounts relating to the Mortgage Loans with its officers, employees and independent public accountants (and by this provision the Servicer hereby authorizes said accountants to discuss with such representative such affairs, finances and accounts), all at such reasonable times and as often as may be reasonably requested. Any out-of-pocket expense of the Servicer incident to the exercise by the Depositor or the Trustee of any right under this Section 12.09 shall be borne by the Servicer.

Section 12.10 <u>Certificates Nonassessable and Fully Paid</u>. It is the intention of the Depositor that Certificateholders shall not be personally liable for obligations of the Trust Fund,

IN WITNESS WHEREOF, the Depositor, the Trustee, Wells Fargo and Option One Mortgage Corporation have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

HSI ASSET SECURITIZATION
CORPORATION, as Depositor

By _____
      Name: Andrea Lenox
      Title: Vice President

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity

By: _____
      Name:
      Title:

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity

By: _____
      Name:
      Title:

WELLS FARGO BANK, N.A., as Master
Servicer

By: _____
      Name:
      Title:

IN WITNESS WHEREOF, the Depositor, the Trustee, Wells Fargo and Option One Mortgage Corporation have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

HSI ASSET SECURITIZATION
CORPORATION, as Depositor


By _____
    Name: Andrea Lenox
    Title: Vice President


DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity


By:_____
    Name:
    Title:  Ronaldo Reyes
           Vice President


DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity


By:_____
    Name:
    Title:  Hang Luu
           Authorized Signer


WELLS FARGO BANK, N.A., as Master
Servicer


By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the Depositor, the Trustee, Wells Fargo and Option One Mortgage Corporation have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

HSI ASSET SECURITIZATION
CORPORATION, as Depositor

By _____
    Name: Andrea Lenox
    Title: Vice President

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity

By:_____
    Name:
    Title:

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Trustee and not in its
individual capacity

By:_____
    Name:
    Title:

WELLS FARGO BANK, N.A., as Master
Servicer

By:_____
    Name:
    Title:    Amy Doyle
              Vice President

WELLS FARGO BANK, N.A., as Securities
    Administrator

By:_____

    Name: Amy Doyle
    Title: Vice President

DEUTSCHE BANK NATIONAL TRUST
    COMPANY, solely as Custodian and not in
    its individual capacity

By:_____

    Name:
    Title:

DEUTSCHE BANK NATIONAL TRUST
    COMPANY, solely as Custodian and not in
    its individual capacity

By:_____

    Name:
    Title:

JPMORGAN CHASE BANK, NATIONAL
    ASSOCIATION, as Servicer

By:_____

    Name:
    Title:

WELLS FARGO BANK, N.A., as Securities
Administrator

By:_____
    Name:
    Title:

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Custodian and not in
its individual capacity

By:_____
    Name:
    Title:    **Ronaldo Reyes**
             **Vice President**

DEUTSCHE BANK NATIONAL TRUST
COMPANY, solely as Custodian and not in
its individual capacity

By:_____
    Name:
    Title:    **Hang Luu**
             **Authorized Signer**

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, as Servicer

By:_____
    Name:
    Title:

WELLS FARGO BANK, N.A., as Securities
   Administrator

By: _____
   Name:
   Title:

DEUTSCHE BANK NATIONAL TRUST
   COMPANY, solely as Custodian and not in
   its individual capacity

By: _____
   Name:
   Title:

DEUTSCHE BANK NATIONAL TRUST
   COMPANY, solely as Custodian and not in
   its individual capacity

By: _____
   Name:
   Title:

JPMORGAN CHASE BANK, NATIONAL
   ASSOCIATION, as Servicer

By: _____
   Name: Kim Urbanek
   Title: Assistant Vice President

NC CAPITAL CORPORATION, as Mortgage
Loan Seller

By:_____
Name:
Title:        Kevin Cloyd
              President

177866 HASCO 2006-NC1
Pooling and Servicing Agreement

ACKNOWLEDGED BY HSBC BANK USA,
NATIONAL ASSOCIATION,
    as Sponsor, solely for the purposes of Section
2.03(k).

By: _____

    Name: Jon E. Voigtman
    Title: Managing Director #14311