UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al*.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al*.,<br><br>    Defendants. | Case No. 14-cv-9367-JMF-SN |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>EXPERT EVIDENCE BASED ON SAMPLING</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

I. INTRODUCTION ...................................................................................................................... 1

II. SAMPLING IS WIDELY ACCEPTED ...................................................................................... 4

III. SAMPLE-BASED EVIDENCE WILL ASSIST THE TRIER OF FACT ......................... 8

    A. Plaintiffs' Non-Sampling Evidence Will Establish The Knowledge Component Of Plaintiffs' Claims .................................................................................. 8

    B. Sampling Evidence Is Relevant To Proving The Extent Of Seller And Servicer Breaches And Plaintiffs' Damages .................................................... 9

IV. SAMPLING IS PROPORTIONAL TO THE NEEDS OF THE CASE AND WILL NOT PREJUDICE DEUTSCHE BANK ...................................................... 10

V. CONCLUSION .......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Case**      **Page**

*Ace Sec. Corp., Home Equity Loan Tr., Series 2007-HEI, by HSBC as Trustee v. DB Structured Prods.*,
2013 WL 6153206 (N.Y. Sup. Ct. Nov. 21, 2013).................................................................6

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*,
920 F. Supp. 2d 475 (S.D.N.Y. 2013)............................................................................. passim

*BCS Servs. Inc. v. Heartwood 88 LLC*,
637 F.3d 750 (7th Cir. 2011) ..........................................................................................7

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017) .............................................................1, 3, 8

*Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*,
2014 WL 3824333 (D. Conn. Aug 4, 2014) .............................................................2, 5, 6, 10

*FHFA v. JPMorgan Chase & Co.*,
2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ..........................................................................5

*FHFA v. Nomura Holding Am., Inc.*,
104 F. Supp. 3d 441 (S.D.N.Y. 2015)..................................................................................6

*Law Debenture Tr. Co. of N.Y. v. WMC Mortg., LLC*,
2017 WL 3401254 (D. Conn. Aug. 8, 2017) .........................................................................12

*Law Debenture Tr. Co. v. WMC Mortg., LLC*,
2015 WL 9581729 (D. Conn. Dec. 30, 2015).....................................................................5, 6

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
30 Misc. 3d 1201(A), (N.Y. Sup. Ct. Dec. 22, 2010) ............................................................5

*Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*,
--- N.E.3d ----, 2017 WL 6327110 (N.Y. Dec. 12, 2017).....................................................6, 10

*Ret. Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*,
775 F.3d 154 (2d Cir. 2014)..........................................................................................7

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011) .................................................................2, 5, 6


*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)......................................................................................................2, 4

*Wechsler v. Hunt Health Sys., Ltd.*,
   2003 WL 21998985 (S.D.N.Y. Aug. 22, 2003).............................................................3

**STATUES, RULES & REGULATIONS**

Federal Rules of Civil Procedure
   Rule 1 ...............................................................................................................................3
   Rule 26(b)(1).......................................................................................................2, 3, 11, 12

I.  **INTRODUCTION**

In this class action, Plaintiffs seek damages arising from Deutsche Bank's breach of contract and violations of the Trust Indenture Act of 1939 ("TIA") for failing to address seller representation and warranty ("R&W") and servicer breaches across the sixty-two (62) RMBS trusts at issue containing hundreds of thousands of mortgage loans.  Deutsche Bank's obligations under the Governing Agreements were triggered by, *inter alia*, its "discovery" of seller breaches.[1]  "Discovery" in this context requires RMBS trustees to investigate upon learning of facts suggestive of a breach, and that "'upon receipt of such notice, it becomes incumbent upon the [Trustee] to pick up the scent and nose to the source.'"  *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 1194683, at *10 (S.D.N.Y. Mar. 30, 2017).

At trial, Plaintiffs will present direct and circumstantial evidence of Deutsche Bank's discovery of widespread seller breaches of R&Ws and servicing violations.  Plaintiffs will further prove the occurrence of Events of Default, upon which Deutsche Bank had a heightened duty to exercise all contractual rights and act as a "prudent person," including investigating and enforcing seller breaches of R&Ws.  ECF No. 141-5 at 39-41.  Aware of these facts and given its contractual and statutory duties, Deutsche Bank did nothing, allowing valuable claims to lapse and Trust assets to deplete.

