**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

BLACKROCK BALANCED CAPITAL : 
PORTFOLIO (FI), *et al*., :
 :
 :
            Plaintiffs, :
 :
       vs. :          Case No. 14-cv-9367-JMF-SN
 :
 :          ECF Case
DEUTSCHE BANK NATIONAL TRUST :
COMPANY, as Trustee, *et al.*, :
 :
            Defendants. :
 :
------------------------------------------------------ X

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
### IN SUPPORT OF EXPERT EVIDENCE BASED ON SAMPLING

Michael S. Kraut
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

I.     EVERY JUDGE TO CONSIDER SAMPLING IN A CASE AGAINST AN
       RMBS TRUSTEE HAS CORRECTLY REJECTED IT .................................................. 3

II.    AS JUDGE FAILLA AND JUDGE NETBURN CORRECTLY FOUND, THE
       SAMPLING CASES CITED BY PLAINTIFFS ARE INAPPOSITE ........................... 5

III.   AS JUDGE FAILLA AND JUDGE NETBURN CORRECTLY HELD,
       SAMPLING IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE ................. 7

       A.     Sampling-Related Discovery Is Not Important in Resolving This Case .............. 8

              1.     Contrary to Plaintiffs' Claims, the Pertinent Duties of the Trustees
                     Arise Only If the Trustees Have Actual Knowledge of a R&W
                     Breach (Which Cannot Be Shown Through Sampling) ............................ 8

              2.     Plaintiffs Cannot Show That an Event of Default Would Have
                     Triggered a Duty to Investigate Potential R&W Breaches ..................... 12

              3.     Even If the Trustees Had Assumed a Duty To Investigate,
                     Plaintiffs Would Still Need to Prove Their Claims Loan-By-Loan
                     Trust-By-Trust (Which Cannot Be Accomplished Through
                     Sampling) ............................................................................................. 14

       B.     The Burden/Expense of Sampling-Related Discovery Would Outweigh Its
              Likely Benefit ................................................................................................. 18

       C.     The Remaining FRCP 26(b)(1) Factors Confirm that Sampling Would Not
              Be Proportional To the Needs of this Case ....................................................... 19

CONCLUSION ................................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co.,
  11 N.Y.3d 146 (2008) ................................................................................................10

Assured Guar. Mun. Corp. v. Flagstar Bank, FSB,
  920 F. Supp. 2d 475 (S.D.N.Y. 2013)........................................................................5

BCS Servs. Inc. v. Heartwood 88 LLC,
  637 F.3d 750 (7th Cir. 2011) ......................................................................................6

Beal Sav. Bank v. Sommer,
  8 N.Y.3d 318 (2007) ..................................................................................................10

BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon,
  180 F. Supp. 3d 246, 259 (S.D.N.Y. 2016)................................................................11

Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
  N.A.,
  247 F. Supp. 3d 377 (S.D.N.Y. 2017)........................................................................11

Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
  N.A., No. 14-cv-09764-KPF-SN, 2017 WL 3610511
  (S.D.N.Y. Aug. 21, 2017) ...................................................1, 5, 6, 9, 10, 11, 12, 13, 14, 18, 19

Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
  N.A., No. 14-cv-09764-KPF-SN, 2017 WL 953550 (S.D.N.Y. Mar. 10, 2017).........1, 4, 5, 17

Blackrock Balanced Capital Portfolio (FI) v. HSBC Bank USA Nat'l Ass'n,
  No. 14-cv-08175-LGS-SN, 2017 WL 945099
  (S.D.N.Y. Mar. 10, 2017) ..........................................1, 4, 5, 6, 9, 10, 12, 13, 14, 15, 16, 17, 18

CFIP Master Fund, Ltd. v. Citibank, N.A.,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010)........................................................................10

Commerce Bank v. Bank of N.Y. Mellon,
  35 N.Y.S.3d 63 (1st Dep't 2016) ..............................................................................11

Commerce Bank v. U.S. Bank Nat'l Ass'n,
  No. 4:13-cv-517, slip op. (W.D. Mo. Jan. 5, 2017) ..................................................11

Deutsche Bank Nat'l Trust Co v. WMC Mortg., LLC,
  No. 12 Civ. 933 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2014) ......................6

Fixed Income Shares: Series M v. Citibank N.A.,
    130 F. Supp. 3d 842, 851-53 (S.D.N.Y. 2015) .................................................2, 4, 14

Homeward Residential, Inc. v. Sand Canyon Corp.,
    No. 12 CIV. 5067 (JFK), 2017 WL 5256760 (S.D.N.Y. Nov. 13, 2017)................................7

Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC,
    No. 12 Civ. 1538 (CSH), 2015 WL 9581729 (D. Conn. Dec. 30, 2015)................................6

MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.,
    No. 12-cv-7322(PKC), 2015 WL 797972 (S.D.N.Y. Feb. 25, 2015) ......................................7

Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc.,
    No. 39, 2017 WL 6327110 (N.Y. Dec. 12, 2017)...................................................17

Phoenix Light SF Ltd. v. Bank of N.Y. Mellon,
    No. 14-cv-10104-VEC, 2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017) ......................14, 15, 17

Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.,
    172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016)..............................................................14

Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.,
    14 N.Y.3d 419 (2010) ............................................................................................10

Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank
    of N.Y. Mellon,
    775 F.3d 154 (2d Cir. 2014), cert. denied, 136 S. Ct. 796 (2016) ...............................4, 14, 15

Royal Park Invs. SA/NV v. Bank of N.Y. Mellon,
    No. 14-cv-6502 (GHW), 2016 WL 899320 (S.D.N.Y. Mar. 2, 2016)...................................14

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,
    No. 14-cv-4394(AJN), 2016 WL 439020 (S.D.N.Y. Feb. 3, 2016) ................................11, 14

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n,
    109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015)......................................................11, 14

Tyson Foods, Inc. v. Bouaphakeo,
    136 S. Ct. 1036 (2016).............................................................................................6

U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.,
    205 F. Supp. 3d 386, 401, 424-25, 476 (S.D.N.Y. 2016) ........................................7

VNB Realty, Inc. v. U.S. Bank, N.A.,
    No. 13-cv-4743(WJM), 2014 WL 1628441 (D.N.J. Apr. 23, 2014) ......................................11

W. & S. Life Ins. Co. v. Bank of N.Y. Mellon,
    1st Dist. Hamilton No. A1302490, 2017 WL 3392855, at *1 (Aug. 4, 2017).........3, 14, 15, 17

