**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al*., <br><br> Plaintiffs, <br><br> -against- <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, *et al*., <br><br> Defendant. | Case No. 14-cv-9367-JMF-SN |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT**
**OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 4

    A.   Deutsche Bank's Contractual Obligations To The Class........................ 4

        1.   Deutsche Bank's Duties To Address Seller Breaches ............................... 5

        2.   Deutsche Bank's Duty To Remedy Servicer Breaches.............................. 5

        3.   Deutsche Bank's Duties Upon An Indenture Event Of Default........................................................................................................ 6

    B.   Deutsche Bank's Duties Under The TIA ................................................. 7

III.  DEUTSCHE BANK'S BREACHES OF CONTRACT AND VIOLATIONS OF THE TIA.......................................................................... 7

    A.   Deutsche Bank's Breaches Of Duties Regarding The Trusts' Claims Against Sellers........................................................................... 7

    B.   Deutsche Bank's Breaches With Respect To Servicing Violations....................... 9

IV.   THE PROPOSED CLASS REPRESENTATIVES ........................................ 12

V.    CLASS CERTIFICATION IS APPROPRIATE ............................................. 12

    A.   Rule 23(a) Requirements Are Satisfied ................................................... 13

        1.   The Class Is Numerous ............................................................................ 13

        2.   Class Members Share Common Questions Of Law And Fact................................................................................................... 14

        3.   Plaintiffs' Claims Are Typical Of The Class ........................................... 16

        4.   Plaintiffs Will Fairly And Adequately Represent The Class ................... 18

    B.   The Requirements Of Rule 23(b)(3) Are Also Satisfied ....................... 19

        1.   Common Questions Of Law And Fact Predominate Under Rule 23(b)(3)........................................................................................ 19

            a)   The Predominance Concerns In The Royal Park Actions Are Inapplicable To This Case................................20

        2.   A Class Action Is Superior ...................................................................... 26

i

C.      The Class Is Ascertainable ........................................................................................ 28

VI.    CONCLUSION .................................................................................................................... 29

## **TABLE OF AUTHORITIES**

Case                                      Page

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)........................................................................................26

*Bank of America Nat'l Trust & Sav. Assoc. v. Envases Venezolanos, S.A.*,
 740 F. Supp. 260 (S.D.N.Y.1990) ...............................................................21

*Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
 269 F.R.D. 340 (S.D.N.Y. 2010) ............................................................15, 27

*In re Beacon Assocs. Litig.*,
 282 F.R.D. 315 (S.D.N.Y.2012) ..................................................................27

*Beck v. Mfrs. Hanover Tr. Co.*,
 218 A.D.2d 1 (1st Dep't 1995) ......................................................................6

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
 97 N.Y.2d 456 (2002) ..................................................................................21

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
 778 F. Supp. 2d 375 (S.D.N.Y. 2011)............................................................6

*Brown v. Kelly*,
 609 F.3d 467 (2d Cir. 2010).........................................................................12

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
 504 F.3d 229 (2d Cir. 2007).........................................................................13

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
 2014 WL 4049896 (S.D.N.Y. Aug. 15, 2014)...........................................18

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013)......................................................................................2, 3

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)...........................................................................13

*Dodona I, LLC v. Goldman, Sachs & Co.*,
 296 F.R.D. 261 (S.D.N.Y. 2014) .............................................................14, 27

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................................27

*Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*,
  2007 WL 950134 (S.D.N.Y. Mar. 28, 2007) ........................................................21

*FDIC v. Citibank N.A.*,
  2016 WL 8737356 (S.D.N.Y. Sept. 30, 2016) .......................................................22

*Feldbaum v. McCrory Corp.*,
  1992 WL 119095 (Del. Ch. June 2, 1992) ..............................................................16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009) .....................................................................................18

*Fleisher v. Phoenix Life Ins. Co.*,
  2013 WL 12224042 (S.D.N.Y. July 12, 2013) ......................................................15

*Fogarazzo v. Lehman Bros., Inc.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) .............................................................................13

*Ft. Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................13, 17, 20

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ...........................................................19, 20, 26, 27

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152 (S.D.N.Y. 2014) ...........................................................................18

*Kalkstein v. Collecto, Inc.*,
  304 F.R.D. 114 (E.D.N.Y. 2015) ......................................................................18, 19

*Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*,
  211 F.R.D. 228 (S.D.N.Y. 2002) ......................................................................14, 15

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ...................................................................................14

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2011 WL 3874821 (S.D.N.Y. Aug. 16, 2011) ......................................................28

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*,
  986 F. Supp. 2d 412 (S.D.N.Y. 2013) ...................................................................22

*Oklahoma Police Pension and Retirement System v. U.S. Bank National
  Association*,
  11-cv-08066 (S.D.N.Y.) ........................................................................................23

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017) ................................................................................3, 28

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..................................................................................................26

*Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America
    NA et al*,
    No. 12-02865 (S.D.N.Y.)........................................................................................23

*Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ..............................................................13, 14, 27, 28

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. The
    Bank of N.Y. Mellon*,
    914 F. Supp. 2d 422 (S.D.N.Y. 2012).......................................................................7

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015).......................................................................................2

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).....................................................................................14

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001).....................................................................................17

*Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*,
    14 Civ. 9764 (S.D.N.Y.), ECF No. 442 ........................................................... passim

*Royal Park Invs. SA/NV v. The Bank of N.Y. Mellon*,
    2017 WL 3835339 (S.D.N.Y. Aug. 30, 2017)..........................................................20

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017)........................................................20, 29

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)............................................................6, 20, 21

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .............................................................................17

*Seekamp v. It's Huge, Inc.*,
    2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ......................................................15, 26

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004).......................................................2, 14, 15, 23

*In re The Bank of N.Y. Mellon*,
    4 N.Y.S.3d 204 (N.Y. App. Div. 2015) ....................................................................12

v

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
    131 F.R.D. 38 (S.D.N.Y. 1990) ....................................................................13

*In re U.S. Bank Nat'l Ass'n*,
    27 N.Y.S.3d 797 (N.Y. Sup. Ct. Dec. 18, 2015) ........................................12

*U.S. Bank Nat'l Ass'n v. Fed. Home Loan Bank of Bos.*,
    2016 WL 9110399 (N.Y. Sup. Ct. Aug. 12, 2016) .....................................12