Plaintiffs' statistical sampling evidence will assist in proving Deutsche Bank's liability and in calculating damages.  Specifically, as set forth in the Expert Report of Dr. Christopher Stomberg, a recognized statistical expert, Plaintiffs propose to randomly select a representative

---

[1] ECF No. 141-5 at 5-8.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Amended Class Action Complaint ("Complaint") filed in this action.

1

sample of 100 loans from each Trust.[2]  Other experts will analyze these loans to determine whether they breached applicable R&Ws, disclosures and servicing standards.  Stomberg ¶¶17, 27.  Dr. Stomberg will then extrapolate these findings to the loan populations separately in each of the Trusts in order to measure and determine the number of loans that breached.  *Id*. ¶¶18, 28.

Plaintiffs' proposed sampling evidence is a scientifically valid and legally accepted method of proof.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) ("In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability" (quoting Manual for Complex Litigation § 11.493 (4th ed. 2004)).  Numerous courts have permitted (and even encouraged) litigants to use sampling to prove a variety of facts, issues, and elements of legal claims in dispute.  *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013).  In cases involving residential mortgage securitizations, courts accept sampling evidence to show the existence and prevalence of defective loans and damages.  *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011).  Indeed, Deutsche Bank and other trustees have repeatedly advocated in favor of sampling evidence in RMBS matters.  *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, 2014 WL 3824333, at *6 (D. Conn. Aug 4, 2014).

Here, the proposed sampling evidence is relevant to the parties' claims and defenses and proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).  Specifically, Plaintiffs' sampling evidence will significantly assist the trier of fact in resolving core issues, including: (i) the existence and extent of breaching loans for that respective Trust; and (ii) the existence and amount of Plaintiffs' damages resulting from Deutsche Bank's failure to act.  Moreover, the expense

---

[2]  *See* Declaration of Timothy A. DeLange and Exhibit A attached thereto (Expert Report of Christopher Stomberg PhD at ¶¶24-26) (hereinafter "Stomberg ¶ __").

associated with experts analyzing the sampled loans and extrapolating the results to the Trusts is insignificant relative to the amount in controversy, and definitely does not outweigh its benefit. *Id*. To the contrary, Plaintiffs' sampling evidence will conserve party and judicial resources and help "secure the just, speedy, and inexpensive determination" of this action without prejudicing either party. Fed. R. Civ. P. 1.

Further, permitting Plaintiffs to develop and present sampling evidence will not compromise Deutsche Bank's substantive rights and defenses, including challenging the sufficiency of Plaintiffs' evidence or the admissibility of any particular expert testimony at the appropriate stage and after completion of expert discovery. By contrast, a ruling now precluding the use of sampling evidence would be highly prejudicial to Plaintiffs and unnecessarily limit their ability to present scientifically valid evidence to support their claims. *Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 21998985, at *3 (S.D.N.Y. Aug. 22, 2003) (holding that it was premature for the trial court to grant motion in limine precluding plaintiff from offering certain documents at trial where plaintiffs did not have opportunity to develop evidence).

Finally, Judge Netburn's Opinion and Orders in *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 14-cv-09371 (S.D.N.Y.), ECF No. 376 ("*Wells Fargo*") and *BlackRock Balanced Capital Portfolio (FI) et al. v. HSBC Bank USA*, 14-cv-09366 (S.D.N.Y.), ECF No. 320 (collectively, the "MJ Orders"), and Judge Failla's decision in *Wells Fargo*, 14-cv-09371, ECF No. 550, should not preclude sampling here. In those cases, after acknowledging that statistical sampling was an accepted method of proving liability in this District, Plaintiffs respectfully submit that the courts erroneously found that sampling was not proportional to the needs of those cases. Additionally, in so holding, the courts wrongly focused on the use of sampling to demonstrate the trustee's "discovery" of breaches of R&Ws. Here,

Plaintiffs will *not* use sampling evidence to prove Deutsche Bank's "discovery" of R&W breaches whatsoever. Instead, Plaintiffs will use sampling to show the existence of and extent of breaching loans in the Trusts and damages. As detailed herein, these applications are widely accepted in this Circuit. Accordingly, Plaintiffs respectfully request that the Court grant this Motion and permit Plaintiffs to proceed with expert discovery, including the use of expert sampling evidence as described further herein.