W. & S. Life Ins. Co. v. Deutsche Bank Nat'l. Tr. Co.,
    1st Dist. Hamilton No. A1506819, 2016 WL 3625555, at *3, (June 24, 2016) ......................14

Wechsler v. Hunt Health Sys., Ltd.,
    No. 94 Civ. 8294(PKL), 2003 WL 21998985 (S.D.N.Y. Aug. 22, 2003) .................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)..............................................................................................................3, 7, 19

Defendants Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, each acting solely in its capacity as trustee for certain residential mortgage-backed securitization trusts at issue (the "Trustees"), respectfully submit this memorandum of law in opposition to Plaintiffs' motion in support of expert evidence based on sampling (ECF No. 393).[1]

## PRELIMINARY STATEMENT

Judge Failla and Judge Netburn have already denied Plaintiffs' request to permit sampling-related expert discovery in their cases against other RMBS trustees.  Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A., No. 14-cv-09764-KPF-SN, 2017 WL 3610511, *11 (S.D.N.Y. Aug. 21, 2017) ("BR/WF III"); Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A., No. 14-cv-09764-KPF-SN, 2017 WL 953550, at *1 (S.D.N.Y. Mar. 10, 2017) ("BR/WF II"); Blackrock Balanced Capital Portfolio (FI) v. HSBC Bank USA Nat'l Ass'n, No. 14-cv-08175-LGS-SN, 2017 WL 945099, at *1 (S.D.N.Y. Mar. 10, 2017) ("BR/HSBC").[2]  The same result is compelled here.

As in their cases against other RMBS trustees, Plaintiffs allege that certain unidentified loans in the RMBS trusts at issue (the "Trusts") breached loan-level representations and warranties ("R&Ws") made by the entities that sold the loans into the trusts.  ECF No. 141 ¶¶ 1-12.  And, as in their other cases, Plaintiffs claim that the Trustees purportedly had (and breached) a duty to investigate whether loans in the Trusts breached the R&Ws and thereafter force the sellers to cure, substitute or repurchase any defective loans identified through the investigation.  P. Br. 1.  Recycling arguments that Judge Failla and Judge Netburn rejected, Plaintiffs contend this Court should permit expensive, sampling-related expert discovery to

---

[1]     Plaintiffs' memorandum of law is cited herein as "P. Br. _."  Exhibits to the Declaration of Kevin J. Biron in Support of the Trustees' Opposition are cited herein as "Ex. __."

[2]     These decisions denied requests by numerous plaintiffs, including certain Plaintiffs and their affiliates, for sampling-related expert discovery in 12 separate cases against Wells Fargo and HSBC as RMBS trustees.

estimate the supposed Trust-wide R&W "breach rate"[3] because that rate would supposedly "assist in proving [the Trustees'] liability and in calculating damages."  Plaintiffs miss the mark.

<u>First</u> – contrary to Plaintiffs' contentions – the Trustees had no duty to investigate whether loans in the Trusts breached R&Ws.  Rather, only the Trustees' <u>actual knowledge</u> of a loan-level R&W breach that materially and adversely affected the interests of the Trust in the relevant loan could trigger the Trustees' obligations.  Sampling-based estimates of Trust-wide breach rates <u>cannot</u> identify the loans, if any, with respect to which the Trustees acquired the requisite loan-level knowledge.  And, even if non-sampling evidence could separately establish that the Trustees had actual knowledge of loan-specific R&W breaches for certain loans, Plaintiffs would need to present loan-level evidence regarding <u>those loans</u> to prove the Trustees' liability and damages; sampling evidence of Trust-wide breach rates would be irrelevant.

<u>Second</u>, as this Court previously recognized, the Second Circuit has held that to prevail on claims against an RMBS trustee like those asserted here, a plaintiff must prove the trustee's alleged misconduct "<u>loan-by-loan and trust-by-trust</u>."  <u>Fixed Income Shares:  Series M v. Citibank N.A.</u>, 130 F. Supp. 3d 842, 851-53 (S.D.N.Y. 2015) (quoting <u>Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon</u>, 775 F.3d 154, 162 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 796 (2016) ("<u>PABF v. BNYM</u>")).[4]  Put differently, to prevail on their claims, Plaintiffs would need to present loan-specific evidence for each allegedly defective loan that Plaintiffs contend the Trustees should have put back to sellers—*e.g.*, evidence showing, among other things, the loan-specific R&W breached, that such breach materially and

---

[3]    Plaintiffs also assert, without explanation, that they would use sampling to estimate whether the loans breached "disclosures and servicing standards."  P. Br. 2.  It is unclear what Plaintiffs are referencing because they do not allege that any loans supposedly breached "disclosures" or "servicing standards."  <u>See</u> ECF No. 141.  To the extent the Trustees clarify their assertion on reply, the Trustees reserve the right to seek leave to file a sur-reply.

[4]    Unless noted otherwise, all emphasis is added, and all quotations and citations are omitted.

adversely affected the interests of the Trust in the loan, the date of discovery by the Trustee, the date when the Trustee should have put back the loan, and the contractually-defined repurchase price of the loan (as well as the seller's ability to pay that price) at the time of the put back.[5] Sampling cannot satisfy this standard of proof.  Accordingly, as both Judge Failla and Judge Netburn concluded, Plaintiffs' request to conduct expensive, sampling-related expert discovery should be denied because such discovery is not proportional to the needs of this case.

## ARGUMENT

A party is not entitled to discovery that is not "proportional to the needs of the case, considering [among other things] . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Here, the Court should reject Plaintiffs' request to impose burdensome and costly sampling-related expert discovery because Plaintiffs must prove their claims "loan-by-loan and trust-by-trust," which <u>cannot</u> be accomplished via sampling.

## I.     EVERY JUDGE TO CONSIDER SAMPLING IN A CASE<br>AGAINST AN RMBS TRUSTEE HAS CORRECTLY REJECTED IT

Plaintiffs' arguments are neither novel nor meritorious.  Judge Failla and Judge Netburn, who is assigned to this case, already denied requests by Plaintiffs to conduct sampling-related expert discovery.  Additionally, following a bench trial last year in Ohio state court, another judge held that a plaintiff could not prove its claims against an RMBS trustee through sampling.[6] Judge Failla's and Judge Netburn's decisions are summarized below.

---

[5]     Plaintiffs also would need to establish that the Trustees had, and breached, a duty to act and that the Trustees' alleged breach caused Plaintiffs' losses.