*In re U.S. Foodservice Inc. Pricing Litig.*,
    2011 WL 6013551 (D. Conn. Nov. 29, 2011) ............................................15

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013).............................................................. passim

*UFCW Local 1776 v. Eli Lilly and Co.*,
    620 F.3d 121 (2d Cir. 2010)........................................................................19

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................14, 18

## STATUTES, RULES & REGULATIONS

15 U.S.C.
    § 77mmm(c) ...................................................................................................7
    § 77ooo(b) .....................................................................................................7
    § 77ooo(c) .....................................................................................................7

New York General Obligations Law
    § 5-1401 ......................................................................................................21
    § 13-107 ...........................................................................................3, 21, 22

Federal Rules of Civil Procedure
    Rule 23(a)(1) ..............................................................................................2, 13
    Rule 23(a)(2) ..............................................................................................2, 14
    Rule 23(a)(3) ........................................................................................3, 16, 17
    Rule 23(a)(4) ..............................................................................................3, 18
    Rule 23(b)(3)............................................................................................ passim

I.      **INTRODUCTION**

This action is brought by Plaintiffs on behalf of themselves and a Class of similarly-situated noteholders in fifty-eight RMBS Trusts against Deutsche Bank for its breaches of contractual and statutory duties as Indenture Trustee for the Trusts.  After learning of Seller and Servicer breaches, Deutsche Bank failed to: (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent servicing obligations; (iii) take appropriate action against responsible parties to protect noteholders' interests; and (iv) provide notice to noteholders of all defaults.  Instead, in breach of its common contractual duties, Deutsche Bank did virtually nothing to protect noteholders, causing Plaintiffs and the Class to suffer substantial and avoidable losses.

Plaintiffs seek to certify the following Class:

> All persons or entities who purchased or otherwise acquired a beneficial interest in a security issued from the Trusts identified in Exhibit 1 of the accompanying declaration of Timothy A. DeLange between the date of offering and 60 days from the final order certifying the class and who hold that beneficial interest in the security through the date of final judgment in the District Court, and who were damaged as a result of Defendants Deutsche Bank National Trust Company's and Deutsche Bank Trust Company Americas' (together "Deutsche Bank" or "Defendants") alleged breaches of contract and violations of the Trust Indenture Act of 1939 ("TIA") (collectively, the "Class").[1]

Plaintiffs and other Class members' claims are best addressed and resolved on a class basis to advance judicial economy and provide meaningful relief for Deutsche Bank's misconduct. Indeed, courts in this Circuit recognize such cases as being well-suited for class action treatment. *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123-27 (2d Cir. 2013) (breach

---

[1] Excluded from the Class are the Defendants, the Originators, the Sellers, the Master Servicers and the Servicers to the Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

of contract case properly certified by district court); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such").

This case is no different.  It meets each of Rule 23's requirements.

*Numerosity*.  The Class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Indeed, there are at least 604 and likely hundreds more Class members.

*Commonality and Predominance*.  There are questions of both law and fact common to the Class arising from the Trusts' largely identical form contracts. Fed. R. Civ. P. 23(a)(2).  These common legal and factual questions predominate over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  Plaintiffs' and the Class's claims are "materially uniform" insofar as the Trusts' Governing Agreements (as defined herein) and the TIA impose the same fundamental duties Defendants owed equally to all noteholders.  *U.S. Foodservice*, 729 F.3d at 125.  Moreover, the question of Defendants' breach of these duties will focus predominately on common evidence to determine the underlying Seller and Servicer breaches, Defendants' discovery of those breaches, and their failure to take action.  Thus, the question of whether Defendants violated their duties is common to all Class members.  Additionally, any legitimate affirmative defenses available to the Defendants are not unique to Plaintiffs or any Class member but are common as to all holders.  Finally, although not required under Second Circuit law (*see Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 (2d Cir. 2015) ("we do not read *Comcast* as precluding class certification where damages are not capable of measurement on a classwide basis")), Plaintiffs offer a damages model susceptible of measurement across the entire Class and consistent with their underlying theory of Class-wide liability.  *Comcast Corp. v. Behrend*, 569

U.S. 27, 34 (2013); *see U.S. Foodservice*, 729 F.3d at 123 n.8 (damages model linked with underlying theory of classwide liability in breach of contract action satisfied *Comcast*).

   ***Typicality and Adequacy****.*  Plaintiffs' claims and the defenses thereto are typical of those of the Class (Fed. R. Civ. P. 23(a)(3)), and Plaintiffs will fairly and adequately protect the interests of the Class (Fed. R. Civ. P. 23(a)(4)).  Plaintiffs and the Class assert identical breach of contract and TIA claims governed under New York and federal law.  Moreover, Plaintiffs are not subject to any unique defenses and share all Class members' common interest in maximizing the Class's recovery.  In particular, Plaintiffs and all Class members are not subject to any individualized standing or statute of limitations defenses, requiring individualized fact-intensive inquiries.  The Notes are expressly governed by New York law and New York's General Obligations Law Section 13-107 applies uniformly to all Class members' claims.  Finally, as proposed Class Representatives, the Plaintiffs have and will continue to actively monitor and supervise this action, have a full understanding of the responsibilities of a class representative, and have retained experienced counsel with a proven track record in class actions like this one.

   ***Superiority****.*  A class action is preferable to any other method for fairly and efficiently adjudicating this controversy.  Fed. R. Civ. P. 23(b)(3).  Multiple lawsuits would be costly and inefficient, and no manageability issues arise from allowing this case to proceed as a class action.

   ***Ascertainability****.*  Finally, Plaintiffs' proposed Class is defined "using objective criteria that establishes a membership with definite boundaries."  *See In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017).  As defined, the proposed Class includes only current noteholders within a specified time-period, thus avoiding concerns expressed by other courts in reviewing class definitions without temporal limitations.