## II.     SAMPLING IS WIDELY ACCEPTED

It is well established that evidence derived from a population sample can be used to reach scientifically valid conclusions about the population as a whole: "[S]tatistical methods can often estimate, to specified levels of accuracy, the characteristics of a 'population' or 'universe' of events, transactions, attitudes, or opinions by observing those characteristics in a relatively small segment, or sample, of the population." Manual for Complex Litigation § 11.493 (4th ed. 2004).

As the Supreme Court recently explained, "[a] representative or statistical sample, like all evidence, is a means to establish or defend against liability. . . . In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability." *Tyson Foods*, 136 S. Ct. at 1046 (quoting Manual for Complex Litigation § 11.493 (4th ed. 2004)). Sampling efficiently conserves resources and provides reliable and objective extrapolation of the analysis of a sample to a population without having to examine each and every element. *See* Manual for Complex Litigation § 11.493 (4th ed. 2004).

Sampling has been widely accepted in this District (and elsewhere) to prove a defendant was probably liable and caused the asserted quantum of damages. *See*, *e.g.*, *Flagstar*, 920 F. Supp. at 512 ("Sampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims."). Judge Rakoff, presiding over a bench trial in *Flagstar*, "accept[ed] sampling as an appropriate method of proof in this case

4

and . . . largely adopt[ed] [the re-underwriter's] findings of material defects," thus "find[ing] that the loans underlying the Trusts here at issue pervasively breached Flagstar's contractual representations and warranties." *Id.* The court held that "the evidence proffered by [plaintiff's sampling and damages experts] is clear, credible, and convincing . . . . [T]he sample size suggested by [plaintiff's sampling expert] provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and warranties, and [plaintiff's damages expert] provided a solid basis for calculating the damages occasioned by any such breaches." *Id.* at 501. The clear majority of courts are in accord.[3]

As in other RMBS cases, the sampling evidence will involve a straightforward process. Dr. Stomberg selected the loan "Population" and determined the quantities to measure for each Trust. The loan Population is defined as all loans except those that have been paid in full without losses. Stomberg ¶¶21-23. Here, Dr. Stomberg determined that a sample of 100 loans in each Trust is sufficient to make statistically reliable determinations about the population (*i.e.*, at a 95% confidence level with a maximum margin of error of +/-10%). *Id.* ¶¶24, 25.

Once the sample loans are selected using a random selection process, the other experts will analyze the loan files for seller and servicer breaches. Stomberg ¶¶17, 18. Dr. Stomberg will then

---

[3] *SACO I Trust 2006-5 v. EMC Mortg. LLC ("SACO I")*, Index No. 651820/2012, ECF No. 564, (N.Y. Sup. Ct. 2015) ("plaintiffs are permitted to present a statistical sampling as a means to prove liability and damages"); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 30 Misc. 3d 1201(A), at *4 (N.Y. Sup. Ct. Dec. 22, 2010) ("[s]tatistical sampling is a widely used method [in legal proceedings] to present evidence from a large population of data" and "[i]t is undisputed that the use of statistical sampling is generally accepted in the scientific community"); *FHFA v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *1 (S.D.N.Y. Dec. 3, 2012) (statistical sampling used to prove liability and damages); *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *6 n.4 (S.D.N.Y. Mar. 25, 2011) (approving sampling and holding that the defendant "cannot reasonably expect the Court to examine each of the 9,871 [mortgage] transactions to determine whether there has been a breach . . . ."); *Law Debenture Tr. Co. v. WMC Mortg., LLC*, 2015 WL 9581729, at *7 (D. Conn. Dec. 30, 2015); *Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*, 2014 WL 3824333, at *9 (D. Conn. Aug. 4, 2014) ("statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case.").

use statistically valid methods to extrapolate the breach rates to the loan Populations as a whole. *Id.* ¶¶27, 28. This will provide statistically valid evidence regarding the number of loans that breached applicable R&Ws, disclosures and servicing standards.[4]

This expert sampling evidence will assist the trier of fact in determining the existence of and the number of breaching loans in each of the Trusts (thus providing the foundation for Plaintiffs' claim that Deutsche Bank "discovered" breaching loans). In addition, Plaintiffs' damages expert will utilize the extrapolated breach rate, together with the loan values and waterfall structure of the Trust, as part of the calculation of damages. Stomberg ¶¶20, 28.