[6]     Following a bench trial, the Ohio court entered a verdict for the RMBS trustee-defendant in a case brought by investors based on allegations substantially similar to those made in this case.  <u>W. & S. Life Ins. Co. v. Bank of N.Y. Mellon</u>, 1st Dist. Hamilton No. A1302490, 2017 WL 3392855, at *1 (Aug. 4, 2017) ("<u>WS/BNYM</u>").  In finding for the RMBS trustee, the court rejected the applicability of sampling to these cases: "[b]ecause plaintiffs must prove their case 'loan by loan,' the use of sampling to prove breaches in this case is impermissible:  a breach in
(Continued note)

<u>Magistrate Judge Netburn</u>:  In two opinions issued earlier this year, Judge Netburn denied Plaintiffs' request to "re-underwrite a sample of loans to establish pervasive breach rates across the underlying loans of the trusts at issue to prove liability and damages" because engaging in sampling-related expert discovery would not have been proportional to the needs of the case. <u>BR/WF II</u>, 2017 WL 953550, at *1; <u>BR/HSBC</u>, 2017 WL 945099, at *1.  Citing to the Second Circuit's decision in <u>PABF v. BNYM</u>, 775 F.3d at 162, Judge Netburn recognized that Plaintiffs must prove their claims against an RMBS trustee "loan-by-loan and trust-by-trust" and rejected Plaintiffs' supposition that replacing loan-specific proof with extrapolated pool- or trust-wide breach rates could satisfy the Second Circuit's standard.  <u>BR/WF II</u>, 2017 WL 953550, at *4-6, *9; <u>BR/HSBC</u>, 2017 WL 945099, at *4-6, *9.  As Judge Netburn explained, sampling cannot capture the required loan-level specificity, including the materiality of any particular R&W breach, because although sampling may identify deficiencies in a drawn loan pool, outside that pool it "cannot reliably prove which loan defects had a material and adverse effect on the value of a particular loan."  <u>BR/HSBC</u>, 2017 WL 945099, at *5.  Judge Netburn also explained:

> While sampling may identify deficiencies within a drawn loan pool, [the RMBS trustee's] duties as trustee, including its obligation to enforce the repurchase remedy, are triggered only when it knew or received written notice of a defect for a particular loan in the trust.  Conducting a sampling review seven or eight years after the fact cannot establish which specific loans [HSBC / Wells Fargo] would have actually found to be in breach had it performed an investigation at the time.

<u>BR/HSBC</u>, 2017 WL 945099, at *8; <u>BR/WF II</u>, 2017 WL 953550, at *8.

___

one loan says nothing about a breach in another, much less whether that breach has a 'material and adverse effect' on Certificateholders."  <u>Id.</u> at 10.

Judge Failla:  Finding "no error in Judge Netburn's thorough reasoning," Judge Failla denied a motion to vacate the BR/WF II decision.[7]  BR/WF III, 2017 WL 3610511, at *11. Judge Failla confirmed "it remains the law in RMBS cases of this kind that '[t]o prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis.'"  Id. at *7.  And, Judge Failla "concur[red] with Judge Netburn's conclusion that the minimal benefits that sampling could provide to the [Plaintiffs] are outweighed by the discovery's burden and expense in light of the fact that 'the contemplated sampling will cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will likely result in challenges to the admissibility of the evidence.'"  Id. at *11.

Plaintiffs assert these decisions were "in error."  P. Br. 7.  Plaintiffs are wrong.[8]

## II.     AS JUDGE FAILLA AND JUDGE NETBURN CORRECTLY FOUND, THE SAMPLING CASES CITED BY PLAINTIFFS ARE INAPPOSITE

As before Judge Failla and Judge Netburn, Plaintiffs argue here that "[s]ampling has been widely accepted in this District (and elsewhere) to prove a defendant was probably liable and caused the asserted quantum of damages."  P. Br. 4.  But none of those cases was against an RMBS trustee or had the corresponding burden on the plaintiff to prove breaches on a loan-by-loan basis.  Recognizing this critical distinction, Judge Netburn ruled, and Judge Failla agreed, that the cases cited by Plaintiffs (see P. Br. 2-7), including Assured Guar. Mun. Corp. v. Flagstar Bank, FSB, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), are distinguishable and inapposite:

---

[7]      Plaintiffs also moved to vacate Judge Netburn's decision in BR/HSBC.  As of the filing of this opposition, Judge Schofield has not decided that motion.

[8]      Plaintiffs submitted "the Expert Report of Dr. Christopher Stomberg" concerning sampling in support of their motion requesting permission to conduct sampling-related expert discovery.  P. Br. 1-2.  Plaintiffs' submission of this report was inappropriate, and the Trustees disagree with Dr. Stomberg's conclusions.  In any event – as demonstrated below (infra. at § III(C)) – Dr. Stomberg's report actually provides additional bases for determining that sampling is not appropriate and Plaintiffs' motion should be denied.

They involve claims sounding in fraud, which require a critical mass of breaching loans rather than loan-specific breaches. See, e.g., Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc., 104 F. Supp. 3d 441 (S.D.N.Y. 2015); Fed. Hous. Fin. Agency v. JPMorgan Chase & Co., No. 11 Civ. 6188 (DLC), 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012). They involve a monoline plaintiff, which is not limited to a repurchase remedy. See, e.g., Assured Guar. Mun. Corp. v. DB Structured Prods., Inc., No. 650605/2010, 2014 WL 3282310 (N.Y. Sup. Ct. July 3, 2014); Assured v. Flagstar, 920 F. Supp. 2d 475; Syncora Guarantee Inc. v. EMC Mortg. Corp., No. 09 Civ. 3106 (PAC), 2011 WL 1135007 (S.D.N.Y. Mar. 25, 2011); MBIA Ins. Corp. v. Countrywide Home Loans, Inc., No. 602825/08, 2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010). They hinge on a trustee plaintiff suing a loan sponsor on the ground of pervasive breach. See, e.g., Law Debenture Trust Co. of N.Y. v. WMC Mortg., LLC, No. 12 Civ. 1538 (CSH), 2015 WL 9581729 (D. Conn. Dec. 30, 2015); Deutsche Bank Nat'l Trust Co v. WMC Mortg., LLC, No. 12 Civ. 933 (CSH), 2014 WL 3824333 (D. Conn. Aug. 4, 2014).