II.       **STATEMENT OF FACTS**

The fifty-eight RMBS trusts at issue in this case (collectively, the "Trusts") were secured by pools of mortgage loans valued at more than $85.8 billion at the time of securitization.[2] Declaration of Timothy A. DeLange, dated January 26, 2018 ("DeLange Decl."), Ex. 2.[3]  To date, the Trusts have suffered total realized collateral losses of $10.3 billion.  *Id.*  A common set of securitization agreements governs each Trust and establish Deutsche Bank's duties to noteholders, including the Mortgage Loan Purchase and Sale Agreements ("MLPA"), the Trust Agreements, the Sale and Servicing Agreements ("SSA"), and the Indentures (or similar agreements) (collectively, the "Governing Agreements").  Exs. 34-44.  Each Trust is subject to the TIA.  Ex. 38.

The Notes contain an express New York controlling law provision governing their transfer.  Ex. 4.  Each Governing Agreement also expressly provides that New York law governs.  *Id.* § 11.13.

A.       **Deutsche Bank's Contractual Obligations To The Class**

The Governing Agreements impose on Deutsche Bank substantially identical duties with respect to addressing breaches in the underwriting and servicing of the underlying mortgage loans.  *See* Exs. 34-44.

---

[2] The proposed class representatives no longer hold in 4 trusts that were the subject of Plaintiffs' Amended Complaint.  The trusts are not included in Plaintiffs' motion for class certification, and Plaintiffs will dismiss their claims on these trusts.

[3] Citations to "Ex." refer to the Exhibits accompanying the DeLange Decl.

### 1.   Deutsche Bank's Duties To Address Seller Breaches

Under the MLPAs, the Originator or Sponsor (together, the "Sellers") makes common representations and warranties concerning the characteristics, quality, and risk profile of the mortgage loans, such as:

- **Owner Occupancy**: The mortgaged properties are lawfully occupied as the principal residences of the borrowers;

- **LTV**: No loan has a loan-to-value ratio of more than 100%;

- **Complete Documentation**:  The related loan file contains specified documents ensuring the title, priority and enforceability of the liens securing the mortgages; and

- **Stated Underwriting Guidelines**: Each loan was originated in accordance with the sellers' stated underwriting guidelines.  Ex. 5.

Upon the sale of the mortgage loans to the Trusts, the rights under the MLPAs, including with regard to the Sellers' representations and warranties, were assigned to Deutsche Bank in its capacity as Indenture Trustee.  Ex. 6 § 2.03.  Under the SSAs, if Deutsche Bank "discovers" that one of the mortgage loans underlying the Trusts materially breaches one of the representations and warranties, Deutsche Bank must give prompt written notice to the responsible Seller and other contract parties.  Ex. 7 § 3.7(c); *see also* Ex. 35.  If the breach is not timely cured, Deutsche Bank must enforce the breaching Seller's obligation to substitute or repurchase the defective loan and take all other appropriate action necessary to enforce the Trusts' rights.  *Id.*

### 2.   Deutsche Bank's Duty To Remedy Servicer Breaches

Under the Governing Agreements, Deutsche Bank also has certain duties with respect to enforcing the Servicers' obligations.  In particular, where Deutsche Bank learns of a Servicer's failure to observe or perform, in any material respect, covenants or agreements under the SSAs (which set forth the Servicer's obligations), Deutsche Bank must provide written notice to the Servicer.  Ex. 8 § 7.01; *see also* Ex. 36.  Such failures may include a failure to service the mortgage

loans in accordance with accepted servicing practices and the failure to supervise and oversee the servicing of the mortgage loans.  Ex. 6 § 3.01.  If the responsible Servicer fails to cure the breach, the default ripens into a Servicer or Master Servicer Event of Default.  *Id.* § 6.01; *see also* Ex. 37. Under the Indenture and SSA, if an Event of Default as to which a responsible officer of Deutsche Bank has received written notice or of which it has actual knowledge, Deutsche Bank is required to give prompt, written notice to all noteholders.  Ex. 9 § 6.03 (SSA); § 6.05 (Indenture); *see also* Exs. 42, 44.  The remedies for uncured Servicer or Master Servicer Events of Default include termination of the Servicer and recoupment of Trust assets lost as a result of the Servicer's violations.  Ex. 10 § 7.1(f); *see also* Ex. 40.

### 3.  Deutsche Bank's Duties Upon An Indenture Event Of Default

Deutsche Bank's duties resemble those of an ordinary fiduciary following the occurrence of an Indenture Event of Default.  *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 401 (S.D.N.Y. 2011) (after an event of default, trustee's duties "'resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture'") (quoting *Beck v. Mfrs. Hanover Tr. Co.*, 218 A.D.2d 1, 12 (1st Dep't 1995)).  An Indenture Event of Default occurs when the issuing Trust fails to perform its obligations under the Indenture, and after proper notice from the Indenture Trustee that default is not cured.  Ex. 11 § 5.01 (Indenture); *see also* Ex. 41.  Among the issuing Trust's obligations – the breach of which can ripen into an Indenture Event of Default – are to "take such . . . action necessary or advisable to . . . cause the Issuer or Master Servicer to enforce any of the rights of the Mortgage Loans" or to "preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the noteholders in such Trust Estate against the claims of all persons and parties."  Ex. 11 § 3.05; *see also* Ex. 39.  As such, known and unremedied Seller and Servicer defaults give rise to Indenture Events of Default.  *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d

587, 604-05 (S.D.N.Y. 2015) ("'While these alleged failures constitute[] direct breaches of the SSA, they also violate[] the issuer's duties under the Indenture. After all, if [Sellers] failed to cure or repurchase defective mortgages, the issuer similarly failed to 'enforce any rights with respect to [the Trust Fund],' as the Indenture required it to do.'") (quoting *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chi. v. The Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012), *abrogated on other grounds by* 775 F.3d 154 (2d Cir. 2014)) (alterations omitted).

After the occurrence of an Indenture Event of Default, Deutsche Bank must use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs. Ex. 10 § 6.01(a); *see also* Ex. 43. Deutsche Bank must also provide to the noteholders of such Events of Default. Ex. 42.

### B.   Deutsche Bank's Duties Under The TIA

The TIA requires Deutsche Bank to inform noteholders of defaults within ninety days after their occurrence. 15 U.S.C. § 77ooo(b) (citing 15 U.S.C. § 77mmm(c)). In case of default, the TIA requires Deutsche Bank to exercise its rights and powers under the Indenture as a prudent person would, under those circumstances, in the conduct of the person's own affairs. 15 U.S.C. § 77ooo(c). Ex. 43 § 6.01(a); §11.06; *see also* Ex. 38.