The above-described sampling methodology and evidence is not novel, especially in the context of RMBS securitizations with thousands of loans. *Syncora*, 2011 WL 1135007, at *6 n.4. Indeed, Deutsche Bank and other RMBS trustees have advocated for the use of similar sampling evidence to prove breaches of R&Ws when pursuing put back remedies as a trustee.[5] For example, in *Deutsche Bank v. WMC*, 2014 WL 3824333, at *9, Deutsche Bank argued for the use of

---

[4] *Id.* ¶¶14-16, 20, 24-26. For example, a breach rate of 50% in the sample extrapolated statistically to the entire pool at a confidence level of 95% plus or minus 10% means that the breach rate in the entire pool has a 95% probability of falling between 40% and 60%, which provides a rational basis for a jury to find liability on that amount of loans. *See FHFA v. Nomura Holding Am., Inc.*, 104 F. Supp. 3d 441, 494 (S.D.N.Y. 2015) (Cote, J., presiding over an RMBS bench trial) ("A sample of 100 loans . . . permits results to be stated with a 95% confidence level, *i.e.*, with maximum margins of error of +/10 percent.").

[5] *Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Capital, Inc.*, Index No. 156016/2012, at NYSCEF 236 (N.Y. Sup. Ct. Nov. 19, 2013) (Where U.S. Bank sought court approval to prove liability and damages for its claims against a RMBS sponsor using statistical sampling, and the court agreed, holding "plaintiffs' use of statistical sampling to prove liability and damages would streamline the trial, promote judicial economy, and conserve the resources of the parties and the court."); *Law Debenture Tr. v. WMC Mortg., LLC*, 2015 WL 9581729, at *7 (D. Conn. Dec. 30, 2015) (Where Judge Haight allowed Wells Fargo's separate trustee, Law Debenture, to use sampling in a RMBS case explaining that "Law Debenture collected a number of federal and state cases in support of its assertion that 'the overwhelming majority of courts' in the Second Circuit and elsewhere considering the question 'have accepted statistical sampling as an appropriate method of establishing liability and damages in RMBS cases.'"); *Ace Sec. Corp., Home Equity Loan Tr., Series 2007-HEI, by HSBC as Trustee v. DB Structured Prods.*, 2013 WL 6153206 at *9 (N.Y. Sup. Ct. Nov. 21, 2013) (agreeing with HSBC's position on sampling and denying "motion to dismiss all loans beyond the 912 loans identified in the Trustee's Summons").

6

sampling to prove liability and damages, and the court agreed, holding, "I am satisfied that statistical sampling is, in principle, an acceptable way of proving liability and damages in an RMBS case such as this one."[6]

The MJ Opinion and Orders, which concluded that the plaintiffs in those cases should proceed loan-by-loan in a way that precluded sampling, and that the term "discovery" in the Governing Agreements means "actual knowledge" is in direct contrast to the prevailing authorities, and was, respectfully, in error. In precluding sampling, the MJ Opinion and Orders relied on an inapposite case, *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014). There, the Second Circuit's rejected use of "a single sample of loans taken from hundreds of trusts . . . to prove a defendant's liability with respect to each of those trusts" (*id*. at 162 n.6), does not support disallowing sampling here, as the Second Circuit did not prohibit more targeted sampling and in fact noted that other courts have "permitted plaintiffs to use statistical sampling to prove the incidence of defects within individual trusts." *Id*. (*citing Flagstar*, 920 F. Supp. at 486-87). Contrary to the MJ Opinion and Orders, the Second Circuit did not establish a rule that plaintiffs must submit proof showing discrete trails of evidence for every individual loan. Rather, courts routinely allow plaintiffs to establish their claims with "statistical, probabilistic" evidence. *BCS Servs. Inc. v. Heartwood 88 LLC*, 637 F.3d 750, 758 (7th Cir. 2011). Here, in accordance with this principle, Plaintiffs will

---

[6] *See Deutsche Bank v. Barclays Bank PLC*, Index No. 651338/2013, at NYSCEF 26, at 10 (N.Y. Sup. Ct. Jan. 10, 2014) (Deutsche Bank asserted "it is unlikely that the Trustee will be required to address the details of each R&W breach even at trial, given that New York courts routinely accept "sampling" as a basis for extrapolating breach rates across mortgage loan pools."); *see also Deutsche Bank v. HSBC Fin. Corp., et. al.*, Index No. 651627/2013, at NYSCEF 68 at 19 (N.Y. Sup. Ct. Feb. 12, 2014) ("The Trustee need not plead the details of thousands of defective Mortgage Loans in the AC or even prove them loan-by-loan ***at trial***. New York courts routinely accept "sampling" as a basis for extrapolating breach rates across loan pools.") (emphasis in original).

submit evidence based on sampling and re-underwriting for each trust separately – that is, on a "loan-by-loan and trust-by-trust" basis – showing that a certain percentage of the loans, more likely than not, violated the R&Ws made by the sellers to the trusts and is probative of Plaintiffs' damages.