BR/HSBC, 2017 WL 945099, at *6; see also BR/WF III, 2017 WL 3610511, at *10-11.[9] Judge Netburn correctly concluded: "[n]one of these cases counsels this Court to authorize costly expert discovery that will not satisfy the plaintiffs' burden of proof required by the Court of Appeals and the terms of the PSAs." BR/HSBC, 2017 WL 945099, at *6.[10]

Two of the cases cited by Plaintiffs and rejected by Judge Netburn, Law Debenture v. WMC, 2015 WL 9581729, and DBNTC v. WMC, 2014 WL 3824333, were actions brought against RMBS sellers to enforce their obligations to repurchase defective loans. See BR/HSBC, 2017 WL 945099, at *6 (finding those cases inapposite because "[t]hey hinge on a trustee plaintiff suing a loan sponsor on the ground of pervasive breach.").[11]  Although repurchase

---

[9]    These findings are in accord with Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1049 (2016) (permitting sampling to estimate time employees spent donning protective gear to show predominance in class action) (cited P. Br. 2, 4), where the Supreme Court recognized that "[t]he fairness and utility of statistical methods in contexts other than those presented here will depend on facts and circumstances particular to those cases."

[10]    BCS Servs. Inc. v. Heartwood 88 LLC, 637 F.3d 750 (7th Cir. 2011) (reversing summary judgment in RICO action seeking damages arising from an alleged conspiracy to rig bidding for tax liens) (cited P. Br. 7) has nothing whatsoever to do with sampling and is inapposite.

[11]    For the same reasons, the additional orders and filings from repurchase cases cited by Plaintiffs are inapposite.  See P. Br. 5-7 (citing SACO I Trust 2006-5 v. EMC Mortg. LLC, Index No. 651820/2012 (Sup. Ct. N.Y. Cty. 2015); Home Equity Mortg. Tr. Series 2006-1 v. DLJ Mortg. Capital, Inc., Index No. 156016/2012 (Sup.

(Continued note)

actions are not on point, it is notable that while courts in some early cases permitted sampling, recent decisions, including by Judge Keenan and Judge Castel, have rejected it.  See, e.g. Homeward Residential, Inc. v. Sand Canyon Corp., No. 12 CIV. 5067 (JFK), 2017 WL 5256760, at *1, *7-11 (S.D.N.Y. Nov. 13, 2017) ("Because the Court concludes that the governing agreements, as relevant here, call for proof of breach on a loan-by-loan basis, Homeward's proposed sampling will not assist the trier of fact and, accordingly, the Court denies Homeward's motion"); U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386, 401, 424-25, 476 (S.D.N.Y. 2016); MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc., No. 12-cv-7322(PKC), 2015 WL 797972, at *2-4 (S.D.N.Y. Feb. 25, 2015).  Similarly, Judge Chapman rejected attempts by RMBS trustees to prove their repurchase claims in the Lehman bankruptcy through sampling and required them to prove their claims—more than 200,000 of them—on a loan-by-loan basis.  See Order Establishing a Protocol to Resolve Claims Filed by Trs. on Behalf of Certain Issues of Residential Mortgage-Backed Sec. at 2, Bankr. ECF No. 47569 (Dec. 29, 2014); see also The RMBS Trs.' (1) Reply In Supp. Of Their Mot. to Estimate The RMBS Claims Using Statistical Sampling, And (2) Opp'n To Lehman's Cross-Mot. For A Full Loan-By-Loan Review at 2-4, Bankr. ECF No. 46960 (Nov. 14, 2014).

## III.  AS JUDGE FAILLA AND JUDGE NETBURN CORRECTLY HELD, SAMPLING IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE

Under FRCP 26(b)(1), a party may only obtain discovery regarding a matter that is proportional to the needs of the case, considering (i) the importance of the issues at stake in the action, (ii) the amount in controversy, (iii) the parties' relative access to relevant information,

---

Ct. N.Y. Cty. Nov. 19, 2013); Ace Sec. Corp., Home Equity Loan Tr., Series 2007-HE1 v. DB Structured Prods., No. 650327/2013, 2013 WL 6153206 (Sup. Ct. N.Y. Cty. Nov. 21, 2013); Deutsche Bank v. Barclays, Index No. 651338/2013 (Sup. Ct. N.Y. Cty. Jan. 10, 2014); Deutsche Bank v. HSBC, Index No. 651627/2013 (N.Y. Sup. Ct. Feb. 12, 2014)).

(iv) the parties' resources, (v) the importance of the discovery in resolving the issues, and

(vi) whether the burden or expense of the proposed discovery outweighs its likely benefit.  As

demonstrated below, an analysis of these six factors confirms that Judge Failla and Judge

Netburn correctly held that the expensive and time-consuming sampling-related expert discovery

requested by Plaintiffs is <u>not</u> proportional to the needs of these cases.[12]

      **A.**      <u>**Sampling-Related Discovery Is Not Important in Resolving This Case**</u>

Contrary to Plaintiffs' assertions (P. Br. 11), sampling evidence would <u>not</u> "assist the trier

of fact in determining [the Trustees'] liability and damages" because such evidence (i) would be

irrelevant to the critical question of whether the Trustees had the loan-specific knowledge of an

R&W breach necessary to trigger their obligations, and (ii) could not satisfy the Second Circuit's

loan-by-loan standard of proof.

      **1.**      **Contrary to Plaintiffs' Claims, the Pertinent Duties of the Trustees Arise Only If the Trustees Have Actual Knowledge of a R&W Breach (Which Cannot Be Shown Through Sampling)**

Under the governing agreements, the Trustees' duties to take action concerning a

loan-level R&W breach are triggered upon the Trustees' "discovery" of that breach—<u>e.g.</u>,

"[u]pon discovery by any of the parties hereto of a breach of a representation or warranty made

by the applicable Seller in respect to the Mortgage Loans that materially and adversely affects

the interests of the Securityholders in any such Mortgage Loan, the party discovering such

breach shall give prompt notice thereof to the other parties." Ex. A, SAST 2004-1, SSA § 2.3(d).

Plaintiffs do not dispute this.  P. Br. 1.  But, in a misguided attempt to avoid their threshold

burden of proving that the Trustees acquired actual knowledge of a R&W breach for each loan

---

[12]      Plaintiffs cite <u>Wechsler v. Hunt Health Sys., Ltd.</u>, No. 94 Civ. 8294(PKL), 2003 WL 21998985, at *3 (S.D.N.Y. Aug. 22, 2003), as supposed support for their contention that this Court would permit sampling discovery.  But that decision, which denied a motion in limine to preclude documents based on authenticity and hearsay objections, is irrelevant to the issues presented by Plaintiffs' motion.

that Plaintiffs now claim the Trustees should have put back, Plaintiffs contend that the phrase

"upon discovery" itself imposes a duty on the Trustees.  Specifically, Plaintiffs assert that this

phrase somehow imposes an implied duty on the Trustees to conduct an investigation to identify

all loans in the Trusts with R&W breaches if the Trustees become aware "of facts suggestive of a

[R&W] breach."  Id.  As Judge Failla and Judge Netburn correctly held, Plaintiffs are mistaken.