## III.   DEUTSCHE BANK'S BREACHES OF CONTRACT AND VIOLATIONS OF THE TIA

### A.   Deutsche Bank's Breaches Of Duties Regarding The Trusts' Claims Against Sellers

Common evidence for each Trust will show that Deutsche Bank discovered significant breaches of representations and warranties in each of the Trusts, but failed to act as obligated under the Governing Agreements and the TIA. For example, Deutsche Bank ████████ ████████████████████████████████████████████████████████. Ex. 12 at 78:12-84:3; 171:11-173:3. In particular, the Governing Agreements obligated Deutsche Bank to certify

that key documents for the mortgage loans were included in the mortgage files and to create an exception report identifying any incomplete mortgage loan files.  Ex. 8 § 2.04; § 2.05.  The exception reports prove that Deutsche Bank ███████████████████████████████████████ ████████████████████████████████████████████.  Ex. 16 at 106:3-116:21; Ex. 18.  Similarly, Deutsche Bank █████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████.  Ex. 21 at 203:3-206:7, Ex. 23.  This same common evidence will show Deutsche Bank's █████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████.  Ex. 24 at 123:5-125:21.

Additionally, Deutsche Bank possessed unique knowledge of the Sellers' systemically deficient underwriting practices.  As trustee to other RMBS trusts, Deutsche Bank repeatedly ████████████████████████████████████████████ ███████████████.  Ex. 15 at 78:17-87:5, 135:8-138:9; Ex. 13; Ex. 14.  Deutsche Bank actively ███████████████████████████████████████████ ███████████████████████████████████████.  Ex. 25  at  192:5-193:23. Moreover, Deutsche Bank ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████.  Ex. 25 at 220:8-263:6; Ex. 26.  Deutsche Bank employees also actively ████████████████████████████████████████████ █████████████████████████████████.  Ex. 27 at 219:20-222:23; Ex. 31 at 128:22-131:23. This included litigation involving the Trusts, or cases in which Deutsche Bank was subpoenaed. Ex. 45.

Despite discovering representation and warranty breaches in the Trusts, Deutsche Bank failed to perform its contractual obligations to protect the Trusts and the Class. Consequently, thousands of defective loans were not cured or repurchased. Moreover, Deutsche Bank failed to provide notice to noteholders of these Seller defaults, as the TIA requires.

**B.      Deutsche Bank's Breaches With Respect To Servicing Violations**

Common evidence for each Trust will show Deutsche Bank's responsible officers' actual knowledge (including through receipt of written notice) of Servicer defaults and Servicer Events of Default. In particular, Deutsche Bank's responsible officers ████████████████ ███████████████████████████████████████████. Ex. 16 at 243:4-251:22; Ex. 19; Ex. 20. ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████. *Id*. Deutsche Bank also ██████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████. *Id*. ██████████████████████████████████████ ██████████████. Ex. 21 at 196:21-200:6; Ex. 22.

For example, as reflected below, Loan ID: ***6679 in the FBRSI 2005-5 Trust was originated and sold to the Trust on or about October 2005, with an original balance of $179,000. The borrower defaulted and the loan went into foreclosure in February 2007. The Servicer, however, failed to liquidate the loan until November 2017, meaning that the loan remained in foreclosure status for ***nearly 11 years***, unnecessarily accruing servicing fees at the Class's expense.



Likewise, Loan ID: ***6884 in the AMIT 2004-1 Trust was originated in October 2004. The borrower defaulted in July 2006. Amazingly, the Servicer still maintains the distressed loan on its books as of December 2017, or **_more than 11 years_**, all the while collecting servicing fees.



The specific loans detailed above are but two examples. In particular, an analysis of servicing data for all loans within Trusts confirm that these Trusts contain an extremely large percentage of loans that have been in distress for more than one year, as reflected in the chart below. In total, for these Trusts, distressed loans have caused nearly $5.17 billion in cumulative avoidable servicing expenses to date, representing nearly 63% of all the collateral losses.



Cumulative Collateral Loss by Number of Years Spent in Distress

Furthermore, Deutsche Bank ████████████████████████████████

████████████████████████████████████████████████████████████

██████████ (Ex. 28 at 210:2-222:23); ██████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ (Ex. 29 at 248:12-253:13; Ex. 30).

Despite knowing of rampant Servicer breaches and Servicer Events of Default, Deutsche Bank failed to address these servicing violations in breach of its contractual and statutory duties, or otherwise take action against responsible parties as a prudent person would under the same circumstances. Moreover, Deutsche Bank failed to provide notice of these defaults to noteholders. Such servicing misconduct has substantially driven up the Trusts' expenses and losses, and the Class has suffered significant damages as a result of Deutsche Bank's uniform common failures.

## IV.    THE PROPOSED CLASS REPRESENTATIVES

Plaintiffs are among the world's most prominent bond investors, and hold notes in the 58 Trusts with an original face amount of more than $85.8 billion.  Ex. 2.  Over the last five years, Plaintiffs have spearheaded several of the largest RMBS investor-led initiatives, including the $8.5 billion Bank of America RMBS Settlement, the $4.5 billion JPMorgan Chase & Co. RMBS Settlement and the $1.125 billion Citigroup RMBS settlement.  *In re The Bank of N.Y. Mellon*, 4 N.Y.S.3d 204 (N.Y. App. Div. 2015); *U.S. Bank Nat'l Ass'n v. Fed. Home Loan Bank of Bos.*, 2016 WL 9110399 (N.Y. Sup. Ct. Aug. 12, 2016); *In re U.S. Bank Nat'l Ass'n*, 27 N.Y.S.3d 797 (N.Y. Sup. Ct. Dec. 18, 2015).  These proceedings have greatly benefitted RMBS investors, as they have led to several historic multi-billion dollar settlements and significant changes and improvements in the RMBS industry.  *Id.*  With this suit and other actions against different trustee banks, Plaintiffs now seek and are fully committed to obtaining recoveries from the RMBS trustees for their misconduct, which contributed to the RMBS market collapse, and to reform the trustees' uniform practice of ignoring their contractual duties.