Similarly, Judge Failla's holding in *Wells Fargo*, should not preclude sampling here. In overruling plaintiffs' objections in that case, Judge Failla relied on Judge Netburn's observation "that sampling could not help the Consolidated Plaintiffs to demonstrate that any 'discovery' had occurred." *Id*. at *10. Importantly, here Plaintiff will not use sampling to prove "discovery" of breaches by Deutsche Bank. As detailed above, these applications are widely accepted in this Circuit and were not addressed in *Wells Fargo*.

### III. SAMPLE-BASED EVIDENCE WILL ASSIST THE TRIER OF FACT

Plaintiffs intend to establish Deutsche Bank's liability and Plaintiffs' resulting damages for unaddressed breaches through direct and circumstantial evidence, including in part, the proposed sampling evidence.

#### A. Plaintiffs' Non-Sampling Evidence Will Establish The Knowledge Component Of Plaintiffs' Claims

Plaintiffs' "non-sampling" evidence will consist of proof showing Deutsche Bank's discovery of specific seller R&W and contractual breaches, as well as servicing violations, with respect to specific loans. For example, Plaintiffs will offer final certifications and document exception reports generated at the inception of the Trusts to prove that Deutsche Bank learned of document defects for hundreds, if not thousands, of mortgage loans in each of the Trusts that were never cured (in breach of contractual obligations). Similarly, Deutsche Bank received monthly servicing data and prepared or received remittance reports, which tracked the performance of the mortgage loans and reflected early payment defaults in breach of Seller

R&Ws.  This same evidence will show the servicers were applying imprudent loss mitigation strategies, improperly foreclosing on loans with document deficiencies, and prolonging the liquidation of loans from the Trusts to the detriment of Plaintiffs and the Class of other noteholders.

Plaintiffs will couple this showing with evidence reflecting Deutsche Bank's knowledge of information suggesting pervasive and systemic R&W breaches within the Trusts' entire loan pools.  For instance, Deutsche Bank personnel have testified that they: (i) repeatedly received written notice from monoline insurers, investors and other stakeholders of these same sellers' and servicers' systemic breaches; (ii) actively tracked forensic reviews of other Deutsche Bank-administered securitizations involving the same loan product, same vintage, same originator, same sponsor, same servicer, same applicable underwriting guidelines, and same poor performance as those of the Trusts; and (iii) monitored the Trusts' rising delinquencies and realized losses, which were both indicative of significant problems in underlying collateral.

As set forth above, under the Governing Agreements and the applicable law, this non-sampling evidence triggered pre- and post-Event of Default duties on the part of Deutsche Bank to "nose to the source" or investigate further to determine the full extent of the seller and servicer breaches.  However, Plaintiffs will show that Deutsche Bank buried its head in the sand and failed to investigate, in violation of its specific duties.

      **B.**     **Sampling Evidence Is Relevant To Proving The Extent Of Seller And Servicer Breaches And Plaintiffs' Damages**

Plaintiffs will then use the proposed sampling evidence to prove the quantum of seller and servicer breaches and damages to Plaintiffs and the Class.  Specifically, Plaintiffs' damages expert will use Dr. Stomberg's sampling evidence extrapolation results for each Trusts' loan Population (*i.e.*, all loans except those paid in full without losses) in conjunction with other data to reliably

9

estimate class-wide damages. Stomberg ¶¶20-22. "This population definition is appropriate as a basis for supporting damages calculations because it includes only those loans that already incurred losses or that are subject to potential future losses." *Id*. ¶22. Because sampling evidence is an accepted and useful way of proving liability, it is necessarily relevant to prove damages in an RMBS case. *See, e.g.*, *Deutsche Bank*, 2014 WL 3824333, at *9.