See BR/WF III, 2017 WL 3610511, at *10; BR/HSBC, 2017 WL 945099, at *6-7.

Plaintiffs' proposed interpretation contravenes the plain contract language that limits the

Trustees' duties.  For example, the governing agreements for the Trusts generally provide that:

- "The Indenture Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Majority Controlling Class Noteholders. . ."  Ex. A, SAST 2004-1, Indenture § 6.02(f); see also Ex. B.

- "The Indenture Trustee shall be under no obligation to exercise any rights or powers vested in it by or pursuant to this Indenture at the request, order or direction of any of the Majority Controlling Class Noteholders, unless such Holders shall have offered to the Indenture Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities that might be incurred by it in compliance with such request, order or direction."  Ex. A, SAST 2004-1, Indenture § 5.10; see also Ex. C.

- "[T]he Indenture Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture."  Ex. A, SAST 2004-1, Indenture § 6.01(b)(i); see also Ex. D.

- "[T]he Indenture Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture."  Ex. A, SAST 2004-1, Indenture § 6.01(b)(i); see also Ex. D.

- "[N]o implied covenants or obligations shall be read into this Indenture against the Indenture Trustee."  Ex. A, SAST 2004-1, Indenture § 6.01(b)(i); see also Ex. D.

Thus, imposing a duty to investigate on the Trustees would expand their duties far beyond those

set forth in the agreements (and the Trustees' compensation).  See BR/HSBC, 2017 WL 945099,

at *7 ("Equating 'discovery' with constructive knowledge is also inconsistent with the

bargained-for terms of the PSAs, which limit HSBC's pre-EOD duties as trustee to the four

corners of the governing agreements. . . . Importing a 'should have known' standard is also

inconsistent with cases that have emphasized the limited role of an indenture RMBS trustee.");

Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A., 14 N.Y.3d 419, 425 (2010) (rejecting

interpretation that was inconsistent with "limited, 'ministerial' functions of indenture trustees"

and emphasizing that "Plaintiffs' proposed interpretation . . . would . . . greatly expand[]

indenture trustees' recognized administrative duties far beyond anything found in the contract");

AG Capital Funding Partners, L.P. v. State St. Bank & Tr. Co., 11 N.Y.3d 146, 157 (2008)

(indenture trustees have limited, ministerial duties); CFIP Master Fund, Ltd. v. Citibank, N.A.,

738 F. Supp. 2d 450, 474 (S.D.N.Y. 2010) (recognizing plaintiff's expansive interpretation of the

trustee's duties was unreasonable given that trustee was "compensated . . . in an amount that was

pocket change in comparison to all other economic aspects of this transaction").

　　　　More fundamentally, as the governing agreements expressly provide that the Trustees

have no duty to investigate absent direction and indemnity, Plaintiffs' argument that the phrase

"upon discovery" imposes such a duty violates well-settled law that a court:

> should construe . . . agreements so as to give full meaning and effect to the
> material provisions. A reading of the contract should not render any
> portion meaningless. Further, a contract should be read as a whole, and
> every part will be interpreted with reference to the whole. . . and if
> possible it will be so interpreted as to give effect to its general purpose.

Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-25 (2007).

　　　　Rather, as Judge Netburn and numerous other courts have correctly recognized,

"discovery" in this context means "actual knowledge" by the Trustee of loan-specific R&W

breaches and does not impose a duty to investigate or "nose to the source."  See, e.g., BR/HSBC,

2017 WL 945099, at *7 (Netburn, M.J.); BR/WF III, 2017 WL 3610511, at *9-10 (Failla, J.)

("[B]ecause Defendant cannot be required to investigate under the parties' contracts, Defendant

cannot be held liable for breach on the basis of constructive knowledge.");[13] <u>Royal Park Invs.</u>
<u>SA/NV v. Deutsche Bank Nat'l Tr. Co.</u>, No. 14-cv-4394(AJN), 2016 WL 439020, at *6
(S.D.N.Y. Feb. 3, 2016) (Nathan, J.) ("Without <u>actual knowledge</u> of non-conforming loans, [the
Trustee] would have no obligation to require a Seller to substitute or repurchase the defective
loan."); <u>BlackRock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon</u>, 180 F.
Supp. 3d 246, 259 (S.D.N.Y. 2016) (Daniels, J.) (Plaintiffs must prove the trustee's "<u>actual</u>
<u>knowledge</u> of breaches in representations and warranties."); <u>Royal Park Invs. SA/NV v. HSBC</u>
<u>Bank USA, Nat'l Ass'n</u>, 109 F. Supp. 3d 587, 603 (S.D.N.Y. 2015) (Scheindlin, J.) ("If, after
discovery, plaintiffs cannot prove that HSBC had <u>actual knowledge</u> regarding the loans at issue
here, HSBC may move for summary judgment."); <u>Commerce Bank v. Bank of N.Y. Mellon</u>, 35
N.Y.S.3d 63, 65 (1st Dep't 2016) ("[T]he trustee of an RMBS (residential mortgage-backed
securities) trust does <u>not</u> have a duty to 'nose to the source'") (attached as Ex. I); <u>Commerce</u>
<u>Bank v. U.S. Bank Nat'l Ass'n</u>, No. 4:13-cv-517, slip op. at 5-6 (W.D. Mo. Jan. 5, 2017) (same);
<u>VNB Realty, Inc. v. U.S. Bank, N.A.</u>, No. 13-cv-4743(WJM), 2014 WL 1628441, at *6 n.3
(D.N.J. Apr. 23, 2014) (finding RMBS trustees have no duty to "nose to the source").