## V.    CLASS CERTIFICATION IS APPROPRIATE

Class certification requires a two-step analysis.  First, a plaintiff must show that all four of the prerequisites of Rule 23(a) are satisfied:  (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

Second, the action must satisfy at least one of the subcategories of Rule 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that:  (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  As set forth below, each of the Rule 23(a) and 23(b)(3) requirements is met.

### A.     Rule 23(a) Requirements Are Satisfied

#### 1.     The Class Is Numerous

Certification is appropriate when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 277 F.R.D. 97, 103-04 (S.D.N.Y. 2011).  "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)).  The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007) (citation omitted).  In the Second Circuit, the numerosity requirement *is presumptively* satisfied at a level of approximately 40 class members.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ft. Worth Emps' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014); *see also Town of New Castle v. Yonkers Contracting Co., Inc.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (certifying class with 36 potential members).

In support of their motion for class certification, Plaintiffs submit the Declaration of Dr. Michael Hartzmark, Ph.D.  Ex. 3.  Based on publicly available data on the reported holdings of large financial institutions, Dr. Hartzmark, has identified at least 604 separate noteholders that currently hold active notes in the Trusts, which collectively have a face value of approximately $87.8 billion.  Ex. 3 ¶¶6, 15, App'x C.  After accounting for principal distributions and write-offs, there are still outstanding approximately $52.8 million in active tranches that are held by institutions, implying that 65% of all current holdings of *active* tranches by Class members are <u>not</u>

reported or accounted for in the Bloomberg data. *Id*. at App'x D. Accordingly, it is reasonable to expect that the Class far exceeds 200 Class members. *Id*. ¶¶21-23, Ex. 1.

Further, based on publicly available information, noteholders in the Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from tens of thousands to hundreds of millions of dollars. This fact supports certification, which will promote judicial efficiency and avoid duplicative litigation. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members"). The joinder of these investors would be impractical. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105 (recognizing that joinder or individual adjudication of numerous and dispersed sophisticated investors' claims would be impractical).

### 2. Class Members Share Common Questions Of Law And Fact

"Commonality" requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts construe the commonality requirement liberally. *Steinberg*, 224 F.R.D. at 74 (commonality is considered a "'minimal burden for a party to shoulder'") (quoting *Lewis Tree Serv., Inc. v. Lucent Techs. Inc*., 211 F.R.D. 228, 231 (S.D.N.Y. 2002)). Courts demand only that the plaintiff's and the class member's claims "share a common question of law or of fact." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Lewis Tree*, 211 F.R.D. at 231. Indeed, the Supreme Court has held that "'*[e]ven a single [common] question' will do*." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (emphasis added); *see also Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 267 (S.D.N.Y. 2014) (describing commonality requirement as a "low hurdle"). A question is common if its answer will resolve an issue relevant to the claims on a class-wide basis "in one stroke" (*Wal-Mart*, 564 U.S. at 350), regardless of

-14-

whether it will "overshadow potential individual issues." *In re U.S. Foodservice Inc. Pricing Litig.*, 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

Courts within the Second Circuit routinely find commonality is satisfied in cases where: (a) a defendant is alleged to have breached an obligation under substantively identical or similar form agreements (*see*, *e.g.*, *U.S. Foodservice*, 729 F.3d at 123-27; *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at *3 (S.D.N.Y. July 12, 2013); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *3 (N.D.N.Y. Mar. 13, 2012)); and (b) the defendant's challenged practice follows a common course of conduct that has affected all putative class members. *See Lewis Tree*, 211 F.R.D. at 231; *Bd. of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 348 (S.D.N.Y. 2010).

Here, the commonality requirement is easily satisfied. First, common factual questions exist among the putative Class members. Deutsche Bank breached substantially identical contractual terms to which Class members were beneficiaries. Adjudication of Plaintiffs' claims will require the Court to apply key contractual terms, such as "discovery" of Seller representation and warranty breaches, "actual knowledge" of servicer defaults, Servicer Events of Default, Indenture Events of Default, and "the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's affairs," as they appear in each of the Governing Agreements and the TIA. These key terms, their definitions, and other pertinent contractual provisions are substantively similar, if not identical, in all of the Governing Agreements and the TIA and can be considered uniform or "form contracts" for the purposes of this litigation. *Steinberg*, 224 F.R.D. at 74.

Deutsche Bank's common course of conduct with respect to the putative Class further demonstrates that common questions of fact exist among the Class. Deutsche Bank engaged in a

common course of behavior, undertaken by the same group of individuals at Deutsche Bank using common (yet flawed) policies and procedures. *See supra* Section III. In particular, Deutsche Bank's practice of repeatedly failing to take action absent direction or indemnity from noteholders is a common course of conduct affecting all putative Class members. For example, Deutsche Bank Vice President Ronaldo Reyes testified that after Deutsche Bank ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████ *Id.* at 213:12-214:11;

*see also id.* at 215:16-216:5 (███████████████████████████

███████████████████████████████████████████████

███████) (Reyes, R.). Similarly, Deutsche Bank Assistant Vice President Karlene Benvenuto testified that Deutsche Bank ██████████████████████████████████

████████████████████. Ex. 16 at 56:7-65:3; *see also* Ex. 31 at 17:9-18:8 (Deutsche Bank

Transaction Manager and Assistant Vice President Shelle Palmer, █████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████). Deutsche Bank's practice of improperly failing to take action against responsible Sellers is a common course of conducting affecting all Class members. *Feldbaum v. McCrory Corp.,* 1992 WL 119095, at *8 (Del. Ch. June 2, 1992) ("Any conduct by the issuer that violates an indenture . . . necessarily harms all bondholders in the same manner.").

### 3.    Plaintiffs' Claims Are Typical Of The Class

Rule 23(a)(3) requires "the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. at 350.  "Minor variations in the fact patterns underlying the individual claims do not preclude a finding of typicality." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015).  Instead, Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Ft. Worth*, 301 F.R.D. at 132.

Here, Plaintiffs' and absent Class members' claims arise from the same course of events, and each Class member will make similar legal arguments to prove Deutsche Bank's liability. Notably, Deutsche Bank employed uniform practices and procedures across all of the Trusts. Deutsche Bank failed to:  (i) provide notice of known Seller and Servicer defaults; (ii) enforce the Sellers' repurchase requirements and the Servicers' prudent servicing obligations; (iii) act prudently by taking appropriate action against responsible parties to protect noteholders' interests; and (iv) provide notice to noteholders of all defaults.  Each of these failures give rise to Plaintiffs' and the Class's claims equally.