Moreover, the use of sampling to prove damages does not conflict with the Governing Agreements' sole remedy provision (*i.e*., cure, substitute or-repurchase). This is not a putback case against the seller seeking cure, substitution or repurchase.[7] Rather, this action seeks damages for the Trustee's *failure* to enforce the sellers' repurchase obligation and the servicers' misconduct. Sampling evidence is probative of the magnitude of the harm Deutsche Bank caused in failing to act or take any action whatsoever upon "discovery" of the underlying breaches. Indeed, the repurchase remedy is now entirely irrelevant, as those remedies "ha[ve] long since expired." *Flagstar*, 920 F. Supp. at 514 (finding third party not bound by sole remedy provision and able to obtain general damages where ability to cure or substitute no longer available). Moreover, the Governing Agreements make clear that noteholders retain all rights and remedies available at law. *See, e.g.*, ECF 170 ¶20 (Accredited 2006-1, Indenture § 5.11).

### IV.    SAMPLING IS PROPORTIONAL TO THE NEEDS OF THE CASE AND WILL NOT PREJUDICE DEUTSCHE BANK

The MJ Opinion and Orders were decided under Rule 26. While Plaintiffs respectfully disagree that the issue of whether a party may develop and present sampling evidence constitutes

---

[7] For this reason, putback cases limiting a trustee's remedy against a seller to specific performance are inapposite. *See, e.g.*, *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Capital, Inc.*, --- N.E.3d ----, 2017 WL 6327110 (N.Y. Dec. 12, 2017) (general damages determined to be unavailable to trustee in putback action against seller under sole remedies clause).

10

a matter of discovery, Plaintiffs submit that sampling is in any event proportional to the needs of this case.

Under Federal Rule 26(b)(1)'s proportionality test, the court considers [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Here, all six factors favor the proportionality of Plaintiffs' proposed sampling evidence.

*First*, as described above, the sampling evidence will directly assist the trier of fact in determining Deutsche Bank's liability and damages.  *Second*, the amount in controversy is significant as the Trusts at issue have suffered collateral losses of nearly $5 billion dollars.  *Third*, all parties will have equal access to the loan origination and servicing files utilized as part of the sampling methodology.  *Fourth*, both Plaintiffs and Deutsche Bank are large, sophisticated institutions with sufficient resources.  *Fifth*, for the reasons discussed above, the proposed sampling evidence is important to resolving central issues to the case, *i.e.,* the existence and extent of seller R&W and servicer breaches and Plaintiffs' damages.  *Finally*, the burden or expense is proportional to the needs of the case.  In fact, Plaintiffs' proposed sampling evidence will conserve party and judicial resources, as it will limit a portion of their expert discovery to the loans in the sample.

Finally, there is no prejudice to Deutsche Bank should Plaintiffs proceed with developing and presenting the sampling evidence.  Deutsche Bank reserves all rights and defenses, including attacking the sufficiency of the evidence, challenging the admissibility of such evidence under *Daubert*, or rebutting or undermining the weight of Plaintiffs' experts' opinions.  For example, in

11

*SACO I*, Justice Bransten granted the trustees' motion for partial summary judgment, which sought a ruling that the use of sampling to prove liability and damages at trial was consistent with the terms of the government agreements. Index No. 651820/2012 (N.Y. Sup. Ct. Dec. 2, 2015) NYSCEF 564. The court stated that, while there is no guarantee that a jury will accept sampling as proof of liability or damages, "allowing the use of sampling is well-accepted by Courts in RMBS cases". *Id*.; *Law Debenture Tr. Co. of N.Y. v. WMC Mortg., LLC*, 2017 WL 3401254, at *22 (D. Conn. Aug. 8, 2017) (allowing plaintiff to develop and present sampling evidence over defendant's motion in limine, without ruling on its admissibility). The same reasoning applies with equal force here.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion and permit Plaintiffs to proceed with expert discovery, including the use of expert sampling evidence as described herein.

Dated: December 15, 2017

                                            BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP

                                           */s/ Timothy A. DeLange*
                                          TIMOTHY A. DeLANGE

                                          BLAIR A. NICHOLAS
                                          TIMOTHY A. DeLANGE
                                          BENJAMIN GALDSTON
                                          BRETT M. MIDDLETON
                                          RICHARD D. GLUCK
                                          LUCAS E. GILMORE
                                          ROBERT S. TRISOTTO
                                          JACOB T. SPAID
                                          12481 High Bluff Drive, Suite 300
                                          San Diego, CA 92130
                                          Tel:   (858) 793-0070
                                          Fax:   (858) 793-0323

                                          *Counsel for Plaintiffs*
                                          *BlackRock Balanced Portfolio (FI), et al.*