  Plaintiffs only cite one decision, <u>Blackrock Allocation Target Shares: Series S Portfolio</u>
<u>v. Wells Fargo Bank, N.A.</u>, 247 F. Supp. 3d 377 (S.D.N.Y. 2017) (<u>BR/WF</u>), in support of their
position that the term "[d]iscovery . . . require[s] RMBS trustees to investigate upon learning
facts suggestive of a breach."  <u>See</u> P. Br. 1.  However, that decision by Judge Failla predates her
decision in <u>BR/WF III</u> in which she: (i) denied Plaintiffs' motion to vacate Judge Netburn's

---

[13] To the extent Judge Failla left open the possibility in <u>BR/WF III</u> that Plaintiffs could demonstrate
"discovery" through a lesser showing than "actual knowledge," the Trustee respectfully disagrees.  In any event,
Judge Failla determined that she need not decide this issue to deny Plaintiffs' motion to vacate Judge Netburn's
decision rejecting sampling-related expert discovery.  2017 WL 3610511, at *10.

decision rejecting Plaintiffs' request for sampling-related expert discovery, (ii) confirmed that "the Court would deny [Plaintiffs' motion to vacate] even if it employed a <u>de novo</u> review and conducted Judge Netburn's Rule 26 analysis anew," (iii) acknowledged that RMBS trustees "<u>cannot be required to investigate under the parties' contracts</u>" and (iv) held that Judge Netburn did not commit error in concluding that "proof of 'discovery' would require more than mere constructive knowledge or inquiry notice."  2017 WL 3610511, at *6-11.  Given the clear and unambiguous language in <u>BR/WF III</u>, it is unclear why Plaintiffs believe Judge Failla's prior decision in <u>BR/WF</u> supports any of their arguments.

    In any event, Plaintiffs do not dispute that they cannot prove actual knowledge of loan-specific R&W breaches by sampling.  <u>See</u> P. Br. 4 ("Here, Plaintiffs will ***not*** use sampling to prove [the Trustees'] 'discovery' of R&W breaches whatsoever") (emphasis in original); <u>see also</u> <u>BR/HSBC</u>, 2017 WL 945099, at *8 ("Sampling cannot establish that HSBC had actual knowledge of specific breaches on the requisite loan-by-loan basis.").  And, if Plaintiffs' non-sampling evidence ultimately were to show that the Trustees had actual knowledge of loan-specific R&W breaches for certain loans, Plaintiffs would then need to present evidence regarding <u>those loans</u> to prove the Trustees' liability and damages.  Put differently, any sampling-based evidence of supposed Trust-wide breach rates would be irrelevant.

## 2.    Plaintiffs Cannot Show That an Event of Default Would Have Triggered a Duty to Investigate Potential R&W Breaches

    In another attempt to support the use of sampling, Plaintiffs baldly assert that they "will further prove the occurrence of Events of Default [("EOD")], upon which [the Trustees] had a heightened duty to exercise all contractual rights and act as a 'prudent person,' including investigating and enforcing seller breaches of R&Ws."  P. Br. 1.  This argument fares no better,

as courts have also uniformly rejected sampling with respect to post-EOD claims.  See BR/WF
III, 2017 WL 3610511, at *10-11; BR/HSBC, 2017 WL 945099, at * 9-10.

Among other problems with their position, Plaintiffs do not even attempt to explain how,
assuming an EOD occurred and the Trustees had knowledge thereof, they had a duty to perform
an expensive investigation of the loans in the Trusts.  As Judge Netburn emphasized:

> even in the post-EOD context, "[t]he trustee is not required to act beyond his
> contractually conferred rights and powers." Royal Park, 109 F. Supp. 3d at
> 597. Any investigatory duty assumed by the trustee is still limited by the terms
> of the governing agreements, which allow a trustee to refrain from expending
> or risking its own funds in conducting an investigation without securing
> satisfactory indemnification. See DBALT 2006-AR5 PSA § 9.02(a)(v). The
> plaintiffs have not established that the PSAs required [Trustee] to assume the
> extremely burdensome task of performing a review of the trusts in order to find
> the specific breaching loans.

BR/HSBC, 2017 WL 945099, at *9.  The governing agreements here also provide that "no
provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or
otherwise incur financial liability in the performance of any of its duties." Ex. A, SAST 2004-1,
Indenture § 6.01(c)(vi); see also Ex. C.  And, as in the cases before Judge Netburn, Plaintiffs
have not established that following an EOD, the Trustee was required to launch a costly
investigation in search of loans with R&W breaches, or even explained why doing so would have
made any sense in light of the alleged EODs.

Nor have Plaintiffs referenced any industry standards or customs showing that a prudent
trustee at the time would have investigated for breaches of R&Ws after an EOD.   This is
particularly notable, given that Judge Netburn already spelled out this failure for Plaintiffs:

> plaintiffs have cited no evidence, such as industry standards or customs at
> the time, showing that performing some kind of sampling review,
> identifying and investigating loan breaches, and subsequently enforcing
> repurchase was what a prudent person would have done following an
> EOD. . . . The argument that [HSBC/Wells Fargo] should have performed
> an extensive sampling review of the loans at issue is simply too distant a
> leap for this Court to make without plausible allegations that other MBS

trusts' trustees have taken similar action in similar circumstances
(bolstering the actions a prudent person would have taken).

BR/HSBC, 2017 WL 945099, at *9; see also WS/BNYM, 2017 WL 3392855, at *21 ("Even assuming an Event of Default occurred (which has not been proven on this record), there is no evidence in the record indicating what actions the Trustee was required to take thereafter. Plaintiffs claim that the Trustee should have taken some action that would have allegedly reduced losses in their Trusts, however, there is no evidence of what that action should have been, no legal authority that supports that the Trustee should have only acted for the benefit of these Trusts and no others, and no testimony on exactly how all of this would have played out."). Plaintiffs were on notice of this defect in their argument but failed to cure it.

>            **3.      Even If the Trustees Had Assumed a Duty To
>                     Investigate, Plaintiffs Would Still Need to Prove
>                     Their Claims Loan-By-Loan Trust-By-Trust (Which
>                     Cannot Be Accomplished Through Sampling)**

Based on the Second Circuit's decision in PABF v. BNYM, courts (including this Court) have uniformly recognized that in cases brought by investors against RMBS trustees, plaintiffs must prove their claims on a "loan-by-loan and trust-by-trust" basis. See, e.g., Phoenix Light SF Ltd. v. Bank of N.Y. Mellon, No. 14-cv-10104-VEC, 2017 WL 3973951, at *9 (S.D.N.Y. Sept. 7, 2017) ("PL/BNYM"); WS/BNYM, 2017 WL 3392855, at *10; BR/WF III, 2017 WL 36010511, at *7; BR/HSBC, 2017 WL 945099, at *4-5; Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016); Royal Park v. DBNTC, 2016 WL 439020, at *6; Royal Park Invs. SA/NV v. Bank of N.Y. Mellon, No. 14-cv-6502 (GHW), 2016 WL 899320, at *4 (S.D.N.Y. Mar. 2, 2016); Fixed Income Shares: Series M, 130 F. Supp. 3d at 851, 854; Royal Park v. HSBC, 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015); W. & S. Life Ins. Co. v. Deutsche Bank Nat'l. Tr. Co., 1st Dist. Hamilton No. A1506819, 2016 WL 3625555, at *3, (June 24, 2016) ("WS/DB").  The Second Circuit reasoned that:

-14-

> whether [the party responsible for R&Ws] breached its obligations under the governing agreements (thus triggering [the trustee's] duty to act) requires examining its conduct with respect to each trust. Whether it was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents.