Furthermore, Plaintiffs and the Class allege that Deutsche Bank breached the same contractual and statutory duties owed to all Class members equally.  All Plaintiffs will marshal the same evidence and arguments in support of their claims.  *Scotts EZ Seed Litig.*, 304 F.R.D. at 406. Indeed, courts have found the typicality requirement satisfied under similar circumstances.  *See Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 12-cv-02865-KBF, Corrected Final Judgment and Order of Dismissal, ECF No. 328 (S.D.N.Y. Mar. 16, 2015) (approving settlement class of breach of contract and TIA claims against trustee); *Okla. Police*

*Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 11-cv-8066-JGK, Final Judgement and Order of Dismissal, ECF No. 130 (S.D.N.Y. July 24, 2015) (same).

### 4.   Plaintiffs Will Fairly And Adequately Represent The Class

Rule 23(a)(4) requires plaintiffs to establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (citations omitted); *see also In re China MediaExpress Holdings, Inc. Shareholder Litig.*, 2014 WL 4049896, at *4 (S.D.N.Y. Aug. 15, 2014); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014).

Here, no antagonistic interests exist, as Plaintiffs "'possess the same interest and suffer[ed] the same injury' as the class members." *Wal-Mart*, 564 U.S. at 348-49.  Specifically, Plaintiffs each hold notes issued by one or more of the Trusts and were, and continue to be, damaged as a result of Deutsche Bank's failure to comply with its contractual and statutory obligations.  Each Class member also holds notes from one or more of the Trusts and was similarly damaged.

Plaintiffs are experienced investors in securitized instruments, which include their interests in the Trusts at issue here.  Plaintiffs' interests are directly aligned with those of other Class members – to maximize the amount recovered from Deutsche Bank for its failure to fulfill its duties to the Class. *See, e.g.*, *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Since filing this action, Plaintiffs have taken seriously their role as Class Representatives and have acted diligently to protect the interests of the Class.  At each stage, Plaintiffs have actively participated in, supervised and monitored the litigation. *See* Exs. 32 (a-e).  Through their

experienced counsel, Plaintiffs authorized the filing of the Complaint, successfully opposed a motion to dismiss, pursued and responded to substantial discovery, including sitting for multiple day-long depositions, responding to numerous discovery requests, and producing over 7.9 million documents to date. *See id*. Plaintiffs' actions thus far fully satisfy Rule 23(a)(4)'s adequacy standard. Moreover, courts in this District has found that class counsel have the qualifications, experience, and ability to prosecute the claims. Ex. 33.

### B.      The Requirements Of Rule 23(b)(3) Are Also Satisfied

This action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action is the superior method to adjudicate this dispute.

#### 1.      Common Questions Of Law And
#### Fact Predominate Under Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *U.S. Foodservice*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). This "'does not require a plaintiff to show that there are no individual issues.'" *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) (citation omitted). Instead, it requires that "a court's inquiry [be] directed

primarily toward whether the issue of liability is common to members of the class." *See Ft. Worth*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

Here, the primary common questions the Class must address to establish its claims will be whether Deutsche Bank:  (1) failed to provide notice of and enforce representation and warranty breaches, upon discovering them; (2) failed to notify the Servicers of failures to fulfill their obligations after learning of Servicer breaches, defaults and Servicing Events of Default and remedy these servicing breaches; (3) failed to provide notice to noteholders of uncured Servicing Events of Default and Issuer Events of Default; and (4) failed to act as a reasonable person would to protect its own assets after learning of Issuer Events of Default.  These questions will be answered through common proof.

Indeed, Deutsche Bank's duties to Class members will be established through common evidence, including through the Governing Agreements for the Trusts and the TIA.  With respect to these obligations, the requirements imposed on Deutsche Bank are identical for all Class members.  *U.S. Foodservice*, 729 F.3d at 124.  Common evidence, including Deutsche Bank's internal files, communications and personnel's testimony reflecting its knowledge of Seller and Servicer breaches, demonstrates that Deutsche Bank breached its obligations.

          a)        **The Predominance Concerns In The *Royal Park* Actions Are Inapplicable To This Case**

Plaintiffs' case in chief presents no individualized factual or legal issue.  Accordingly, Deutsche Bank will likely challenge predominance by asserting the same challenges it and other trustees have posed in various *Royal Park* actions.[4]  However, the significant differences in the

---

[4] *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, 14 Civ. 9764 (S.D.N.Y.) ("*Royal Park*"), ECF No. 442 ("RP R&R"); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 1331288, at *4-8 (S.D.N.Y. Apr.  4, 2017); *Royal Park Invs. SA/NV v. The Bank of N.Y. Mellon*, 2017 WL 3835339, at *5 (S.D.N.Y. Aug. 30, 2017).

class definitions, evidentiary record, alleged harm, and proposed class damage model exist between this case and *Royal Park* render the predominance concerns expressed in the RP R&R inapplicable here.

*Tracing And Choice Of Law Analysis Will Not Be Required To Establish Class Member Standing*:  Unlike in *Royal Park*, Plaintiffs' class definition does not include former holders. Rather, Plaintiffs have properly limited their class to current noteholders.  The Court does not need to learn who the prior owners of the securities were and when in order to identify the Trusts' current noteholders.

Similarly, the Court does not need to apply a choice of law analysis to determine whether current noteholders have standing.  The Notes are expressly governed by New York law.  Ex. 34. Where a contract contains a New York governing law provision and where the transaction involves more than $250,000, as was the case here with the Notes, New York General Obligations Law § 5-1401 provides *that the choice of law provision is controlling*.  *Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A*., 2007 WL 950134, at *6 (S.D.N.Y. Mar. 28, 2007) (citing *Bank of America Nat'l Trust & Sav. Assoc. v. Envases Venezolanos, S.A*., 740 F. Supp. 260, 264-65 (S.D.N.Y.1990)) (emphasis added).  Under New York law, upon a transfer of the Notes to Plaintiffs and other current noteholders as purchasers, Plaintiffs and the Class acquired all of the sellers' claims for damages against Deutsche Bank.  N.Y. Gen. Oblig. Law § 13-107; *Bluebird Partners, L.P. v. First Fid. Bank, N.A*., 97 N.Y.2d 456, 461 & n.1 (2002).  As such, there is no need for the Court to employ New York's "center of gravity" test to determine which jurisdiction's

law controls, or undertake individualized inquiries into whether Classmembers hold litigation rights against Deutsche Bank.[5]

The *Royal Park R&R*'s statement that "it is apparently common for [RMBS investors] to divorce litigation rights from the securities" (id. at 28), is unsupported and inaccurate.  There is no evidence here demonstrating that investors in the Trusts commonly "assigned" or carved out litigation rights from the underlying Notes.