PABF v. BNYM, 775 F.3d at 162.  Thus, Plaintiffs' assertion that PABF v. BNYM, 775 F.3d at 162, is "an inapposite case" that "did not establish a rule that plaintiffs must submit proof showing discrete trails of evidence for every individual loan" (P. Br. 7) is belied by PABF v. BNYM itself and the numerous subsequent decisions cited above.

As courts have recognized, the loan-by-loan proof requirement "arises directly from the [governing agreements]." WS/BNYM, 2017 WL 3392855, at *10; see also PL/BNYM, 2017 WL 3973951, at *8 ("[T]he remedy provisions for a breach of a representation or warranty required the Seller to cure the breach, and if it could not or did not cure, to 'remove such Mortgage Loan ... from the Trust Fund and substitute in its place a Substitute Mortgage Loan' or 'repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee.'"); BR/HSBC, 2017 WL 945099, at *6 ("The repurchase remedy contemplated in Section 2.03 rests on the ability of an RMBS trustee to undertake defined, concrete measures (i.e., enforce the originator's or the seller's repurchase obligation) with respect to a specific defect, in a specific loan, in a specific trust"). Below are examples of relevant contract provisions that require a loan-specific analysis to determine whether the Trustees breached their obligations:

- "Upon discovery by any of the parties hereto of a breach of a representation or warranty made by the applicable Seller in respect to the Mortgage Loans that materially and adversely affects the interests of the Securityholders in any such Mortgage Loan, the party discovering such breach shall give prompt notice thereof to the other parties." Ex. A, SAST 2004-1, SSA § 2.3(d); see also Ex. E.

- "[Seller] hereby covenants that within 90 days or earlier of its discovery or its receipt of written notice from any party of a breach such of any representation or warranty which materially and adversely affects the interests of the Securityholders in any Mortgage

<u>Loan</u>…, it shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) remove <u>such Mortgage Loan</u> ("Deleted Mortgage Loan") from the Trust Estate and substitute in its place a Substitute Mortgage Loan, in the manner and subject to the conditions set forth in this Section; or (ii) repurchase <u>the affected Mortgage Loan or Mortgage Loans</u> from the Issuer at the Purchase Price in the manner set forth below. . ." Ex. A, SAST 2004-1, SSA § 2.3(d); <u>see also</u> Ex. F.

- "Purchase Price: With respect to <u>any Mortgage Loan</u>, an amount equal to the sum of (i) 100% of the unpaid principal balance of <u>such Mortgage Loan</u> on the date of such purchase, (ii) accrued interest thereon at the applicable Mortgage Rate from the date through which interest was last paid by the Mortgagor to the Due Date occurring in the Due Period immediately preceding the Payment Date on which the Purchase Price is to be paid to Noteholders and (iii) any costs and damages incurred by the Issuer in connection with any violation by <u>such Mortgage Loan</u> of any predatory- or abusive-lending law." Ex. A, SAST 2004-1, SSA § 1.1; <u>see also</u> Ex. G.

- "It is understood and agreed that the obligation of [Seller] to substitute for or to purchase <u>any Mortgage Loan</u> which does not meet the requirements of Section 2.1 hereof shall constitute the sole remedy respecting such defect available to the Issuer, the Indenture Trustee and any Securityholder against the Depositor or [Seller]." Ex. A, SAST 2004-1, SSA § 2.2; <u>see also</u> Ex. H.

These provisions require that a plaintiff "first show which specific loans were in breach because any defect that would be cured by repurchase is loan-specific." <u>BR/HSBC</u>, 2017 WL 945099, at *5. As Judge Netburn emphasized:

To prevail on their [R&W] breach of contract claims, plaintiffs must establish that [the trustee] failed to act as required under the PSA. The elements of such a claim require establishing loan-specific proof related to a particular defect, that defect was material to the value of the loan, that [the trustee] failed to act with respect to the loan-specific remedies available for a particular defect, and that such failure caused the plaintiffs harm.

<u>Id.</u> at *4. Judge Netburn further explained:

Sampling will not adequately distinguish between breaches that are material and adverse as to a particular loan and those that are not. Sampling may fail to capture whether the nature of the breach had a material and adverse effect at the time a repurchase obligation, if any, was triggered, especially when the sample that plaintiffs here draw consists of current loan performance information. Sampling may also detect a technical breach or deviation from underwriting standards but fail to capture mitigating circumstances or compensating factors. For example, a missing verification of employment in a loan file is a technical deviation

of the underwriting guidelines. Yet the defect may not have had any
material and adverse effect (and is therefore not an R&W breach requiring
a repurchase remedy) if the borrower was actually employed and earned a
stable income.

BR/HSBC, 2017 WL 945099, at *5; WS/BNYM, 2017 WL 3392855, at *10 ("The materiality of

a representation and warranty breach is also a loan-specific inquiry.").[14]

      Loan-specific proof also is required to establish certain extra-contractual elements of

causation and damages arising from the Trustee's alleged breaches.  For example, different loans

in Trusts have different sellers, and to prove their claims, Plaintiffs would need to show that the

seller for each defective loan that the Trustee was purportedly required to put back would have

had sufficient funds to pay the repurchase price for that specific loan.  See, e.g., Ex. A, SAST

2004-1, SSA § 2.3(d).  The use of sampling to determine a supposed Trust-wide breach rate will

not distinguish between loans outside the sample that had a seller with sufficient funds from

those that did not.