Further, any argument by Deutsche Bank that the identification of current noteholders on a particular date is not administratively feasible is spurious.  Current noteholders can be readily identified through a simple two-step process:  (1) a securities report run for each of the securities generated by the Depository Trust & Clearing Corporation ("DTCC"), which will reflect each of the broker/banking institutions holding the securities for the benefit of their clients; and (2) a securities report run from the applicable broker/banking institutions reflecting the beneficial holders.  Ex. 3 ¶¶25-26.  Such reports can be easily obtained through third-party subpoenas at the appropriate time.  *Id.*  Indeed, this is the precise manner by which Deutsche Bank communicates with and reports to noteholders and transfers millions of dollars to them each month.  Ex. 3 ¶¶25-27.

Finally, any suggestion by Deutsche Bank that a claims process for any resolution of this action would be unduly burdensome due to the fungible nature of the securities at issue is without

---

[5] Indeed, RMBS trustees have repeatedly and successfully used N.Y. Gen. Oblig. Law § 13-107 as a shield from liability in actions brought by former holders.  *See, e.g.*, *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat. Ass'n*, 986 F. Supp. 2d 412, 418 (S.D.N.Y. 2013); *FDIC v. Citibank N.A.*, 2016 WL 8737356, at *5 (S.D.N.Y. Sept. 30, 2016).  The Court should not permit RMBS trustees to manipulate N.Y. Gen. Oblig. Law § 13-107, embracing the statute in cases where it helps them escape liability to investors who had sold their notes, but rejecting its application in cases where holders assert the rights automatically transferred to them.

merit.  The manner in which RMBS is held by investors (i.e., in street name) is no different than any other modern day security.  Settlements in this District involving RMBS, including suits brought by investors against RMBS trustees, have been administrated without issue.  *Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of America NA et al*, No. 12-02865 (S.D.N.Y.); *Oklahoma Police Pension and Retirement System v. U.S. Bank National Association*, 11-cv-08066 (S.D.N.Y.).

**Deutsche Bank's Speculative Statute of Limitations Will Not Present Individualized Issues:**  Similarly, statute of limitations differences among classmembers, even if relevant, will not present overwhelming individualized issues.  First, Deutsche Bank has failed to establish its statute of limitations defense is meritorious.  *See U.S. Foodservice*, 729 F.3d at 127 (defendant must establish that affirmative defense is meritorious before an it may be considered a factor in the class action calculus).  Indeed, Deutsche Bank has failed to identify any classmember's claim is barred by any statute of limitations.  Nor can it.  Plaintiffs allege Deutsche Bank's continuing breaches for its failure to (i) address servicing violations, (ii) act prudently subsequent to the occurrence of still ongoing Events of Default, and (iii) provide notice to certificateholders of these uncured Events of Default.

Second, even assuming Deutsche Bank's statute of limitations defense had merit, "'[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintif[fs], does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.'"  *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004); *see also U.S. Foodservice*, 729 F.3d at 127 n.10); Newberg on Class Actions § 4:57 (5th ed.) ("Statute of limitations defenses – like damage calculations, affirmative defenses,

and counterclaims – rarely defeat class certification.").  If determinations of which statute of limitations are required for individual classmembers, the application of such statute will be formulaic and subject to common proof, as the issue of when the breach of contract claim accrued will be common among Class members.

Finally, Plaintiffs' arguments to rebut Deutsche Bank's statute of limitations defense raise common questions of law and fact that are susceptible to common proof.  The common proof includes Deutsche Bank's continuous breaches and failure to inform certificateholders of known Seller and Servicer defaults and Events of Default, which would toll any statute of limitations. Accordingly, Deutsche Bank's statute of limitations defense does not raise individual inquiries sufficient to defeat the predominance requirement.

**Class-wide Evidence Will Prove The Common Question Of Damages**:  In the *RP R&R*, the plaintiff proposed that class damages be calculated by subtracting a certificate's actual value from its "but for" value (that is, the value it would have had if the trustee defendant had fulfilled its obligations).  *Id*. at 12.  The plaintiff, however, did not offer a single model for ultimately calculating individual classmember damages.  *Id*.  Rather, the plaintiff proposed that the valuation analysis would rely on one or a combination of methods, including discounted cash flow analysis, analysis of market and transaction prices, and third-party pricing services.  *Id*.  Moreover, the court found that the "inputs" needed for plaintiff's damages methodology required individualized determinations, such as the classmember's period of ownership, the price the classmember paid for and/or sold the security, and an evaluation of the impact foregone repurchases and excess servicing costs had on the individual investor.  *Id*. at 30-31.

Here, Plaintiffs allege a different harm, measured by a different damages methodology that presents none of the individualized issues identified in the *RP R&R*.  Specifically, Plaintiffs allege

that they have been harmed because, but for Deutsche Bank's breaches, Plaintiffs and other putative Class Members would own Notes that would have supporting collateral pools that would currently hold fewer defectively originated or serviced loans.  Ex. 3 ¶¶35-37.  In turn, Plaintiffs seek expectancy damages putting them in the same position today that they would have been had Deutsche Bank fulfilled its duties.  Ex. 3 ¶36.

In contrast to the *RP R&R*, Plaintiffs have proposed a ***single*** common damages methodology for calculating Plaintiffs' and all other Classmembers' resulting injury.  Plaintiffs' damages model is based on Deutsche Bank's and third-parties' published data with respect to the performance of the mortgage loans and an analysis of mortgage loans in the Trusts.  *Id*. ¶¶39-40, 43-44.  The impact of Deutsche Bank's alleged failure to act can be measured by analyzing the extent to which losses in the Trusts were associated with mortgage loans that breached the Sellers' representations and warranties.  *Id*. ¶¶29, 33-37, 53-54.  The analysis includes an examination of the Trusts' mortgage loans to identify those that contained breaches of representations and warranties and to determine the extent to which losses on these mortgage loans would have been avoided if Deutsche Bank performed its contractual duties.  *Id.*  Similarly, damages from the alleged servicing failures involve the analysis of mortgage loans within the Trusts to identify Servicer breaches and Events of Default, and assess the extent to which these resulted in higher losses or lower value to the collateral pool.  *Id*. ¶¶53-65.