      Accordingly, sampling-based estimates of supposed Trust-wide breach rates simply

cannot yield the loan-specific proof necessary for Plaintiffs to prevail on their claims.  See, e.g.,

PL/BNYM, 2017 WL 3973951, at *8 ("Taken together, these breach and remedy provisions

make clear that breaches must be discovered (and remedied) relative to the particular mortgage

loans in breach; as such, knowledge of 'pervasive breaches' does not suffice."); BR/WF II, 2017

---

[14]     Plaintiffs incorrectly contend that "the use of sampling to prove damages does not conflict with the
Governing Agreements' sole remedy provision (i.e., cure, substitute or repurchase)" because "[t]his is not a putback
case" and "the Governing Agreements make clear that noteholders retain all rights and remedies available at law."
P. Br. 10.  Plaintiffs' claims arise from the Trustees' alleged failure to enforce the sellers' obligations under the
governing agreements to cure, substitute or repurchase defective loans.  Thus, to prevail, Plaintiffs must show that
under those agreements (including the sole remedy clause) the sellers had an obligation to cure, substitute or
repurchase the specific defective loans that Plaintiffs claim the Trustees should have put back.  This requires
loan-by-loan evidence.  See, e.g., BR/HSBC, 2017 WL 945099, at *4-5.  Moreover, New York law is clear that the
sole remedy provisions in the governing agreements trump any clauses providing that noteholders retain "all rights
and remedies."  Nomura Home Equity Loan, Inc. v. Nomura Credit & Capital, Inc., No. 39, 2017 WL 6327110, at
*13 (N.Y. Dec. 12, 2017).

WL 953550, at *4-5; BR/HSBC, 2017 WL 945099, at *4-5.  Thus, even if the Trustees had a

duty to investigate, sampling-based evidence could not satisfy Plaintiffs' loan-by-loan burden of

proof.  See BR/HSBC, 2017 WL 945099, at *8-9 ("Conducting a sampling review seven or eight

years after the fact cannot establish which specific loans [the RMBS trustee] would have actually

found to be in breach had it performed an investigation at the time . . . . To successfully enforce

repurchase of a specific loan after a defined EOD . . . occurred, [the RMBS trustee] would have

needed to locate the individual breaching loans themselves rather than determine trust-wide

breach rates."); BR/WF III, 2017 WL 3610511, at *10-11 (finding "no error in Judge Netburn's

thorough reasoning").[15]

### B.  The Burden/Expense of Sampling-Related Discovery Would Outweigh Its Likely Benefit

Plaintiffs incorrectly assert "there is no prejudice to [the Trustees] should Plaintiffs

proceed with developing and presenting the sampling evidence."  P. Br. 11-12.  Indeed, if the

Court were to permit Plaintiffs' sampling-related expert discovery, the Trustees would need to

spend significant time and money to analyze, challenge and rebut Plaintiffs' sampling evidence,

which other courts have recognized "will cost hundreds of thousands, if not millions, of dollars,

will require months to conduct, and will likely result in challenges to the admissibility of the

evidence."  See BR/WF III, 2017 WL 3610511, at *11.  As sampling cannot satisfy Plaintiffs'

burden of proof, the significant burden and expense of sampling-related expert discovery

outweighs whatever theoretical benefit it may have.  See id.

---

[15]     Plaintiffs' suggestion (P. Br. 8) that "sampling" would satisfy the "loan-by-loan" standard with respect to loans outside the sample is misplaced because sampling would not yield the required loan-specific evidence for those loans.  See BR/HSBC, 2017 WL 945099, at *4-10; BR/WF III, 2017 WL 3610511, at *7-11.

**C.    The Remaining FRCP 26(b)(1) Factors Confirm that**
**<u>Sampling Would Not Be Proportional To the Needs of this Case</u>**

Consideration of the remaining FRCP 26(b)(1) factors—importance of the issues at stake, the amount in controversy, and the parties' resources and relative access to information—confirms that sampling discovery is not proportional to the needs of this case.  See <u>id.</u>, at *5-6, 10-11 (quoting FRCP(26)(b)(1) factors and denying plaintiffs' sampling motion).

<u>Importance of the Issues at Stake</u>:  Plaintiffs never address this factor, which accounts for "the significance of the substantive issues, as measured in philosophic, social or institutional terms" and "public policy spheres."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.  Plaintiffs' desire to estimate Trust-wide breach rates as opposed to conducting the required loan-by-loan analysis is not a public policy concern, and does not fall within the "public policy sphere[]" or seek to vindicate any "vitally important personal or public value[]."  See <u>id.</u>

<u>Amount in Controversy</u>:  Plaintiffs state "the amount in controversy is significant as the Trusts at issue have suffered collateral losses of nearly $5 billion."  P. Br. 11.  However, this only further demonstrates why sampling-related expert discovery makes no sense.  Given the amount at stake, it is imperative that any liability or damages assessment be accurate, which Plaintiffs concede cannot be accomplished through sampling.

Plaintiffs assert that their sampling-based extrapolated "breach rates" will be "at a 95% confidence level with a maximum margin of error of +/- 10%."  <u>Id.</u> 5-6.  Even if this statement were true, it would only mean there is a 95% probability that the Trust-wide breach rate is between +10% and -10% of the breach rate in the sample.  For example, assuming for illustrative purposes only that Plaintiffs' experts determined there is a 30% breach rate in their 100-loan sample, Plaintiffs' sampling expert would apparently opine with 95% confidence that the Trust-wide breach rate would fall somewhere between 20% and 40%.  See <u>id.</u>  In light of

-19-

Plaintiffs' $5 billion loss allegation and their expert's concession of at least a +/- 10% margin of error, Plaintiffs proposed sampling-based proof could result in a damages claim by Plaintiffs and the putative class that is **$1 billion** more or less than the correct amount.  This issue does not exist when the Second Circuit's loan-by-loan standard of proof is applied.

Parties' Resources:  To the extent the Court is concerned about the costs of the required loan-by-loan review, Plaintiffs concede they "are large, sophisticated institutions with sufficient resources."  P. Br. 11.  Furthermore, regardless of the parties' resources, it would be wasteful to permit expensive and burdensome sampling-related discovery that would not satisfy Plaintiffs' burden of proof.  Thus, this factor does not support sampling.

Parties' Relative Access to Information:  As confirmed by Plaintiffs, "all parties have equal access to the loan origination and servicing files" at issue, which can be used to conduct the required loan-by-loan analysis.  See id.  Thus, this final factor does not support sampling.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion regarding sampling-related expert discovery.

Dated: New York, New York
      January 12, 2018

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Kevin J. Biron*

Michael S. Kraut
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001
Michael.Kraut@morganlewis.com
Kevin.Biron@morganlewis.com

*Attorneys for Defendants Deutsche Bank*
*National Trust Company and Deutsche Bank*

-20-

*Trust Company Americas, each acting solely in*
*its capacity as Trustee*