These damage calculations are capable of being performed with a formulaic common methodology such that each Class member's damages calculation is performed in the same manner.  *Id.* ¶¶66-70.  Moreover, the inputs for the damage calculations will not be dependent on a Classmember's periods of ownership, the price the Classmember paid for and/or sold the security, or an evaluation of the impact foregone repurchases and excess servicing costs had on

the specific investor.  Rather, damages will be allocated based on the clear "waterfall" payment

distribution guidelines set forth in the Governing Agreements; a method commonly used in other

RMBS contractual actions.  Ex. 3 ¶¶66-70.  Such methodology provides an objection standard for

measuring damages and eliminates any individualized conflicts among tranche holders regarding

the calculation and allocation of damages.  Ex. 3 ¶73.

**2.       A Class Action Is Superior**

The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool

claims which would be uneconomical to litigate individually . . . .  [M]ost of the plaintiffs would

have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*,

472 U.S. 797, 809 (1985).  Moreover, as the Supreme Court explained:

> The policy at the very core of the class action mechanism is to
> overcome the problem that small recoveries do not provide the
> incentive for any individual to bring a solo action prosecuting his or
> her rights.  A class action solves this problem by aggregating the
> relatively paltry potential recoveries into something worth
> someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court

must consider the following:

> (A)     the class members' interests in individually controlling the prosecution . . . of
> separate actions;
>
> (B)     the extent and nature of any litigation concerning the controversy already
> begun by . . . class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

The maintenance of a class action in this District ensures the efficient use of party and

Court resources, while enabling the parties to more efficiently prosecute their claims and defenses.

-26-

*See IndyMac*, 286 F.R.D. at 243; *Seekamp*, 2012 WL 860364, at *12.  Class certification would allow hundreds, if not thousands, of noteholders to resolve their separate breach of contract claims against Deutsche Bank efficiently in a single forum at one time.  Concentrating litigation in this Court is particularly desirable given the Court's familiarity with the case, having ruled on earlier pleading challenges and discovery disputes.  In addition, certification would bring advantages in terms of bargaining power, and if Plaintiffs ultimately prevail, award them meaningful relief in an efficient manner.  *See In re Beacon Assocs. Litig*., 282 F.R.D. 315, 334 (S.D.N.Y.2012) (holding a "class action provides both the fairest and the most efficient mechanism for resolving the claims in this case").  On the other hand, resolving noteholders' claims through numerous individual actions would be an inferior method of adjudication.  It would potentially flood this Court and others with repetitive, costly, and resource-intensive litigation.  Individual noteholders would be forced to hire their own set of experts and repeatedly analyze the same population of breaching loans and servicing records.  Such a result would be a waste of litigant, judicial and public resources, as well as present the risk of inconsistent judgments.  *See Dodona I*, 296 F.R.D. at 271-72 ("Defendants' argument ignores the fact that each investor's prosecution of independent lawsuits 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'").

There also does not appear to be an overwhelming interest by Class members to proceed individually.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *AFTRA*, 269 F.R.D. at 355 (citation omitted); *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding*

*Corp. Sec. Litig.*, 2007 WL 2230177, at *14 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").

Furthermore, Plaintiffs do not foresee any management difficulties that will preclude this case from being maintained as a class action.  Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but appears to be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.

In challenging superiority, Deutsche Bank likely will emphasize that RMBS investors typically are "sophisticated" institutional investors who are capable of filing their own actions. Courts, however, have routinely rejected such challenges in similar RMBS class actions.  *See, e.g.*, *Pub. Emps.' Ret. Sys. Of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011) (certifying class with "sophisticated institutional investors"); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2011 WL 3874821, at *8-9 (S.D.N.Y. Aug. 16, 2011) (same). Moreover, there is little indication that absent Class members prefer to separately prosecute their claims instead of relying on this Class action.  Indeed, in the more than three years since Plaintiffs filed this action and despite the litigation's extensive publicity, only a handful of individual holder suits have been filed, which implicate only a small portion of the Trusts.

### C.      The Class Is Ascertainable

The class definition uses "objective criteria that establishes membership with definite bounds."  *In re Petrobras Sec.*, 862 F.3d at 264.  To be a member of the Class, an investor must have acquired a beneficial interest in a security issued from the Trusts between the date of offering and 60 days from the final order certifying the class, and continue to hold that beneficial interest in the security through the date of final judgment.  The definition provides a meaningful temporal

limitation by specifying a defined window of acquisition with fixed dates, and a continuous ownership requirement through judgment. *See Brecher*, 806 F.3d at 25; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co*., 2017 WL 1331288, at *5-6 (S.D.N.Y. Apr. 4, 2017). Accordingly, none of the concerns in *Brecher* or the Royal Park actions applies here.

Moreover, Plaintiffs' inclusion of the "damaged as a result of Deutsche Bank's alleged conduct" does not create an impermissible "fail safe class." *RP R&R* at 15-16 (collecting cases). Rather, "[Plaintiffs'] class definition simply ensures that its class only contains those who have standing to sue – such class members would be bound by a final judgment." *Id*. at 16.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to: (a) certify this action as a class action pursuant to Rule 23(a) and Rule 23(b)(3); (b) appoint Plaintiffs as the Class Representatives; and (c) appoint Bernstein Litowitz as Class Counsel.

Dated:  January 26, 2018

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP

*/s/ Timothy A. DeLange*
TIMOTHY A. DeLANGE

BLAIR A. NICHOLAS
TIMOTHY A. DeLANGE
BENJAMIN GALDSTON
RICHARD D. GLUCK
BRETT M. MIDDLETON
LUCAS E. GILMORE
ROBERT S. TRISOTTO
JACOB T. SPAID
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Counsel for Plaintiffs and the Proposed Class*